UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KELLEY AMADEI, et al.,

                             Plaintiffs,

            -against-

KIRSTJEN NIELSEN, et al.,

                             Defendants.

Civil No. 17 Civ. 5967 (NGG)
(VMS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

Date of Service: April 6, 2018

Neil K. Roman
Joshua B. Picker
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, N.Y. 10018
(212) 841-1000 (Telephone)
(212) 841-1010 (Fax)

Hugh Handeyside
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York NY 10004
(212) 549-2500 (Telephone)

Cecillia D. Wang
Katrina Eiland
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA  94111
(415) 343-0775 (Telephone)
(415) 395-0950 (Fax)

Clara J. Shin
Samantha Choe
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000 (Telephone)
(415) 591-6091 (Fax)

Lala R. Qadir
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-5013 (Telephone)
(202) 778-5013 (Fax)

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT ................................................................................................................ 5

I.      Plaintiffs Have Standing to Seek Declaratory and Injunctive Relief. ................................ 5

        A.      Defendants Fail to Controvert the Allegations in Plaintiffs' Complaint. .............. 5

        B.      Defendants Misstate the Lenient Standard for Establishing Standing. ................... 7

        C.      Plaintiffs Plausibly Allege Both the Existence of a Policy or Routine
                Practice and a Substantial Risk of Similar Harm. ................................................ 10

                1.      Plaintiffs' allegations are sufficient to plead the existence of an
                        official policy or practice. ......................................................................... 10

                2.      Plaintiffs face a substantial risk of similar unlawful seizure in the
                        future. ....................................................................................................... 12

        D.      Plaintiffs Must Have the Opportunity to Conduct Standing-Related
                Discovery. ............................................................................................................ 16

II.     The Motion to Dismiss the APA Claim Should Be Denied Because Plaintiffs
        Sufficiently Allege Final Agency Action. ........................................................................ 17

        A.      An Allegation of Agency Policy or Routine Practice and Application of
                That Policy to Plaintiffs Is Sufficient to Sustain an APA Claim. ........................ 18

        B.      The Complaint Sufficiently Alleges a Policy or Routine Practice
                Constituting Final Agency Action. ...................................................................... 21

        C.      Defendants at Most Raise a Factual Dispute that Cannot be Resolved on
                this Motion to Dismiss. ........................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*6801 Realty Co., v. U.S. Citizenship & Immigration Servs.*,
2018 WL 258791 (2d Cir. Jan. 2, 2018) ...............................................................18, 19

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)...............................................................................................20

*Abidor v. Napolitano*,
990 F. Supp. 2d 260 (E.D.N.Y. 2013) ...............................................................15, 16

*Aguilar v. ICE*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011)................................................................10, 13

*All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006)......................................................................................17

*An v. City of New York*,
2017 WL 2376576 (S.D.N.Y. June 1, 2017) ...........................................................10

*An v. City of New York*,
230 F. Supp. 3d 224 (S.D.N.Y. 2017)......................................................................10

*Appalachian Power Co. v. E.P.A.*,
208 F.3d 1015 (D.C. Cir. 2000).............................................................................20

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)...............................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................7

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)..............................................................................7, 13

*Bennett v. Spear*,
520 U.S. 154 (1997).....................................................................................19, 20, 21

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016).......................................................................7

*Boelter v. Hearst Commc'ns, Inc.*,
2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ..............................................................8

*Bowen v. Mich. Acad. of Family Physicians*,
476 U.S. 667 (1986)................................................................................................18

iv

*Bray v. City of New York*,
　346 F. Supp. 2d 480 (S.D.N.Y. 2004)..................................................................14

*Carter v. HealthPort Techs., LLC*,
　822 F.3d 47 (2d Cir. 2016).............................................................................6, 7

*Carver v. City of New York*,
　621 F.3d 221 (2d Cir. 2010)...............................................................................9

*Cherri v. Mueller*,
　951 F. Supp. 2d 918 (E.D. Mich. 2013)............................................................15

*Chevron Corp. v. Donziger*,
　833 F.3d 74 (2d Cir. 2016).................................................................................8

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983).................................................................................. *passim*

*Clapper v. Amnesty International USA*,
　568 U.S. 398 (2013)...........................................................................................8

*De La Mota v. U.S. Dep't of Educ.*,
　2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003)....................................20, 22, 23

*Deshawn E. by Charlotte E. v. Safir*,
　156 F.3d 340 (2d Cir. 1998)......................................................................10, 12

*Floyd v. City of New York*,
　283 F.R.D. 153 (S.D.N.Y. 2012) .....................................................................14

*Friedl v. City of New York*,
　210 F.3d 79 (2d Cir. 2000)..........................................................................23, 24

*Friends of Hamilton Grange v. Salazar*,
　2009 WL 650262 (S.D.N.Y. Mar. 12, 2009) .....................................................18

*Gordon v. City of Moreno Valley*,
　687 F. Supp. 2d 930 (C.D. Cal. 2009) ..............................................................16

*Hernandez v. Cremer*,
　913 F.2d 230 (5th Cir. 1990) .....................................................................12, 14

*Jaghory v. New York State Dep't of Educ.*,
　131 F.3d 326 (2d Cir. 1997)......................................................................19, 22

*Knife Rights, Inc. v. Vance*,
　802 F.3d 377 (2d Cir. 2015)...............................................................................9

*LaDuke v. Nelson,*
762 F.2d 1318 (9th Cir. 1985) ..................................................................10, 11, 12

*Leder v. Am. Traffic Sols.,*
81 F. Supp. 3d 211 (E.D.N.Y. 2015) ..................................................................14

*Ligon v. City of New York,*
288 F.R.D. 72 (S.D.N.Y. 2013) ..........................................................................12

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)........................................................................................7, 15

*Marriott v. Cty. of Montgomery,*
227 F.R.D. 159 (N.D.N.Y. 2005)........................................................................10

*McLennon v. City of New York,*
171 F. Supp. 3d 69 (E.D.N.Y. 2016) ..................................................................15

*Md. State Conference of NAACP Branches v. Md. Dep't of State Police,*
72 F. Supp. 2d 560 (D. Md. 1999) ......................................................................11

*Morales v. Chadbourne,*
996 F. Supp. 2d 19 (D.R.I. 2014).......................................................................11

*Nat'l Congress for Puerto Rican Rights v. City of New York,*
75 F. Supp. 2d 154 (S.D.N.Y. 1999)..............................................................14, 16

*Nat'l Wildlife Fed'n v. Benn,*
491 F. Supp. 1234 (S.D.N.Y. 1980)....................................................................20

*O'Shea v. Littleton,*
414 U.S. 488 (1974)............................................................................................12

*Ortega-Melendres v. Arpaio,*
836 F. Supp. 2d 959 (D. Ariz. 2011) .............................................................11, 13

*R.I.L-R v. Johnson,*
80 F. Supp. 3d 164 (D.D.C. 2015).......................................................................21

*Raines v. Byrd,*
521 U.S. 811 (1997)..........................................................................................7, 8

*Rent Stabilization Ass'n of City of New York v. Dinkins,*
5 F.3d 591 (2d Cir. 1993) .....................................................................................6

*Reyes v. Sofia Fabulous Pizza Corp.,*
2014 WL 12768922 (S.D.N.Y. Apr. 7, 2014)......................................................19

*Rodriguez v. Cal. Hwy. Patrol*,
    89 F. Supp. 2d 1131 (N.D. Cal. 2000) ...........................................................................11, 16

*Roe v. City of New York*,
    151 F. Supp. 2d 495 (S.D.N.Y. 2001) .....................................................................10, 12, 14

*Saenz v. Roe*,
    526 U.S. 489 (1999) ...........................................................................................................14

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ............................................................................................19, 20

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) ...................................................................................9, 13, 14, 16

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008) ...............................................................................................19

*Smith v. City of Chicago*,
    143 F. Supp. 3d 741 (N.D. Ill. 2015) ...............................................................................11

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) .....................................................................................................8, 9

*Tachiona v. United States*,
    386 F.3d 205 (2d Cir. 2004) ................................................................................................8

*Thomas v. Cty. of Los Angeles*,
    978 F.2d 504 (9th Cir. 1992) ...........................................................................................10

*Turpin v. Mailet*,
    619 F.2d 196 (2d Cir. 1980) ........................................................................................10, 12

*U.S. Gypsum Co. v. Muszynski*,
    161 F. Supp. 2d 289 (S.D.N.Y. 2001) ...........................................................................20, 22

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
    530 F.3d 925 (D.C. Cir. 2008) .....................................................................................21, 22

*Weiser v. Koch*,
    632 F. Supp. 1369 (S.D.N.Y. 1986) ................................................................................14

*Williams v. City of New York*,
    34 F. Supp. 3d 292 (S.D.N.Y. 2014) ...............................................................................16

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ..........................................................................................6, 24

**Statutes**

5 U.S.C. § 551(13) .......................................................................................................18

5 U.S.C. § 704 ........................................................................................................18, 19

5 U.S.C. § 706 ................................................................................................... *passim*

42 U.S.C. § 1983 ...................................................................................................10, 15

**Other Authorities**

19 C.F.R. § 162.6 ...................................................................................................4, 23

Fed. R. Civ. P. 12(b)(1) ................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................... *passim*

Fed. R. Civ. P. 12(g)(2) .................................................................................................24

## INTRODUCTION

This lawsuit concerns the suspicionless search and seizure of Plaintiffs and all other passengers disembarking a domestic flight arriving at New York's John F. Kennedy International Airport ("JFK") in February 2017, by two U.S. Customs and Border Protection ("CBP") agents. The seizures and searches violated Plaintiffs' Fourth Amendment rights and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Plaintiffs filed the Complaint on October 12, 2017, naming as Defendants the heads of the U.S. Department of Homeland Security, CBP, and U.S. Immigration and Customs Enforcement ("ICE") and their relevant sub-units, as well as JFK Port Director Francis Russo, and the two then-unknown CBP officers who conducted the searches. As documented in the Complaint and in contemporaneous press statements, the CBP agents conducted their search pursuant to a policy or regular practice; thus, Plaintiffs filed this lawsuit seeking declaratory and injunctive relief to protect them from similar illegal searches and seizures in the future.

Defendants move to dismiss on two grounds.  First, Defendants argue that Plaintiffs lack standing to seek declaratory and injunctive relief.  Second, Defendants argue that Plaintiffs have not adequately alleged final agency action and therefore fail to state APA claims.  Both of these arguments fail because Plaintiffs' Complaint, which must be taken as true under Federal Rule of Civil Procedure 12(b)(6), alleges with detail and specificity that Defendants in fact acted pursuant to a policy or regular practice when they seized and searched Plaintiffs and their fellow passengers.

Indeed, these allegations are based on multiple contemporaneous statements by the Defendants and official spokespersons acknowledging that the actions of the CBP agents were "routine," and that such operations happen "from time to time" and "every day."  It is only in response to Plaintiffs' Complaint that Defendants have taken the litigation position that the

seizure of the passengers of Delta Flight 1583 was not pursuant to policy.  Defendants may attempt to contest those allegations, but they may not obtain dismissal of Plaintiffs' suit based on their bald refutation of the allegations in the Complaint.  The motion should be denied.

## STATEMENT OF FACTS

Plaintiffs were passengers on Delta Air Lines Flight 1583 from San Francisco to New York City on February 22, 2017.  Compl. ¶¶ 1, 11-19.  After Delta Flight 1583 landed at John F. Kennedy International Airport and taxied to the gate, the flight crew—on information and belief, at the direction of CBP—told passengers over the plane's public address system that they would have to show identification to officers meeting the flight as they deplaned.  *Id.* ¶ 36.  The crew told the passengers that no one could disembark without showing identification to the officers.  *Id.* ¶ 38.

Plaintiffs and other Delta Flight 1583 passengers were met by two uniformed CBP officers standing at the edge of the jet bridge, partially blocking the plane's exit.  *Id.* ¶¶ 41-42.  As passengers attempted to exit the plane, the officers carefully reviewed each passenger's identification document and permitted passengers to proceed only after the officers completed their review.  *Id.* ¶¶ 44-47.  The officers were physically imposing, wearing bulky bulletproof vests and carrying guns that were visible in their holsters, and brusque in their interactions, going so far as to stare at a seven-year-old child.  *Id.* ¶¶ 42-48.  The process of reviewing each passenger's identification, including those of young children, delayed the exit of those who remained on the plane.  *Id.* ¶¶ 4, 53.

Plaintiffs did not consent to their detention or to the identification search.  *Id.* ¶ 51.  They reasonably understood the search to be mandatory based on the flight announcements and the officers' positioning in the jet bridge, aggressive stance, and demeanor.  *Id.*  The CBP officers did not disclose or appear to possess a valid judicial warrant authorizing the seizure of all Delta

2

Flight 1583 passengers or their documents.  *Id.* ¶ 54.  They also did not disclose or appear to

have a reasonable suspicion that the Delta Flight 1583 passengers they detained (i.e., all of them)

had engaged in criminal activity, much less probable cause to believe that they had committed a

crime.  *Id.*

### *Defendants Acknowledge That Unauthorized Searches and Seizures Are Pursuant to Regular Practice or Policy*.

During the operation at issue, the two CBP officers who detained the Delta Flight 1583

passengers and who searched the passengers' identification repeatedly told Plaintiffs that

searches of domestic air passengers are "routine"—that is, a matter of regular practice.  As one

example, Plaintiff Carola Cassaro asked the CBP officer who searched her identification whether

the identification checks were something new, and the officer answered "no."  *Id.* ¶ 49.  As

another example, when Plaintiff Kelley Amadei asked the CBP officer searching her

identification what was happening, he responded "it's not for you to worry about; we do it from

time to time."  *Id.* ¶ 50.

Likewise, after the incident, spokespersons for CBP and DHS repeatedly acknowledged

that the CBP officers conducted the searches pursuant to CBP policy or routine practice.  On

February 23, 2017, shortly after the search and seizure, Defendant Frank Russo, CBP's JFK Port

Director, emailed the New York Civil Liberties Union to say that "*[w]e do this every day*."

Compl. Ex. A (emphasis added).  Notwithstanding Mr. Russo's unequivocal statement at the

time of the unauthorized search and seizure, the government makes a contrary claim based on a

new declaration by Mr. Russo.  *See* Russo Decl. ¶ 4.  Implicitly acknowledging the inconsistency

between his contemporaneous statement and his declaration in support of the Defendants'

motion, Mr. Russo now makes the unpersuasive claim that his documented statement, "*[w]e do

this every day,*" Compl. Ex. A (emphasis added), "did not express, nor did it intend to express,

that there is a CBP policy or practice of checking identification of all passengers disembarking U.S. domestic flights, or all passengers disembarking a single U.S. domestic flight," Russo Decl. ¶ 4. Notably, Mr. Russo's declaration does not actually deny the existence of a policy or regular practice, nor does it refute the contemporaneous statements of other government spokespersons including the assertion of legal authority for the agents' actions. A CBP spokesperson told the *Gothamist* website that the identification checks are "not a new policy," *id.* ¶ 63, and a DHS spokesperson confirmed to *The Independent* newspaper that the identification searches were "routine," *id.* ¶ 64.

Other contemporaneous statements by CBP give further detail about the purpose of the operation conducted on the passengers of Delta Flight 1583 and reinforce the agency's view that its actions were consistent with policy. CBP released a public statement on February 23, 2017, in which it claimed that the agents had acted pursuant to a request from U.S. Immigrations and Customs Enforcement ("ICE") to interdict an individual "possibly aboard" Delta Flight 1583 and noted that "CBP *often* receives requests from our law enforcement partners to assist in various ways, including identifying a person of interest" and that "CBP *will* assist when able to." *Id.* ¶ 56-57 (emphases added). In response to a press inquiry from *Rolling Stone* magazine, CBP cited a document entitled "CBP Search Authority," which incorporates a regulation, 19 C.F.R. § 162.6, thus suggesting that the agents' action was taken pursuant to an assertion of lawful authority. *Id.* ¶¶ 67-69.

### *Plaintiffs Are Frequent Travelers and Have Sufficiently Alleged a Likelihood of Future Harm Under Defendants' Practice and Policy.*

Plaintiffs are regular travelers on domestic flights who intend to take other domestic flights. *Id.* ¶ 74. Plaintiffs fear that when they travel again, they will be subject to another

warrantless search and seizure, in light of CBP's repeated assertions of its authority to conduct such searches and its claims that it does so routinely. *Id.* ¶¶ 75-76.

## ARGUMENT

### I.     Plaintiffs Have Standing to Seek Declaratory and Injunctive Relief.

Defendants claim that Plaintiffs lack standing to seek declaratory and injunctive relief because they cannot show either a sufficient likelihood of future harm or the existence of a policy or its equivalent.  Defs.' Br. at 9.  Defendants are wrong.  They both misconstrue the requirements for standing to seek prospective relief and fail to credit the specific and plausible allegations in Plaintiffs' Complaint, which must be taken as true.

The Complaint establishes that Plaintiffs have standing to seek prospective relief for two reasons.  First, Plaintiffs plausibly allege the existence of a regular practice or policy.  As set forth above and in the Complaint, CBP's own employees, including Defendants here, acknowledged in the wake of the incident that the searches were driven by policy or routine practice.  Compl. ¶¶ 49-50, 56-67.  Second, Plaintiffs face a substantial risk of similar harm. Plaintiffs, several of whom are frequent domestic airline passengers, plan to travel by air again— conduct that is both innocent and protected by the Constitution—and they reasonably fear that they will be subjected again to warrantless, suspicionless searches when they do so. *Id.* ¶¶ 74-76.

### A.     Defendants Fail to Controvert the Allegations in Plaintiffs' Complaint.

Defendants do not state explicitly whether they are moving to dismiss for lack of standing under Rule 12(b)(1) or Rule 12(b)(6).  No matter; the standard of review is the same under either subsection, and a court must accept as true the facts alleged in the Complaint and draw all

reasonable inferences in favor of the plaintiff.[1]  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  Further, if a defendant makes a "fact-based" Rule 12(b)(1) motion, offering evidence beyond the pleading, the plaintiff need controvert that evidence only if it "reveal[s] the existence of factual problems in the assertion of jurisdiction."  *Id.* at 57 (citing *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  Conclusory allegations offered in an affidavit are insufficient to contradict plausible allegations.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (A "party cannot rest on conclusory allegations [in an affidavit] that factual disputes exist" to defeat standing.) (citing *Exch. Nat'l Bank*, 544 F.2d at 1131).

The Russo Declaration does not controvert the material allegations in Plaintiffs' Complaint.  *See e.g., Zappia*, 215 F.3d at 253 ("[C]onclusory allegations in [a Rule 12(b)(1)] affidavit are not sufficient to create a material issue of fact").  Plaintiffs allege that the searches at issue were conducted pursuant to a policy or routine practice.  This allegation rests in part on Defendants' admission that the searches were pursuant to an existing *policy* or, in the words of a CBP spokesperson, "not a new *policy*," Compl. ¶ 63 (emphasis added).  It also rests on Defendants' statements that the officers' actions were not unprecedented, *id.* ¶¶ 49, that they engage in such conduct "from time to time," *id.* ¶ 50, and that the searches were "routine," *id.* ¶¶ 63-64.  Defendant Russo does not address, let alone controvert, these allegations in his declaration.  Nor does he affirmatively deny the existence of a policy or routine practice.  Rather, in addressing his own statement that "[w]e do this every day," *id.* ¶ 65, Mr. Russo merely tries to

---

[1] Defendants imply, but do not state explicitly, that they move to dismiss for lack of standing under Rule 12(b)(1).  The Second Circuit has observed, however, that motions to dismiss for lack of standing may be made pursuant to either Rule 12(b)(6) or Rule 12(b)(1).  *See Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n.2 (2d Cir. 1993).  For the reasons set forth herein, Defendants' motion fails under either standard.

walk back his prior statement by asserting now that he did not "intend to express[] that there is a CBP policy or practice of checking identification of all passengers disembarking U.S. domestic flights."  Russo Decl. ¶ 4.

At most, the Russo Declaration creates a material issue of fact as to the intended meaning of Mr. Russo's own statement, underscoring the need for discovery regarding the policy or routine practice at issue.  *See infra* Section I.D.  The declaration does not contradict the allegations in Plaintiffs' Complaint that are "themselves sufficient to show standing," *see Carter*, 822 F.3d at 57, and therefore those allegations must be taken as true for the purpose of this motion, *id.*

## B. Defendants Misstate the Lenient Standard for Establishing Standing.

"[T]he standard for reviewing standing at the pleading stage is lenient."  *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003); *see also Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 437-38 (S.D.N.Y. 2016) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)) ("To survive the motion to dismiss, the pleadings must only 'allege facts that affirmatively and plausibly suggest that [Plaintiffs have] standing to sue.'").  Plaintiffs have pled the requisite standing elements that they suffered an injury in fact, that the injury was caused by the Defendants' conduct, and the injury is likely to be redressed by a favorable ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To have standing for the prospective equitable relief they seek here, Plaintiffs need only further allege specific and plausible facts sufficient to plead the threat of ongoing or future injuries.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs meet this standard.

Defendants misstate the law.  First, they incorrectly rely on *Raines v. Byrd*, 521 U.S. 811 (1997) to argue for an "especially rigorous" standing inquiry.  Defs.' Mot. at 8.  The dispute in *Raines* was exceptional: members of Congress were challenging the constitutionality of the Line

7

Item Veto Act.  521 U.S. at 813.  Courts have repeatedly and expressly declined to apply *Raines*

in cases where, as here, the dispute arises out conduct vis-à-vis private citizens rather than, as in

*Raines*, where one branch of government was challenging the actions of another.  *See, e.g.*,

*Boelter v. Hearst Commc'ns, Inc.*, 2016 WL 361554, at *3 n.3 (S.D.N.Y. Jan. 28, 2016)

(distinguishing *Raines* and finding standing where a private "plaintiff [was] directly and

personally affected by Defendant's alleged conduct in violation of the law"); *Tachiona v. United*

*States*, 386 F.3d 205, 213 (2d Cir. 2004) (distinguishing lack of standing found in *Raines*

because, *inter alia*, *Raines* "involved a constitutional challenge [by one branch] to an action

taken by one of the other two branches of the Federal Government").

Second, Defendants improperly truncate the standard for pleading injury when a plaintiff

seeks prospective relief.  The Supreme Court, in *Susan B. Anthony List v. Driehaus*, 134 S. Ct.

2334 (2014), made clear that "[a]n allegation of future injury may suffice if the threatened injury

is certainly impending, *or* there is a substantial risk that the harm will occur."  *Id.* at 2341

(internal quotations omitted; emphasis added); *see also Chevron Corp. v. Donziger*, 833 F.3d 74,

121 (2d Cir. 2016) (recognizing both "certainly impending" and "substantial risk" tests).  Yet

Defendants rely on a prior decision—*Clapper v. Amnesty International USA*, 568 U.S. 398

(2013)—to limit their analysis to the "certainly impending" standard set forth in *Clapper*, and

excise out the "substantial risk" prong of the test.  In doing so, Defendants overstate both the

level of certainty and the degree of imminence required.

Finally, Defendants misstate the standing requirements emanating from *City of Los*

*Angeles v. Lyons*, 461 U.S. 95 (1983).  In *Lyons*, the plaintiff, who had been placed in a

chokehold by police during the course of an arrest, sued for declaratory and injunctive relief

barring the illegal use of force against him.  461 U.S. at 97-98.  The Supreme Court concluded

that the plaintiff had shown neither a sufficient likelihood that the harm would recur nor the existence of a municipal policy or practice sanctioning the use of chokeholds during arrests.  *Id.* at 106.  The Court thus required an allegation of "another encounter" with police as a threshold requirement, coupled with *either* a showing that police would generally act in a certain way *or* a policy ordering or authorizing the conduct in question.  461 U.S. at 106.

Defendants cite to the Second Circuit's decision in *Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004), which predates *Susan B. Anthony List*, for the proposition that *Lyons* requires "*both* a likelihood of future harm *and* the existence of an official policy or its equivalent."  *Id.* at 216 (emphasis in original).  This is wrong.  The Court in *Shain* conflated the requirement in *Lyons* that plaintiffs needed to allege a future *encounter* with police with a requirement to allege that such an encounter would necessarily cause recurrence of the *harm*.  *Id.*  The Second Circuit has since acknowledged that *Lyons* requires either allegations of likelihood of recurrence *or* a policy or its equivalent but not both.  *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (framing the *Lyons* likelihood of recurrence and policy tests as disjunctive); *Carver City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (concluding that the test for standing under *Lyons and Shain* is "a likelihood that [a plaintiff] will be injured in the future" without requiring the existence of a policy or its equivalent).

Plaintiffs have standing if they plausibly allege either that they will be exposed to the challenged policy or practice *or* that they face a substantial risk that the harm will recur. Plaintiffs need satisfy only one of these prongs to defeat Defendants' motion to dismiss; they satisfy both.

**C.     Plaintiffs Plausibly Allege Both the Existence of a Policy or Routine Practice and a Substantial Risk of Similar Harm.**

**1.     Plaintiffs' allegations are sufficient to plead the existence of an official policy or practice.**

Standing to seek prospective relief may be based on plausible allegations that a plaintiff will be exposed to a challenged policy or practice.  *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998).  "Where there is an official policy at issue, there is a likelihood of recurring injury and plaintiffs have standing to seek injunctive relief."  *Marriott v. Cty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quotations omitted).  Likewise, if the government, "impliedly or tacitly authorized, approved or encouraged" particular conduct, that is equivalent to "an official policy" sufficient to confer standing.  *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).[2]

Further, courts have found standing to seek prospective relief based on policies or practices in a range of contexts.  *See, e.g.*, *Deshawn E.*, 156 F.3d at 344-45 (interrogation of juvenile detainees); *An v. City of New York*, 2017 WL 2376576, at *3 (S.D.N.Y. June 1, 2017) (practice of arresting people who record NYPD officers); *Aguilar v. ICE*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) ("official policy" of ICE home raids); *Marriott*, 227 F.R.D. at 173 (strip searches of individuals detained on misdemeanors); *Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001) ("pattern and practice" of arresting needle exchange participants).  Policies or practices conferring standing frequently involve unlawful police stops and arrests, including by border or immigration officers.  *See, e.g.*, *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) ("tacitly authorized" policy of unlawful searches and seizures); *LaDuke*

---

[2] Although *Turpin* involved the standard for municipal liability under 42 U.S.C. § 1983, courts have repeatedly applied it to standing analyses involving challenged policies or practices.  *See, e.g.*, *An v. City of New York*, 230 F. Supp. 3d 224, 229 n.1 (S.D.N.Y. 2017) (listing cases); *Aguilar v. ICE*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011).

*v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985) ("officially sanctioned" INS raids of farmworker housing); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 752 (N.D. Ill. 2015) ("policy or practice" of stops and frisks); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 38 (D.R.I. 2014) ("policy of reporting all arrestees with foreign births to ICE"); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979, 985 (D. Ariz. 2011) ("policy" of detaining suspected undocumented immigrants); *Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000) ("pattern and practice" of illegal traffic stops); *Md. State Conference of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 564 (D. Md. 1999) ("pattern and practice of racially discriminatory stops").

As set forth above in Section I.B, the Complaint alleges indications of a policy or practice related to the challenged searches—including CBP's own statements. Notably, CBP issued statements to news outlets stating that this is "not a new policy," and that the searches were "routine," Compl. ¶¶ 63-64. CBP even cited a policy statement entitled "CBP Search Authority" as justification for the searches. *Id.* ¶ 68. Such official statements are precisely what the Supreme Court found lacking in *Lyons*: "The dissent does not, because it cannot, *point to any written or oral pronouncement* by the LAPD or any evidence showing a pattern of police behavior that would indicate that the official policy would permit the application of the control holds . . . ." 461 U.S. at 110 n.9 (emphasis added). CBP's statements support an inference that the officers here acted pursuant to policy or a routine practice.

It also bears mention that CBP and its employees repeatedly stated or implied that the officers, in carrying out the document checks, acted consistently with CBP policy. In *Lyons*, the Court rested its decision in large part on the fact that city policy did not authorize police officers to use illegal chokeholds. *See id.* at 110. By contrast, courts have found that plaintiffs

11

have standing to seek prospective relief where a policy or its equivalent authorizes or endorses the challenged conduct. *Deshawn E.*, 156 F.3d at 345 (likelihood of recurring injury because "the challenged interrogation methods in this case are officially endorsed policies"); *LaDuke*, 762 F.2d at 1324 (finding standing where defendants engaged in "a standard pattern of officially sanctioned officer behavior"); *see also Turpin*, 619 F.2d at 200 (inferring policy where officer "authorizes, sanctions or ratifies unconstitutional action taken by one of its police officers"). As in these cases, CBP endorsed the conduct of the officers here. *See* Compl. ¶¶ 63-68. Indeed, Defendants continue to maintain that the officers' conduct was permissible and that similar checks to be conducted by them "will be consistent with the Fourth Amendment." Defs.' Br. at 8 n.4.

### 2. Plaintiffs face a substantial risk of similar unlawful seizure in the future.

Plaintiffs' allegations demonstrate that they were subjected to unlawful seizure and searches of their identification documents, and that they face a substantial risk of similarly unlawful treatment. As an initial matter, that Plaintiffs have already been subjected to unlawful searches is relevant to the standing inquiry. Past injury is "evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Moreover, contrary to Defendants' argument, *see* Defs.' Br. at 10, that the Plaintiffs have not yet been subjected to repeat episodes does not by itself mean they lack standing: "[T]here is no per se rule requiring more than one past act . . . as a basis for finding a likelihood of future injury." *Roe*, 151 F. Supp. 2d at 503; *see also Hernandez v. Cremer*, 913 F.2d 230, 235 (5th Cir. 1990) (U.S. citizen denied entry on one occasion had standing to challenge INS border screening practices); *Ligon v. City of New York*, 288 F.R.D. 72, 81 n.52 (S.D.N.Y. 2013) ("[I]n light of the frequency of unlawful trespass stops . . . even those plaintiffs who have only been subjected to

such a stop one time would likely have standing."); *Ortega-Melendres*, 836 F. Supp. 2d at 987

("[T]he fact that the individual Plaintiffs have not been stopped again during the course of this

litigation does not preclude standing to seek injunctive relief").  Here, the warrantless,

suspicionless searches of Plaintiffs in February 2017, and Defendants' contemporaneous

statements that those searches were pursuant to routine practice, provide a sufficient basis for

Plaintiffs' reasonable fear that they will be subjected to similar searches.

 In addition to the past injury they experienced, Plaintiffs face a substantial risk of future

harm because their frequent air travel may subject them to Defendants' unlawful policy.

Plaintiffs need not quantify the risk they face with precision; rather, an increased risk of exposure

to the policy and the harm at issue can suffice.  *See Baur*, 352 F.3d at 642 ("[A]llegation of a

credible risk may be sufficient at the pleading stage [to allege Article III standing] without

further factual confirmation or quantification of the precise risk at issue."); *Ortega*, 836 F. Supp.

2d at 979 (motorists had standing to challenge traffic stop policies, though the "likelihood that

any particular named Plaintiff will again be stopped in the same way may not be high").

Plaintiffs' frequent air travel makes them more likely than the average citizen to be subject to

unconstitutional searches and seizures by CBP.  *See Aguilar*, 811 F. Supp. 2d at 827 (allegations

sufficient to support standing where the plaintiffs were more likely than the average citizen to be

harmed by the alleged government misconduct).  Plaintiffs need not show that they may be

seized and searched at the end of every flight they take; they need only show a reasonable fear

that they are at risk of being seized and searched because Defendants' practice remains in force.

 The risk that Plaintiffs will experience a similar harm does not rest on a string of

contingencies, which in other cases has led courts to find lack of standing.  As an example, part

of the court's rationale for denying standing in *Shain* was that the risk of future injury depended

on an "accumulation of inferences" that was "simply too speculative and conjectural"—*i.e.*, a long chain of "ifs."  356 F.3d at 216.  Here, by contrast, Plaintiffs' risk of injury is not speculative: they will be injured again if CBP again conducts suspicionless checks during Plaintiffs' future travel.  Moreover, they face that risk for engaging in lawful conduct.  The Supreme Court in *Lyons* and the Second Circuit in *Shain* denied standing because the plaintiffs' alleged future injuries depended on their violating the law and being arrested again.  461 U.S. at 108; 356 F.3d at 216.  Here, Plaintiffs' risk of future injury does not require them to engage in unlawful conduct—indeed, the travel that Plaintiffs plan to undertake is not only lawful, but constitutionally protected.  *See Saenz v. Roe*, 526 U.S. 489 (1999) (right to interstate travel).  Courts in the Second Circuit have consistently found standing for injunctive relief when plaintiffs cannot avoid future injury by following the law.  *See, e.g.*, *Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012); *Bray v. City of New York*, 346 F. Supp. 2d 480, 487 n.1 (S.D.N.Y. 2004); *Roe,* 151 F. Supp. 2d at 503; *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999); *Weiser v. Koch,* 632 F. Supp. 1369, 1373-74 (S.D.N.Y. 1986); *cf. Leder v. Am. Traffic Sols.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015) (denying standing for equitable relief where "[a]lthough there is a chance that she would run another red light as a result of the Defendants' actions, such a chance is too speculative to confer Article III standing").

Nor must Plaintiffs allege specific travel plans or "define regular traveling" to demonstrate standing, as Defendants argue.  *See* Defs.' Br. at 10.  Courts have found standing in analogous circumstances where plaintiffs pled no specific future plans.  *See, e.g.*, *Cremer*, 913 F.2d at 234-35 (U.S. citizen denied entry at U.S.-Mexico border had standing based on his testimony that he "would like to return to Mexico, but did not 'want to run the risk of something

14

like this happening again'"); *Cherri v. Mueller*, 951 F. Supp. 2d 918, 929-30 (E.D. Mich. 2013) (plaintiffs with no plans to travel abroad had standing where they "claim[ed] that their lawful movements to and from the United States are hindered" because of their "reasonable fear" that they would be questioned about their religious beliefs).  The cases Defendants cite to the contrary did not involve persons who had a reasonable basis to fear that their constitutional rights would be violated when they traveled.  In *Lujan*, for instance, the asserted basis for standing was the plaintiffs' mere desire to travel again to view endangered species—a desire that the Court found was insufficient to support a finding of "actual or imminent" injury.  504 U.S. at 564. Here, however, Plaintiffs travel by air regularly and fear that they will be subject to another suspicionless search and seizure when they do travel.[3]  Compl. ¶¶ 74-75.  Unlike the plaintiffs in *Lujan*, Plaintiffs here have standing not solely because they intend to continue traveling regularly by air, but also because of the substantial risk that they will be subjected to unlawful seizures and searches during that travel.[4]

Finally, Defendants rely on cases that are distinguishable.  As an example, in *McLennon v. City of New York,* a challenge under 42 U.S.C. § 1983 to suspicionless searches and seizures at vehicle checkpoints on city roads, the court found that the plaintiffs lacked standing to seek prospective relief because they "have not plausibly alleged that there was a widespread practice of unlawful Step-Out Enforcement Checkpoints."  171 F. Supp. 3d 69, 106 (E.D.N.Y. 2016) ("this allegation is conclusory and is not supported by facts").  Here, by contrast, Plaintiffs have plausibly alleged a policy or practice authorizing suspicionless seizures and document checks— based on statements from Defendants themselves.  Defendants also rely on *Abidor v. Napolitano*,

---

[3] Additionally, Defendants here move for pre-discovery dismissal, whereas the *Lujan* plaintiffs moved for post-discovery summary judgment.

[4] At the Court's request, Plaintiffs will provide more detail of their recent and upcoming travel.

990 F. Supp. 2d 260 (E.D.N.Y. 2013), which involves searches of travelers' electronic devices at border crossings.  The court concluded that the plaintiff lacked standing in large part based on its assessment that the likelihood that such searches would be truly suspicionless was "remote."  *Id.* at 271-72.  Here, Plaintiffs challenge seizures in the domestic context that are by nature suspicionless, and that Defendants have authorized and characterized as "routine."  *See* Compl. ¶ 64.  Lastly, *Williams v. City of New York*, 34 F. Supp. 3d 292 (S.D.N.Y. 2014) is inapposite for the same reasons as *Lyons* and *Shain*: the plaintiffs in those cases would have had to engage in unlawful conduct again to undergo a similar encounter with law enforcement.  *Id.* at 296-97.  As explained above, Plaintiffs here need only travel by air—innocent, constitutionally protected conduct—to be subject to Defendants' policy or routine practice.

### D.  Plaintiffs Must Have the Opportunity to Conduct Standing-Related Discovery.

At a minimum, given the early stage of this lawsuit and the plausible allegations supporting standing in the Complaint, Plaintiffs' claims cannot be dismissed without permitting discovery regarding standing—here, on the existence of a policy.  Courts routinely decline to dismiss claims for prospective relief absent discovery as to standing.[5]  The district court, moreover, has discretion to craft the appropriate procedure for addressing standing, including by ordering discovery: "As in any case requiring determination of Article III standing, once the Defendants' motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) put the

---

[5] *See, e.g.*, *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 940 (C.D. Cal. 2009) (the complaint raised "serious possibilities" and the proof "rest[s] largely in the hands of defendants"); *Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000) (denying motion to dismiss because "Plaintiffs are entitled to discovery to attempt to establish an evidentiary basis for their claims for injunctive relief"); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 164 (S.D.N.Y. 1999) ("Given the early stage of this litigation, I decline to put the proverbial cart before the horse and prematurely foreclose the granting of any equitable relief whatsoever.").

16

Plaintiffs' Article III standing in issue, the District Court has leeway as to the procedure it wishes to follow." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006).

The basis for standing in this case is both factual and disputed: it centers on the existence, nature, and content of the Defendants' policy or routine practice relating to identification checks of passengers disembarking U.S. domestic flights. Dismissal of Plaintiffs' claims on standing grounds at this juncture would amount to a resolution of disputed facts without discovery or fact-finding. Thus, the Court should deny Defendants' motion outright or, at minimum, refrain from granting the motion before affording Plaintiffs the opportunity to engage in standing-related discovery.

## II.    The Motion to Dismiss the APA Claim Should Be Denied Because Plaintiffs Sufficiently Allege Final Agency Action.

Defendants' argument for dismissal of Plaintiffs' APA claim—that there is no final agency action—fails for the same reason; it hinges on a factual dispute about whether the CBP agents acted pursuant to a policy or regular practice. The Complaint satisfies the two-part legal test for "final agency action," as required for APA review—that the alleged CBP policy or routine practice was the consummation of the agency's decisionmaking process and that its application to Plaintiffs produced legal consequences.

As an initial matter, Defendants are not clear about whether their motion to dismiss the APA claim is brought under Rule 12(b)(1) as a jurisdictional matter, or as a failure to state a claim under Rule 12(b)(6). But by either standard, Plaintiffs sufficiently allege final agency action. As noted above, on either a Rule 12(b)(1) or 12(b)(6) motion, the Court must take Plaintiffs' reasonable allegations as true at the pleading stage. The Complaint alleges no fewer than seven times that *Defendants or their official spokespersons* acknowledged that they acted

17

pursuant to a CBP policy or routine practice.  Any one of those allegations is sufficient to allege

that CBP has a policy or routine practice permitting similar identification searches, and that such

policy or routine practice constitutes final agency action.  Moreover, as noted above, even if the

Court took into account the Defendants' factual submission at this stage, the only evidence

submitted by Defendants, the Russo Declaration, fails to controvert the material allegations

supporting Plaintiffs' standing.

**A.   An Allegation of Agency Policy or Routine Practice and Application of That Policy to Plaintiffs Is Sufficient to Sustain an APA Claim.**

The Complaint alleges in specific detail that the Plaintiffs were seized and searched

pursuant to CBP's policy or regular practice and that CBP contemporaneously asserted that the

agents had legal authority for their actions by citing a federal regulation.  Such an agency action

is reviewable under the APA.  There is a "strong presumption that Congress intends judicial

review of administrative action" by an agency such as CBP or ICE.  *Bowen v. Mich. Acad. of

Family Physicians*, 476 U.S. 667, 670 (1986).  The APA defines agency "action" as "the whole

or a part of [any] agency rule, order, license, sanction, relief, or [other] equivalent or denial

thereof, or failure to act."  5 U.S.C. § 551(13).  Review of agency action is proper where that

action is either (1) "reviewable by statute" or (2) "final agency action for which there is no other

adequate remedy in a court."  5 U.S.C. § 704.

Whether Defendants' motion is brought under Rule 12(b)(6) for failure to state a claim or

under Rule 12(b)(1) for lack of standing, the result is the same.[6]  Under Rule 12(b)(1), "similar to

---

[6] Courts within the Second Circuit analyze the final agency action issue under both standards. *Compare Friends of Hamilton Grange v. Salazar*, 2009 WL 650262, at *22 (S.D.N.Y. Mar. 12, 2009) (applying Rule 12(b)(6) standard) *with 6801 Realty Co., v. U.S. Citizenship & Immigration Servs.,* 2018 WL 258791, at *1 n.1 (2d Cir. Jan. 2, 2018) (summary order lacking precedential effect) (final agency action requirement is "a question of 'statutory standing' that permits 'resolving the case on threshold, non-merits grounds'").  Although Defendants claim in a

18

the pleading requirements under Rule 12(b)(6), a plaintiff must allege 'facts that affirmatively and plausibly suggest that it has standing to sue' to survive a 12(b)(1) motion." *Reyes v. Sofia Fabulous Pizza Corp.*, 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "Under these rules, the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

Thus, the key issue in dispute is whether, taking Plaintiffs' allegations as true, the agency's policy or routine practice constitutes "final agency action" within the meaning of the APA.[7]  On that question, the Second Circuit has applied the two-part test in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *See Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (applying *Bennett* test to find U.S. Department of Education's failure to suspend collection of certain loans was final action).  An agency action such as a policy or routine practice is final where, (1) that policy or routine practice marks "the 'consummation' of the agency's decisionmaking process—

---

footnote that the final agency action requirement could be jurisdictional, *see* Defs.' Br. at 5 n.2, the Second Circuit—in the very case Defendants cite—declined to resolve whether final agency action is jurisdictional and instead casts doubt on that interpretation in light of contrary Supreme Court and appellate precedent, *see Sharkey v. Quarantillo*, 541 F.3d 75, 88 n.10 (2d Cir. 2008)) (declining to resolve whether APA elements are jurisdictional, but noting that the "Supreme Court [in *Arbaugh v. Y & H Corp.*] appeared to introduce a bright-line rule for determining whether a 'threshold limitation on a statute's scope' is jurisdictional or 'an element of [a] claim for relief'" and that the DC Circuit had then held that "the Section 704 requirement of 'final agency action' is not jurisdictional") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Trudeau v. FTC*, 456 F.3d 178, 183–84 & nn. 6–7 (D.C. Cir. 2006)); *see also 6801 Realty Co.*, 2018 WL 258791, at *1 n.1 (summary order) ("[W]hether the APA's 'final agency action' requirement . . . is jurisdictional is an open question in our Circuit.").  The Court need not resolve that open question here to find that, taken as a whole, Plaintiffs sufficiently allege final agency action.

[7] The parties agree that there is not another statute that specifically permits review of the unlawful searches alleged in the Complaint; nor is there a dispute as to the unavailability of an adequate alternative remedy for the harm alleged.  *See* Defs.' Br. at 5.

it must not be of a merely tentative or interlocutory nature," *id.* (quoting *Bennett*, 520 U.S. at

177-78), and, (2) "the action must be one by which 'rights or obligations have been determined,'

or from which 'legal consequences will flow,'" *id.*  In applying this test, the Supreme Court

directs courts to be "flexible" and "pragmatic" in considering whether an agency's action is

"final."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967), *abrogated on other grounds by*

*Califano v. Sanders*, 430 U.S. 99, 111 (1977); *see also Salazar*, 822 F.3d at 82 ("[t]he Supreme

Court has interpreted the finality element in a 'pragmatic way'").  In other words, "[t]he practical

effect of" an agency's action, "not the informal packaging in which it was presented, is the

determining factor in evaluating whether the . . . action was 'final.'"  *De La Mota v. U.S. Dep't*

*of Educ.*, 2003 WL 21919774, at *8 (S.D.N.Y. Aug. 12, 2003).

On this standard, courts hold that an allegation of even an informal agency policy and

application of that policy to produce an adverse result is sufficient to allege final agency action.

*See De La Mota*, 2003 WL 21919774, at *8 ("[I]t is of no moment that the agency action here

came in the form of an 'informal' email correspondence between a DOE employee and the law

schools and plaintiffs" where that email was the basis for the denial of benefits by those law

schools to Plaintiffs); *U.S. Gypsum Co. v. Muszynski*, 161 F. Supp. 2d 289, 292 (S.D.N.Y. 2001)

(Memorandum of Agreement in which agency set forth new standard constituted final agency

action where officers of defendant agency changed permit determination in reliance on

Memorandum); *see also Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1023 (D.C. Cir.

2000) (informal policy guidance document "is final agency action, reflecting a settled agency

position which has legal consequences").  A routine practice is equivalent to an informal policy

for purposes of final agency action.  *See, e.g.*, *Nat'l Wildlife Fed'n v. Benn*, 491 F. Supp. 1234,

1241-42 (S.D.N.Y. 1980) ("Practices and procedures consistently followed by the [agency] in

issuing permits and approving projects should be equally subject to judicial review [under the APA], particularly when the issues are well defined and do not require a specific factual setting."); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (rejecting argument that "ICE's ongoing practice of considering certain factors in individualized custody determinations does not suffice to establish 'final agency action' for purposes of the APA," including where challenged practice was not memorialized in writing).

### B. The Complaint Sufficiently Alleges a Policy or Routine Practice Constituting Final Agency Action.

The Complaint satisfies both *Bennett* elements for final agency action. As an initial matter, Plaintiffs allege that the policies or routine practices by which CBP conducted the searches following Delta Flight 1583 were the "consummation" of the agency's action. *Bennett*, 520 U.S. at 177-78. For instance, following the searches CBP spokespersons claimed that this is "not a new policy," Compl. ¶ 63, and that the searches were "routine," *id.* ¶ 64. These allegations, taken as true, indicate that CBP completed its decisionmaking process with respect to the policy and practice alleged—that is, CBP clearly asserted and continues to assert that it has legal authority to conduct the sort of search and seizure Plaintiffs suffered.

Likewise, there can be no doubt as to the second *Bennett* element—that CBP's decision to adopt the policy or routine practice permitting unlawful searches resulted in legal consequences to Plaintiffs. In particular, Plaintiffs allege that CBP adopted a policy or routine practice permitting searches of domestic air passengers, which resulted in Plaintiffs being subjected to such a search following Delta Flight 1583, in violation of their Fourth Amendment rights. *See* Compl. ¶¶ 91-94 (setting forth APA claim). "Adopting a policy . . . is surely a consummation of the agency's decisionmaking process, and one by which [the submitter's] rights [and the agency's] obligations have been determined." *Venetian Casino Resort, L.L.C. v.*

21

*E.E.O.C.*, 530 F.3d 925, 931 (D.C. Cir. 2008) (citation and quotation marks omitted); *see also*

*Muszynski*, 161 F. Supp. 2d at 292 (second *Bennett* element satisfied where agency treated its

action "as sufficiently final to demand compliance with [their] announced position").

### C. Defendants at Most Raise a Factual Dispute that Cannot be Resolved on this Motion to Dismiss.

Defendants ignore, dispute, and discount the well-pled allegations of a CBP policy or

routine practice, and fail to contradict those allegations. Their motion to dismiss therefore fails

no matter whether the motion is considered on a Rule 12(b)(1) or Rule 12(b)(6) standard. In

particular, Defendants argue as their sole basis for dismissal of the APA claim that the policy

alleged in the Complaint is not sufficiently formal to constitute final agency action—precisely

the argument courts advise litigants to avoid. *See De La Mota,* 2003 WL 21919774, at *8. They

suggest that the Complaint does not allege an "official policy," but rather only "allege[s] that

Defendants took certain action with respect to [them] and asks the Court to surmise therefrom

the existence of a broader policy.'" Defs.' Br. at 6 (citation omitted).

In making this argument, Defendants first ignore that the Complaint in fact alleges that

Defendants' own statements indicate the CBP agents acted pursuant to a formal policy. Most

glaring, they fail to address that, as alleged in the Complaint, a CBP spokesman told the

*Gothamist* web site that the searches were "not a new *policy*."[8] Compl. ¶ 63 (emphasis added).

They understandably seek to (but cannot) distance themselves from the fact that in response to an

inquiry from *Rolling Stone* magazine as to what authority justified the search, CBP responded by

---

[8] Defendants assert that the writers of the news articles quoted in the Complaint "do not speak on behalf of CBP," Defs.' Br. at 6, seeming to ignore that the Complaint cites statements from *CBP's own official spokespersons. See* Compl. ¶¶ 61-64. At the pleading stage, "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory*, 131 F.3d at 329. Defendants cannot ignore well-pleaded factual allegations merely because they are inconvenient.

citing a *written policy statement* entitled "CBP Search Authority," which incorporates a formal regulation, 19 C.F.R. § 162.6.[9]  *Id.* ¶ 68.

Defendants also improperly discount the allegations that demonstrate clearly that there was *at least* an informal policy or routine practice, which courts have held to constitute final agency action as a basis for an APA claim.  *See De La Mota*, 2003 WL 21919774, at *8.  As noted above, CBP stated on February 23, 2017 that "CBP *often* receives requests from our law enforcement partners to assist in various ways, including identifying a person of interest" and that "CBP *will* assist when able to," Compl. ¶ 57 (emphasis added), raising an inference that CBP's practice is in fact a policy for purposes of the APA.  That inference is only strengthened by the statements that the identification searches were "routine," *id.* ¶ 64; nothing new, *id.* ¶ 49; something that "we do . . . from time to time," *id.* ¶ 50; and, as Defendant Russo wrote, something CBP does, "every day," *id.* Ex. A.  Far from the situation in which a plaintiff asserts a bogus APA claim by appending a "policy" label to conduct that occurred only once, here CBP itself acknowledged that it was acting pursuant to a "policy," cited written policy statements to the media, and claimed that CBP conducts these kinds of searches repeatedly.

As with their challenge to standing to seek prospective relief, Defendants improperly rely on the Russo Declaration to counter the overwhelming allegations of a policy or routine practice in the Complaint.  *See* Defs.' Br. at 7.  Of course, Defendant Russo's declaration cannot be

---

[9] Defendants argue that even though CBP's official spokesperson cited the CBP Search Authority document and 19 C.F.R. § 162.6 as justification for the specific search here at issue, those policies are "not relevant to the review of the identification of passengers arriving on a domestic flight" and that the Court therefore should not consider them as sufficient to allege final agency action.  Defs.' Br. at 7.  However, the mere assertions of counsel that the cited policies are not relevant do not effectively contradict the allegation in the Complaint to the contrary.  *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss.").

considered on a Rule 12(b)(6) motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79,

83–84 (2d Cir. 2000) ("[A] district court errs when it 'consider[s] affidavits and exhibits

submitted by' defendants . . . in ruling on a 12(b)(6) motion to dismiss.") (citations omitted).

And, as noted above, even on a Rule 12(b)(1) standard, Defendant Russo's conclusory statement

that *he* did not intend to admit that a policy exists is irrelevant to whether Plaintiffs allege the

*actual existence* of a policy sufficient to confer standing at the pleading stage. *See Zappia*

*Middle E. Constr. Co.*, 215 F.3d at 253 (conclusory assertions in affidavit insufficient to defeat

jurisdiction on 12(b)(1) motion); *see also* Section I.A.

*      *      *

For the reasons set forth above, Defendants' motion to dismiss should be denied.[10]

Respectfully submitted,

<u>s/ Neil K. Roman</u>
Neil K. Roman
Joshua B. Picker
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, N.Y. 10018
(212) 841-1000 (Telephone)
(212) 841-1010 (Fax)

---

[10] Untethered from the federal rules and local rules of this district, Defendants purport to "reserve their right to . . . to move to dismiss on additional grounds" should the Court deny its motion to dismiss. Defs.' Br. at 2 n.1. Absent narrow enumerated exceptions which do not presently apply, a party that makes a Rule 12 motion cannot "make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

s/ Hugh Handeyside
Hugh Handeyside
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York NY 10004
(212) 549-2500 (Telephone)

Cecillia D. Wang
Katrina Eiland
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA  94111
(415) 343-0775 (Telephone)
(415) 395-0950 (Fax)


Clara J. Shin
Samantha Choe
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000 (Telephone)
(415) 591-6091 (Fax)

Lala R. Qadir
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-5013 (Telephone)
(202) 778-5013 (Fax)

*Attorneys for Plaintiffs*

April 6, 2018