UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KELLEY AMADEI, et. al,

        Plaintiffs,

   - against -

KIRSTJEN M. NIELSEN, et al.

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No.
17-CV-5967
(Garaufis, J)
(Scanlon, M.J.)


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE COMPLAINT</u>**


RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
*Attorney for Defendants*


DARA A. OLDS
Assistant United States Attorney
Of Counsel


Date of Service:     April 20, 2018

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT............................................................................................................... 1

    I.    PLAINTIFFS DO NOT HAVE STANDING TO BRING THEIR
        CLAIMS ................................................................................................ 1

        A.    Legal Standard Governing Standing For Injunctive and
              Declaratory Relief ................................................................. 1

        B.    Plaintiffs Cannot Allege An Injury-In-Fact ......................................... 3

              1.    Plaintiffs cannot show a likelihood of future harm. ................... 5

              2.    Plaintiffs cannot show an official policy or its equivalent. ........ 7

    II.    PLAINTIFFS CANNOT SHOW FINAL AGENCY ACTION
        SUBJECT TO REVIEW UNDER THE ADMINISTRATIVE
        PROCEDURE ACT........................................................................... 9

CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013) ................................................ 2, 6, 9

*Aguilar v. ICE*, 811 F. Supp. 2d 803 (S.D.N.Y. 2011) .................................................... 3, 8

*Allco Fin. Ltd. v. Klee*, 861 F.3d 82 (2d Cir. 2017) ......................................................... 2

*American Civil Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ...................................... 2

*Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015 (D.C. Cir. 2000) ............................................ 10

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ............................................................... 6

*Boelter v. Hearst Communications, Inc.*, 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ................ 2

*Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010) ................................................... 3

*Cherri v. Mueller*, 951 F. Supp. 2d 918 (E.D. Mich. 2013) ................................................... 7

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................................... 3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................... 3, 4, 5

*Cohen v. Facebook, Inc.*, 252 F. Supp.3d 140 (E.D.N.Y. 2017) .............................................. 4

*De La Mota v. U.S. Department of Education*, 2003 WL 21919774
(S.D.N.Y. Aug. 12, 2003) ................................................................................. 10

*Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990) ....................................................... 7, 8

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) .................................................. 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 3

*M.E.S., Inc. v. Snell*, 712 F.3d 666 (2d Cir. 2013) ....................................................... 5

*McLennon v. City of New York*, 171 F. Supp.3d 69 (E.D.N.Y. Mar. 2016) ..................................... 9

*Morales v. Chadbourne*, 996 F. Supp.2d 19 (D.R.I. 2014) ................................................... 9

*National Council of La Raza v. Gonzales*, 468 F. Supp.2d 429 (E.D.N.Y. 2007) ....................... 2, 6

*National Wildlife Federation v. Benn*, 491 F. Supp. 1234 (S.D.N.Y. 1980) .............................. 10

*Pearl River Union Free Sch. Dist. v. King*, No. 12-cv-2938-KMK,
2016 WL 5867063 (S.D.N.Y. Oct. 6, 2016) ................................................................. 10

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ............................................... 10

*Raines v. Byrd*, 521 U.S. 811 (1997) ....................................................................... 1, 2

*Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000) ......................... 8

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ......................................................... 2, 9

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ......................................... 4

*Tachonia v. United States*, 386 F.3d 205 (2d Cir. 2004) ............................................... 2

*Thomas v. City of Los Angeles*, 978 F.2d 504 (9th Cir. 1993) ...................................... 8

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................................... 4, 5

*Williams v. City of New York*, 34 F. Supp. 3d 292 (S.D.N.Y. July 2014) ...................... 9

## PRELIMINARY STATEMENT

Defendants Kirstjen M. Nielsen, Secretary of Homeland Security; Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); Leon Hayward, Acting Director, CBP New York Field Operations; Francis J. Russo, CBP Port Director, John F. Kennedy International Airport, Port of Entry; Thomas Homan, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Thomas Decker, Director, New York Field Office, Enforcement and Removal Operations, ICE; and David Jennings, Director, San Francisco Field Office, ICE (collectively "Defendants") respectfully submit this memorandum of law in further support of their Motion to Dismiss Plaintiffs' Complaint for lack of jurisdiction and for failure to state a claim.

Plaintiffs allege that on one occasion they were required to show identification as CBP officers attempted to locate a passenger in the process of being removed from the United States and originally scheduled to be on Plaintiffs' domestic flight.  Plaintiffs' claims fail for two reasons. First, Plaintiffs do not have standing; increased risk of exposure to an alleged policy does not establish an imminent injury.  Second, this incident does not involve final agency action, as required for review pursuant to the Administrative Procedure Act ("APA").  Thus, the Complaint must be dismissed.

## ARGUMENT

I.      **PLAINTIFFS DO NOT HAVE STANDING TO BRING THEIR CLAIMS**

A.      **Legal Standard Governing Standing For Injunctive and Declaratory Relief**

As the party seeking relief, Plaintiffs are required to establish standing to sue.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  The standing inquiry is rigorous in cases like the present one, where a court examines the actions of another branch of government.  *Raines v. Byrd*, 521 U.S. at 819-20.  Yet, Plaintiffs misconstrue *Raines*, arguing that it controls only in cases where one branch of government challenges the actions of another.  *See* Plaintiffs' Memorandum in Opposition to

Defendants' Motion to Dismiss ("Pl. Opp.") 8. Plaintiffs are incorrect. *Raines* raised separation

of powers issues, which flowed from the *judiciary's* role in reviewing the actions of another branch

of government. *Raines v. Byrd*, 521 U.S. at 819-20. *See American Civil Liberties Union v.*

*Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (especially rigorous standing inquiry when the court

must "decide whether an action taken by one of the other branches of the Federal Government was

unconstitutional") (emphasis added) (internal citations and quotations omitted). Courts in this

district have followed that reasoning and cited to *Raines* in explaining the criteria for standing in

cases involving action taken by federal agencies. *See Abidor v. Napolitano*, 990 F. Supp. 2d 260,

270 (E.D.N.Y. 2013); *National Council of La Raza v. Gonzales*, 468 F. Supp.2d 429, 436

(E.D.N.Y. 2007).[1] Here, Plaintiffs specifically request review pursuant to the Administrative

Procedure Act. Complaint Dkt. No. 1 ("Compl.") ¶ 10. Any such review requires this Court to

examine the actions of the federal agencies involved. Accordingly, the "especially rigorous"

standing requirement outlined in *Raines* applies.

To establish standing Plaintiffs must demonstrate an injury in fact. *Allco Fin. Ltd. v. Klee*,

861 F.3d 82, 95 (2d Cir. 2017). As Plaintiffs seek prospective relief, to satisfy the injury

requirement, they "must demonstrate *both* a likelihood of future harm *and* the existence of a policy

or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (emphasis in original).

Plaintiffs argue that the Second Circuit was mistaken in *Shain* and that they need only show

*either* that they will be exposed to the challenged policy or practice *or* that they face a substantial

risk that the harm will recur.[2] Pl. Opp. 9. However, to meet the standing requirement, Plaintiffs

---

[1] Plaintiffs' reliance on *Boelter v. Hearst Communications, Inc.*, 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) and *Tachonia v. United States*, 386 F.3d 205 (2d Cir. 2004) is misplaced, as neither case required review of federal agency action.

[2] In putting forth their own standard, Plaintiffs wrongly rely on *Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) and *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). Both

must show injury that is concrete and particularized, as well as actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Plaintiffs seek to enjoin an alleged official policy or practice, Plaintiffs must demonstrate both that there is a policy or practice and that there is a likelihood of future harm to Plaintiffs as a result. The Supreme Court's holding in *Lyons City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), requires such a showing. In *Lyons*, the court held that "to have a case or controversy with the City that would sustain Count V [his request for injunctive relief], plaintiff would have to credibly allege that he faced a realistic threat from the future application of the City's policy." *Lyons*, 461 U.S. at 106 n.7. *See also Aguilar v. ICE*, 811 F. Supp. 2d 803, 826-27 (S.D.N.Y. 2011) (the court must determine "whether the plaintiffs have adequately alleged that they are realistically threatened by a repetition of their experience" and "whether the plaintiffs have adequately alleged the existence of an official policy or its equivalent") (citing to *Shain* and *City of Los Angeles v. Lyons*). Because Plaintiffs cannot show either an official policy or its equivalent, or a realistic threat of future harm flowing from the alleged policy, they cannot demonstrate an injury sufficient to establish standing.

### B.    Plaintiffs Cannot Allege An Injury-In-Fact

With respect to a likelihood of future harm, the Supreme Court has held that the threatened injury must be "'*certainly* impending to constitute an injury in fact.'" *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (emphasis added by the *Clapper* court) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs make no attempt to show that any claimed future injury is certainly impending. In fact, they argue that they are not required to meet that standard, but need only demonstrate a

---

cases involved official conduct pursuant to statutes and the question of an official policy was not at issue.

"substantial risk" that harm will occur.  Pl. Opp. 8.  The Supreme Court does state in a footnote

that it has, at times, found standing based on a "substantial risk" that harm will occur.  *Clapper v.*

*Amnesty International USA*, 568 U.S. at 414 n.5.  Yet, the court does not state definitively that this

standard is any different from a "clearly impending" or "certainly impending" standard.  *Id.*

(evaluating plaintiffs' claims "to the extent that the 'substantial risk' standard is relevant and

distinct from the clearly impending requirement").  *Susan B. Anthony List v. Driehaus*, 134 S. Ct.

2334 (2014), upon which Plaintiffs rely in support of the "substantial risk" standard, states, in

essence, that the Supreme Court has recognized both standards.  Plaintiffs seem to argue that the

"certainly impending" standard no longer applies since *Susan B. Anthony List*, though they offer

no support for that assertion.

This Court examined both the "certainly impending" standard and the "substantial risk"

standard in *Cohen v. Facebook, Inc.*, 252 F. Supp.3d 140, 149 n.3 (E.D.N.Y. 2017) (Garaufis, J.),

noting that while the substantial risk standard is possibly lower, "[a]t this point, it is not clear when

one or the other standard should be applied . . . or even whether those standards are distinct."  This

Court also observed that while the substantial risk standard has been applied by some courts in

pre-enforcement challenges to laws, the standard for actuality or imminence with regard to other

types of claims is less clear."  *Id*.   Indeed, Plaintiffs cite to cases involving pre-enforcement

challenges to laws in support of their argument that the substantial risk standard applies here.  Pl.

Opp. 8.  However, those cases are readily distinguishable, as the present case does not involve the

threat of prosecution, or any civil or criminal penalty.

Here, even if this Court were to find that the substantial risk standard applies and that

such a standard is lower than the certainly impending standard, Plaintiffs still have not

demonstrated an injury in fact.  The Supreme Court made clear in *Clapper* that "'allegations of

4

*possible* future injury' are not sufficient" to establish standing. *Clapper v. Amnesty Int'l USA,* 568

U.S. 398, 409 (2013) (emphasis added by the *Clapper* court) (citing *Whitmore v. Arkansas*, 495

U.S. 149, 158 (1990)).  Further, even an "objectively reasonable likelihood" that future injury will

occur is not sufficient to demonstrate an injury in fact.  *Clapper*, 568 U.S. at 410.

### 1.      Plaintiffs cannot show a likelihood of future harm.

Any claim that Plaintiffs face a likelihood of future harm is conjectural and not supported

by Plaintiffs' experience or the facts alleged in the Complaint.  Plaintiffs' claims are based on a

one-time incident.  None of the nine Plaintiffs have had their identification checked deplaning any

other domestic flight from January 2016 through April 12, 2018.  *See* Declaration of Dara A. Olds,

dated April 20, 2018 ("Olds Decl.") attaching, as Exhibit A, Plaintiffs' Verified Responses to

Defendants' First Set of Interrogatories ("Plaintiffs' Interrogatory Responses") at No. 7.[3]  Though

Plaintiffs have traveled on a combined total of at least 165 domestic flights in the period mentioned

above (Olds Decl., Exhibit A, Plaintiffs' Interrogatory Responses at No. 6), the Complaint does

not allege that an identification check took place on any occasion other than the single incident on

which they premise this action.

Plaintiffs attempt to get around this by arguing that they face "an increased risk of

exposure" because "their frequent air travel *may* subject them to Defendants' unlawful policy."

Pl. Opp. 13 (emphasis added).  This speculative claim falls far short of establishing an imminent

injury.  First, as explained in more detail below, Plaintiffs do not plausibly allege an official policy.

Second, Plaintiffs cannot meet the imminent injury requirement by claiming "an increased risk of

exposure."  While Plaintiffs' cite to *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003) in support,

---

[3] When determining whether Plaintiffs have proved that the Court has jurisdiction over a claim, the Court may consider information outside of the pleadings.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

that case is inapposite.  *Baur* presented a unique scenario that does not apply here.  There, the Second Circuit found as a matter of law that "exposure to an enhanced risk of disease transmission may qualify as an injury-in-fact in *consumer food and drug safety* suits."  *Baur v. Veneman*, 352 F.3d at 628 (emphasis added).  Yet, the court explicitly declined to "decide as a matter of law whether enhanced risk generally qualifies as sufficient injury to confer standing, nor do we purport to imply that we would adopt such a broad view."  *Baur v. Veneman*, 352 F.3d at 634.  As Plaintiffs' claims do not arise in the context of consumer food and drug safety, their claims of "increased risk of exposure" do not establish an injury in fact.  Indeed, in *National Council of La Raza v. Gonzales*, 468 F. Supp.2d 429, 440 (E.D.N.Y. 2007), this Court flatly declined to expand the notion of "heightened risk" as part of the standing analysis, noting that the "doctrine has only been applied in a narrow range of cases . . . and then, only in the context of exposure to environmental conditions or harmful products."[4]

Moreover, Plaintiffs' one past occurrence and indefinite plans to travel at some unknown time illustrate that their claims of future injury are hypothetical, too abstract to show the imminence required to establish standing.  Plaintiffs' reliance on *Cherri v. Mueller*, 951 F. Supp. 2d 918 (E.D. Mich. 2013) and *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990) is misplaced.  In *Cherri*, the plaintiffs alleged that they had been subject to a policy multiple times, requiring that they answer questions about their religion at the border; they declined to cross the border again to avoid the same conduct.  *Cherri v. Mueller*, 951 F. Supp. 2d at 930.  In *Hernandez*, pursuant to a regulation in effect at the time, attempting to enter the United States with a Puerto Rican birth certificate

---

[4] *See also Abidor v. Napolitano*, 990 F. Supp.2d 260, 273 (E.D.N.Y. Dec. 31, 2013) (rejecting plaintiffs' reliance on *Baur*; "were all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot because all hypothesized, non-imminent injuries could be dressed up as increased risk of future injury") (internal citations omitted)).

6

raised a "red flag," subjecting the holder of that birth certificate to discretionary denial of entry. *Hernandez v. Cremer*, 913 F.2d at 235.  Because of the nature of the regulation, if the plaintiff tried to enter the United States again with his Puerto Rican birth certificate, he would be stopped. The likelihood of future harm was substantial due to the nature of the regulation.

In contrast here, Plaintiffs have not alleged that they will be required to show their identification if they take a domestic flight.  Instead, as mentioned above, they allege an "increased risk of exposure" to an alleged policy.  Further, unlike the plaintiffs in *Cherri* or *Hernandez*, Plaintiffs here have not changed their plans in response to the alleged policy.  On the contrary, in addition to the 165 domestic flights mentioned above, Plaintiffs continue to fly regularly.  Compl. ¶ 74.  As Plaintiffs have not been subject to the alleged policy in spite of numerous domestic flights, their claims of a likelihood of future harm are conjectural.  Thus, they cannot show either a certainly impending or a substantial risk of future injury.

### 2.      Plaintiffs cannot show an official policy or its equivalent.

Plaintiffs' claims fail because they do not plausibly allege that Defendants have a policy or practice of checking the identification of passengers who arrive on domestic flights.  At the outset, the Complaint does not allege any facts to suggest that ICE has an official policy of checking the identification of passengers who deplane from a domestic flight.  Plaintiffs do not claim that ICE conducted the identification check following Delta Flight 1583, nor do they allege any other facts to support an inference that ICE has a policy of conducting such checks.

In support of their allegation of a CBP policy, Plaintiffs cite to fragments of statements reported in a Rolling Stone article, an article in the Independent, and an article in Gotham, all referring to this one incident involving Delta Flight 1583.  Pl. Opp. 11-12.  Those publications do not speak on behalf of CBP and such statements cannot plausibly allege that CBP has any policy or practice.  Plaintiffs also cite to an email from CBP JFK International Airport Port Director

7

Francis J. Russo.  However, the email does not express any policy.  *See* CBP JFK International Airport Port Director Francis J. Russo's Declaration ("Russo Decl."), ¶ 4, attached to Defendants' opening brief at Exhibit A.  Further, Director Russo has been Port Director at JFK since December 2016 and is not aware of any other incident in which CBP checked the identification of all passengers disembarking a domestic flight.  *Id*., ¶ 5.  As mentioned above, Plaintiffs have not alleged any other such incident.  *See Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) ("proof of the existence of a policy or practice . . . requires proof of more than one instance of official misconduct").

While Plaintiffs cite to cases where courts have recognized an official policy or its equivalent as part of the standing inquiry, in those cases there were allegations that the plaintiffs were subject to the policy repeatedly, unlike the one occurrence at issue here.  *See e.g.*, *Thomas v. City of Los Angeles*, 978 F.2d 504, 506, 507 (9th Cir. 1993) (finding official policy where plaintiffs alleged ten separate incidents; some class members claimed to have suffered repeated incidents of police misconduct, as well as continuing present adverse effects); *Aguilar v. ICE*, 811 F. Supp. 2d 803, 826-27 (S.D.N.Y. 2011) (official policy sufficiently alleged where agents conducted operations at eight separate homes, stated they would return to homes, and did return to at least one); *Morales v. Chadbourne*, 996 F. Supp.2d 19, 38 (D.R.I. 2014) (plaintiff was detained on two separate occasions and told it could happen to her again).  In those cases, courts found an official policy based on more than the one incident alleged here.[5]

---

[5] Plaintiffs argue that Defendants' contention that identification checks of domestic passengers may be constitutional in some instances constitutes an admission that the defendant agencies had a policy of conducting such checks.  Pl. Opp. 12.  This is incorrect.  Rather than indicating any policy or practice of the defendant agencies, Defendants' footnote argues only that the language of the injunction Plaintiffs seek is overbroad.

Because Plaintiffs have not plausibly alleged an official policy or practice or a likelihood of future harm, the Complaint should be dismissed for lack of jurisdiction.[6]

## II.   PLAINTIFFS CANNOT SHOW FINAL AGENCY ACTION SUBJECT TO REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT

As mentioned above, Plaintiffs' Complaint fails to plausibly allege an official policy or practice promulgated by any of the defendants or their agencies.  Instead, Plaintiffs claim that they were required to show identification on one occasion following a domestic flight.  Plaintiffs attempt to bolster their claim by alleging that the one-time occurrence was pursuant to final agency action and "routine," requiring APA review.

However, Plaintiffs do not offer any statements from Defendants expressing a policy requiring passengers to produce identification after disembarking a domestic flight.  None of the statements in the Complaint alleged to have been made directly by CBP employees articulate a CBP policy of checking the identification of passengers deplaning domestic flights.  The Complaint alleges that the two CBP officers who checked Plaintiffs' identification "refused to explain CBP's justification" for the identification check.  Compl. ¶ 49.  The email from Director Russo referenced in the Complaint (Compl., ¶ 65), does not state that CBP formulated a policy or completed decisionmaking concerning identification of passengers arriving on domestic flights, nor does the email give rise to such an inference.

---

[6]  Though Plaintiffs request an opportunity to conduct discovery, discovery is not appropriate here where Plaintiffs' "increased risk of exposure" theory of standing fails as a matter of law. Moreover, Courts have often dismissed cases where Plaintiffs' allegations do not establish standing to bring a claim.  *See e.g. Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *McLennon v. City of New York*, 171 F. Supp.3d 69 (E.D.N.Y. Mar. 2016); *Williams v. City of New York*, 34 F. Supp. 3d 292 (S.D.N.Y. July 2014) (Caproni, J.); *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. Dec. 31, 2013).

Plaintiffs instead ask the Court to surmise a policy from portions of articles reporting on this one event.  Compl. ¶¶ 61-64.  *See* Pl. Opp. 22-24.  Plaintiffs then cite to cases holding that agency policies and routine practices are subject to judicial review.  However, in those cases, the defendants conceded that they abided by the policy or practice in question.[7]  Defendants do not admit that they have a policy of requiring passengers disembarking domestic flights to present identification.   Because the allegations in the Complaint do not plausibly allege final agency action, Plaintiffs' claims are not subject to APA review.  *See   Pearl River Union Free Sch. Dist. v. King*, No. 12-cv-2938-KMK, 2016 WL 5867063, at *13 (S.D.N.Y. Oct. 6, 2016).  Accordingly, the Complaint must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal of Plaintiffs' Complaint in its entirety.

Dated: Brooklyn, New York
       April 20, 2018

                                                      Respectfully submitted,
                                                      RICHARD P, DONOGHUE
                                                      United States Attorney
                                              By:     s/ Dara A. Olds
                                                      DARA A. OLDS
                                                      Assistant United States Attorney

---

[7] *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (defendants admitted they engaged in the policy alleged); *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (defendants conceded that the challenged Periodic Monitoring Guidance included the agency's settled position); *De La Mota v. U.S. Department of Education*, 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003) (DOE denied plaintiffs' request to cancel Perkins loans based on DOE's stated interpretation of a regulation); *National Wildlife Federation v. Benn*, 491 F. Supp. 1234, 1241 (S.D.N.Y. 1980) (plaintiffs "challeng[ed] specific procedures and policies to which the [defendant] concededly adheres . . .").