UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

KELLEY AMADEI, CAROLA CASSARO, LAURA
CUCULLU, COREY FIELDS, ANNE GARRETT, AMY
LANIGAN, MATT O'ROURKE, ERIC POLK, and
KAREN POLK,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 17-CV-5967 |
| v. | (Garaufis, J.) (Scanlon, M.J.) |
| KIRSTJEN M. NIELSEN, *et al.*, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
RENEWING THEIR REQUEST TO STAY DISCOVERY**


RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


DARA A. OLDS
MATTHEW J. MODAFFERI
Assistant U.S. Attorneys
(Of Counsel)

## **Table of Contents**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND..................................................................2

ARGUMENT .............................................................................................................................6

      GOOD CAUSE EXISTS TO STAY DICOVERY BECAUSE
      DEFENDANTS' MOTION TO DISMISS DEMONSTRATES
      THAT PLAINTIFFS LACK STANDING, PLAINTIFFS SEEK
      OVERBROAD AND BURDENSOME DISCOVERY, AND
      PLAINTIFFS WOULD NOT BE UNFAIRLY PREJUDICED
      BY A STAY ......................................................................................................6

      A. Defendants Have Made a Strong Showing that Plaintiffs Do
         Not Have Standing to Seek Declaratory and Injunctive
         Relief ............................................................................................................6

      B. Plaintiffs Seek Overbroad and Burdensome Discovery ................................10

           (i) Plaintiffs' overbroad, irrelevant, and otherwise
              improper Rule 30(b)(6) Notice .......................................................11

           (ii) Plaintiffs seek to conduct many time-consuming
              and costly depositions .....................................................................13

           (iii)Plaintiffs demand overbroad and unduly
              burdensome e-discovery ...................................................................13

      C. A Stay Would Not Result in Any Risk of Unfair Prejudice
         to Plaintiffs..................................................................................................15

CONCLUSION..........................................................................................................................18

## <u>Table of Authorities</u>

Page(s)

Cases

*Abidor v. Napolitano*,
  990 F. Supp. 2d 260 (E.D.N.Y. Dec. 31, 2013) ........................................................ 8

*Am. Civil Liberties Union v. Clapper*,
  785 F.3d 787 (2d Cir. 2015)...................................................................................... 8

*Bellinger v. Astrue*,
  06-CV-321 (CBA),
  2011 WL 4529602 (E.D.N.Y. Sept. 28, 2011) ....................................................... 12

*Bethpage Water Dist. v. Northrop Grumman Corp.*,
  No. 13-CV-6362 (SJF) (WDW),
  2014 WL 6883529 (E.D.N.Y. Dec. 3, 2014) ..................................................... 14, 16

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*,
  236 F.R.D. 113 (E.D.N.Y. 2006) .............................................................................. 6

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013).................................................................................................. 8

*In re Term Commodities Cotton Futures Litig.*,
  No. 12-cv-5126 (ALC) (KNF),
  2013 WL 1907738 (S.D.N.Y. May 8, 2013) ...................................................... 15, 16

*Josie-Delerme v. Am. Gen. Fin. Corp.*,
  08-CV-3166 (NG)(MDG),
  2009 WL 497609 (E.D.N.Y. Feb. 26, 2009)............................................................. 6

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
  209 F.R.D. 361 (S.D.N.Y. 2002) ........................................................................... 12

*Knife Rights, Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015)...................................................................................... 8

*McLennon v. City of New York*,
  171 F. Supp. 3d 69 (E.D.N.Y. Mar. 18, 2016).......................................................... 8

*O'Sullivan v. Deutsche Bank AG*,
  17 Civ. 8709 (LTS) (GWG),
  2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018)......................................................... 17

*Picture Patents, LLC v. Terra Holdings LLC*,
  07 Civ. 5465, 07 Civ. 5567 (JGK) (HBP),
  2008 WL 5099947 (S.D.N.Y. Dec. 3, 2008) ........................................................... 15

*Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*,
  No. 05-cv-4294 (DRH) (ETB),
  2006 WL 897996 (E.D.N.Y. Mar. 31, 2006) ................................................... 6, 7, 17

*Susan B. Anthony List v. Driehaus*,
  573 U.S. _, 134 S. Ct. 2334 (2014) ............................................................................ 8

*United States v. Cnty. of Nassau*,
  188 F.R.D. 187 (E.D.N.Y. 1999) .............................................................................. 17

*United States v. Niagara Cnty.*,
  2015 WL 6554713 (W.D.N.Y. Oct. 29, 2015) ......................................................... 11

<u>**PRELIMINARY STATEMENT**</u>

Defendants Kirstjen M. Nielsen, Kevin K. McAleenan, Leon Hayward, Francis J. Russo, Thomas Homan, Thomas Decker, and David Jennings (collectively, "Defendants"), sued in their official capacities, respectfully renew their request that the Court stay discovery pending a decision on their motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Plaintiffs do not consent to a stay of discovery.

Since the fully-briefed motion was submitted for the Court's consideration, Plaintiffs have demanded that Defendants respond to extremely burdensome discovery that has already resulted in Defendants, among other things, (1) reviewing 31,555 documents, totaling 143,858 pages, (2) producing a senior U.S. Customs and Border Protection ("CBP") official, Frank Russo, the CBP Port Director at JFK and Acting Director for the CBP New York Field Office, for a six-hour deposition on August 30, 2018, and (3) producing a United States Immigration and Customs Enforcement ("ICE") officer for a deposition on September 20, 2018.  Further, as discovery proceeds, Plaintiffs have noticed and the parties have tentatively agreed that the next stage of discovery will require Defendants to (1) review another 43,612 documents and produce them, to the extent they are responsive to Plaintiffs' requests; (2) produce at least three additional federal officials for deposition; (3) prepare and produce various witnesses to testify about fourteen separate topics set forth in a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6); (4) attend four non-party depositions in San Francisco, California; and (5) take six Plaintiffs' depositions outside of the Eastern District of New York, including Washington, D.C., Atlanta, and San Francisco.

Accordingly, in light of the strong showing that Plaintiffs lack standing to seek declaratory and injunctive relief, Plaintiffs overbroad and unduly burdensome discovery, and the

1

lack of any prejudice to Plaintiffs, Defendants renew their request that the Court stay discovery pending a decision on their motion to dismiss the Complaint.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs allege that on February 22, 2017, after they flew from San Francisco to John F. Kennedy Airport ("JFK") on Delta Flight 1583, two United States Customs and Border Protection ("CBP") officers required passengers to show identification prior to deplaning at JFK. *See* Complaint, Dkt. No. 1 ("Compl.") at ¶ 1.  Plaintiffs claim that this action violated their Fourth Amendment rights and occurred pursuant to an unlawful CBP policy.  Compl. ¶¶ 1, 79, 82.  On October 12, 2017, Plaintiffs filed this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. 706(2)(A)-(C), seeking declaratory and injunctive relief.

On January 11, 2018, Defendants sought leave to move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6).  *See* Dkt. Entry No. 19.  On January 16, 2018, Defendants moved for a stay of discovery in light of the anticipated motion to dismiss.  *See* Dkt. Entry No. 20.  On January 25, 2018, Magistrate Judge Scanlon preliminarily denied a motion to stay discovery because the case did not "seem like a particularly difficult case," but allowed Defendants to "raise the issue again" "[i]f it becomes too difficult."  *See* Relevant portions of the Court Transcript dated January 25, 2018, attached hereto as Exhibit A, at p. 11.  On February 9, 2018, the parties appeared before Your Honor for a pre-motion conference, at which the Court granted Defendants leave to move to dismiss.  *See* Dkt. Entry dated February 12, 2018.  During the conference, Defendants asked the Court to stay discovery pending a decision on the motion. In response, Plaintiffs argued against a stay of discovery by representing, *inter alia*, that they "have submitted *targeted* and *limited* requests … since [Magistrate Judge Scanlon's] ruling." *See* Relevant portions of the Court Transcript dated February 9, 2018, attached hereto as Exhibit

2

B, at pp. 14-15.   Your Honor agreed with Magistrate Judge Scanlon and denied Defendants'
motion to stay discovery.  *See* Dkt. Entry dated February 12, 2018.

Thereafter, on April 20, 2018, Defendants filed their fully-briefed motion to dismiss,
which raises serious doubts as to the Court's subject matter jurisdiction over Plaintiffs' claims.
*See* Dkt. Nos. 32, 34.  Specifically, Defendants argued that Plaintiffs lack standing to bring their
claims for declaratory and injunctive relief, and CBP's alleged actions do not constitute final
agency action under the APA.  *Id.*  The motion is pending before the Court.

On April 26, 2018, pursuant to the January 25, 2018 Case Management Scheduling Order
(ECF Dkt. No. 24), the parties filed a joint letter outlining the status of discovery and the parties'
respective disputes regarding document discovery, including, among other things, Plaintiffs'
demand for a nationwide search for documents and emails concerning what they have continued
to allege is a CBP nationwide policy regarding checking identification when deplaning domestic
flights.  *See* Dkt. Entry No. 36.  In response to Defendants' unequivocal and sworn discovery
responses stating that there is no such policy, written or otherwise, and that Defendants were
being asked to produce a universe of records to prove the nonexistence of a policy, Magistrate
Judge Scanlon limited discovery to any CBP policies implemented in New York related to the
agents' actions at issue in this litigation.  *See* Relevant portions of the Court Transcript dated
May 1, 2018, attached hereto as Exhibit C, at pp. 18-21, 24.

Plaintiffs also served a document request seeking all documents,[1] including electronically
stored information, concerning the identification check conducted on Delta flight 1583.
Defendants responded stating that they will produce non-privileged, non-protected documents in
their possession after a reasonable search.  On July 12, 2018, Plaintiffs filed a motion to compel

---

[1] On September 21, 2018, Plaintiffs served their Second Set of Interrogatories and Fourth
Request for Production of Documents on Defendants.

Defendants to search for all documents, including electronically stored information, from CBP custodians not only in New York, but also in Washington D.C.  *See* Dkt. Entry No. 43.  In response, Defendants offered to produce email and other communications from fifteen CBP management officials who were most likely to have communication and/or documents responsive to Plaintiffs' request.  *See* Dkt. Entry No. 44.  As a result, CBP has run e-discovery searches and has reviewed a resulting 31,555 documents, totaling 143,858 pages.  In addition to the review of records of those fifteen custodians, Plaintiffs sought email and other communications from another fourteen custodians, which was permitted by Magistrate Judge Scanlon subject to relevancy and proportionality objections.  *See* Dkt. Entry No. 48.  These additional e-discovery searches have yielded another 43,612 documents.

Plaintiffs now demand that, in addition to their August 30, 2018 deposition of Frank Russo, the September 20, 2018 deposition of an ICE officer, and their continuing demand for electronically stored information, Defendants produce for deposition additional individual officials and, pursuant to Fed. R. Civ. P. 30(b)(6), witnesses who can testify on behalf of the agency with respect to fourteen separate, overly broad topics, one of which includes six discrete subparts.  *See* Dkt. Entry Nos. 51, 54.  Separate and apart from the impropriety in forcing the United States to undertake scorched earth discovery before the Court has addressed serious questions regarding its subject matter jurisdiction to reach the merits of this case, Plaintiffs' 30(b)(6) Notice to CBP is far outside the proportionate scope of discovery for the narrow claims at issue in this case.  *See* Dkt. Entry No. 54.  The Notice seeks testimony regarding topics that are variously overbroad, irrelevant, consist of purely legal issues, and seek information protected from disclosure by the law enforcement and other privileges.  *Id.*  Plaintiffs have indicated their

desire to conduct ten depositions, the limit set forth under Rule 30(a), yet continue to "reserve the right to notice further depositions." *See* Dkt. Entry No. 51.

Moreover, the Plaintiffs who do not live in the New York area – six out of the nine – refuse to appear for their respective depositions in this District, insisting that Defendants will have to take their depositions in various locations across the country, including Washington, D.C., Atlanta, and San Francisco. *See* Dkt. Entry No. 54.  In addition to all of the above, Plaintiffs noticed the depositions of four non-party Delta airline employees to take place in San Francisco. *Id.*

In sum, discovery, as Plaintiffs have pursued and envision, has been and will increasingly be costly, burdensome, and disproportionate to the needs of the case.  There is no doubt that the scope of discovery has grown beyond Plaintiffs' prior representation of "targeted and limited requests."  Such costly discovery is certainly not appropriate where, as here, subject matter jurisdiction is arguably lacking.  As Magistrate Judge Scanlon observed on January 25, 2018, if discovery were to become burdensome and difficult – and it has – Defendants could renew their request to stay discovery pending the outcome of their motion to dismiss the Complaint. Defendants do so herein.

5

## **ARGUMENT**

**GOOD CAUSE EXISTS TO STAY DISCOVERY BECAUSE DEFENDANTS' MOTION TO DISMISS DEMONSTRATES THAT PLAINTIFFS LACK STANDING, PLAINTIFFS SEEK OVERBROAD AND BURDENSOME DISCOVERY, AND PLAINTIFFS WOULD NOT BE UNFAIRLY PREJUDICED BY A STAY**

Under Rule 26, a court can grant a stay of "discovery during the pendency of a motion to dismiss for good cause shown." *Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, No. 05-cv-4294 (DRH) (ETB), 2006 WL 897996, at *1 (E.D.N.Y. Mar. 31, 2006). In determining whether a stay of discovery is appropriate, the Court can consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Josie-Delerme v. Am. Gen. Fin. Corp.*, 08-CV-3166 (NG)(MDG), 2009 WL 497609, at *1 (E.D.N.Y. Feb. 26, 2009) (staying discovery where defendant made a strong showing that plaintiff's claims were unmeritorious, and even though defendant did not establish that it would be "unduly burdened" by having to respond to discovery demands, the court found that "resolution of the motion to dismiss may obviate the need for potentially onerous discovery," and a stay would not prejudice plaintiff); *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) (granting stay of discovery where defendants "raise[d] substantial issues with regard to many, if not all, of the causes of action, " "[b]y waiting until a decision is reached on the pending motion, the areas of discovery may well be substantially reduced, if not eliminated," and plaintiff will not be prejudiced by a stay).

All three factors weigh in favor of a stay. Defendants have made a strong showing regarding the viability of Plaintiffs' claims and have raised substantial issues with respect to the

Court's subject matter jurisdiction.  *Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, 2006 WL 897996, at \*2.

> **A.     Defendants Have Made a Strong Showing that Plaintiffs Do Not Have Standing to Seek Declaratory and Injunctive Relief**

As Defendants' fully-briefed motion makes clear, Plaintiffs lack standing to bring their APA claim, which challenges CBP's request for identification as a Fourth Amendment violation for which Plaintiffs claim to be entitled to declaratory and injunctive relief.  Plaintiffs cannot demonstrate that they have the requisite personal stake in the outcome of this action to warrant the invocation of this Court's jurisdiction.   Indeed, regardless of whether the appropriate standard requires a showing of harm that is "certainly impending" (Defendants' position) or a "substantial risk" (Plaintiffs' position), Plaintiffs cannot plausibly establish either.  *See* Dkt. Entry No. 34.

Plaintiffs' claims are built on pure speculation.  Plaintiffs speculate that they might one day be asked to show identification, not just pursuant to the unquestionably constitutional and now-routine practice of presenting identification to Transportation Security Administration agents on an occasion when they might pass through a security checkpoint on their way to a currently hypothetical domestic flight, but again upon arrival at a hypothetical destination under circumstances where federal agents might be asked tasked with meeting and identifying a passenger who is subject to removal from the United States.  In contrast, Defendants have established, through testimony and documentary discovery already produced in this action, that they have no policy or practice of deploying agents to meet and request identification from passengers deplaning domestic flights, and that the incident on February 22, 2017 was the only occasion when such a practice was known to have been employed by CBP.  Nevertheless, Plaintiffs have coupled their speculation with this single incident in an attempt to characterize

7

what occurred as "a policy or practice" that *may* subject them to "an increased risk of exposure" to having their identifications checked again on a domestic flight.    *See* Dkt. Entry No. 33. Plaintiffs' conjecture does not satisfy constitutional standing.

Plaintiffs cannot show an alleged injury that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"    *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. _, _, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient.") (internal quotations and citation omitted)).   Plaintiffs' allegations regarding this one discrete incident coupled with speculation that this might happen again are not enough to establish standing.  *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 105-106 (E.D.N.Y. Mar. 18, 2016) (holding that "[w]hile Plaintiffs have sufficiently alleged a past injury based on [each plaintiff alleging a single incident of an] unlawful stop[], their allegations fail to allege a sufficient likelihood of a future concrete injury" and "do not rise to the level required to establish standing …"); *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 272, 275 (E.D.N.Y. Dec. 31, 2013) (finding plaintiffs lacked standing when "even given past harm [of a suspicionless search], absent a sufficient likelihood that the plaintiff will again be wronged in a similar way, he is no more entitled to an injunction than any other citizen" and "[a]n action for declaratory judgment does not provide an occasion for addressing a claim of alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date.") (citations omitted)); *see also Clapper v. Amnesty International USA*, 568 U.S. 398, 411-15 (2013) (dismissing claims for lack of standing, finding

that plaintiffs' fears that their communications would be subject to surveillance as a result of the directive at issue were conjectural).

In addition to the speculation that forms the basis for the allegations that CBP might somehow check identification of passengers disembarking from a domestic flight again, all of the discovery taken by Plaintiffs to date simply confirms that Plaintiffs lack a good faith basis to maintain the allegations set forth in the Complaint.  The documents produced by Defendants, along with Plaintiffs' discovery demands, including their thorough questioning of CBP JFK Port Director Russo during his six-hour deposition, establish that Plaintiffs are relying on nothing more than out-of-context snippets from an email chain (*see* paragraph 65 of the Complaint, citing to the email which is attached to the Complaint as Exhibit A) and media articles recasting the facts to fit Plaintiffs' narrative of a sweeping practice of detaining and searching the domestic flying public.  Indeed, Plaintiffs allege in the Complaint that Russo's post-incident email, which says in relevant part:  "We were simply assisting our sister agency in tracking down one individual … [w]e were asked by ICE/ERO to identify the individual as he arrived off the flight from San Francisco because ICE was unable to get to the flight on time … [w]e do this every day.  Someone took a picture and put it on twitter.  That's what led to the hysteria," means that CBP routinely checks the identification of passengers disembarking from a domestic flight.  Compl., ¶¶ 65, 76.  However, the meaning Plaintiffs have attached to the phrase "we do this every day" belies both common sense and the evidentiary record.  Russo explained at his deposition that CBP helps other law enforcement agencies "every day," not that they check identification of passengers disembarking from a domestic flight every day.  *See* Relevant Portions of the transcript generated from Mr. Russo's deposition, dated August 30, 2018, attached hereto as Exhibit D, at pp. 233-235.

Plaintiffs use the same tactic with respect to the allegations in paragraphs 63 and 64 of the Complaint. Those paragraphs cite to internet media articles that misinterpret and misconstrue CBP's response. *See* Compl., ¶ 63 (identification checks are "not a new policy" and it is "not unusual for us to assist our fellow law-enforcement agencies"), ¶ 64 (searches and collaboration between CBP and ICE are "routine"). Identification checks are not a new CBP policy *on the international side* and law enforcement agencies often work with one another. *See* Exhibit D, pg. 210. Thus, the statement that identification checks are not a new policy is only partially accurate, as identification checks are not a new policy "on the international side." In sum, Plaintiffs have failed to establish the existence of a policy or practice that would put them at substantial risk of future harm.

### B.   Plaintiffs Seek Overbroad and Burdensome Discovery

In their January 18, 2018 letter opposing Defendants' request for a stay of discovery and during the January 25, 2018 conference before Magistrate Judge Scanlon, Plaintiffs argued that Defendants could not show discovery would be burdensome because no discovery had taken place. *See* Dkt. Entry No. 21; *see also* Exhibit A at pg. 5 ("they really make no effort to show you their discovery will be unduly burdensome ... [a]nd certainly as with respect to discovery they can't"). On February 9, 2018, at the conference before Your Honor, Plaintiffs argued against a stay of discovery by implying that discovery would be narrowly tailored stating, *inter alia*, that they "have submitted *targeted* and *limited* requests ... since [Magistrate Judge Scanlon's] ruling." *See* Exhibit B, pp. 14-15. Now that discovery is underway, it is clear that

Plaintiffs have adopted a scorched earth approach with discovery demands that are overbroad, burdensome, expensive, and not proportional to the needs of the case.[2]

        (i)      <u>Plaintiffs' overbroad, irrelevant, and otherwise improper Rule 30(b)(6) Notice</u>

As a primary example of Plaintiffs' expansive and disproportionate discovery plan, Plaintiffs served a Rule 30(b)(6) Notice to CBP that seeks testimony in contravention of Magistrate Judge Scanlon's ruling that limited discovery to CBP policies implemented in New York. *See* Exhibit C, at pp. 18-21, 24. Plaintiffs' 30(b)(6) Notice has no geographic limitations, thus reaching for information on nationwide policies and practices. *See* Plaintiffs' 30(b)(6) Notice, attached hereto as Exhibit E. In addition, although Plaintiffs' claim is that CBP has an alleged policy of checking the identification of passengers disembarking *from domestic flights*, the 30(b)(6) Notice seeks information that is not limited to domestic flights. The Notice is also cumulative and duplicative of other discovery produced thus far which, as discussed above, clearly establishes that CBP does not have a policy or practice of requesting identification from passengers deplaning domestic flights. Plaintiffs are essentially asking CBP to prove a negative and produce a witness to talk about policy and practices that do not exist.

The 30(b)(6) Notice further seeks testimony on topics that are overbroad, irrelevant, and consist of purely legal issues. For example, topic 9 seeks testimony regarding "CBP's authority, if any, to search or detain passengers traveling on domestic flights or present at locations within a U.S. airport that are outside of a Customs security area." *See* Exhibit E. This request is improper because it seeks information regarding legal issues or conclusions of law. *See United States v. Niagara Cnty.*, 2015 WL 6554713, at *4 (W.D.N.Y. Oct. 29, 2015) (attempts to

---

[2] Plaintiffs cannot dispute the unreasonable and disproportionate breadth and scope of discovery when they have ten attorneys assigned to this one case, which stems from an incident that lasted approximately twenty minutes.

discover facts through a 30(b)(6) deposition on topics which raise purely legal issues "is not only inappropriate but overbroad, inefficient and unreasonable"); *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."). Topic 10 seeks testimony concerning "the Incident" (*see* Exhibit E), which is unreasonable, cumulative and a waste of time and resources. Plaintiffs are essentially demanding that Defendants prepare a witness – based on hearsay and second-hand information – to speak on behalf of CBP about the incident itself. Individual fact witnesses are more appropriately produced to explain the facts and circumstances based on each witness's personal knowledge. *See Bellinger v. Astrue*, 06-CV-321 (CBA), 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011) (finding a 30(b)(6) topic "unreasonably duplicative" when plaintiff did not explain why "a Rule 30(b)(6) witness would be better able to testify about [a subject relevant to plaintiff's claims] than witnesses familiar with the facts of her case").

Topic 8, which seeks policies and practices "applicable to CBP regarding responses to inquiries from the media, airlines, airports and other third parties," is not relevant to the claims or defenses, nor proportional to the needs of the case. Indeed, practices and policies followed by CBP respond to inquiries from the media, airlines, and airports have nothing to do with whether CBP has a practice or policy of checking the identification of passengers deplaning a domestic flight, which is the only agency action at issue in this APA case. Lastly, a few of the topics contain requests for irrelevant and sensitive law enforcement techniques (such as, the "By-Pass approach" set forth in topic 4) and reports (topic 7), which are shielded from production by the law enforcement and other privileges. *See* Exhibit E.

12

(ii)    <u>Plaintiffs seek to conduct many time-consuming and costly depositions</u>

Plaintiffs seek to depose four employees of Delta airlines in San Francisco and have reserved an entire day for each witness.  *See* Dkt. Entry No. 54.  These employees had little to no involvement in the underlying incident, yet an Assistant United States Attorney assigned to the defense of this case will be required to spend at least a week in San Francisco, while incurring travel, lodging, and transcription costs.  Further, Plaintiffs have notified this Office that the majority of them do not intend to appear for depositions in this District as noticed.  Specifically, six out of the nine Plaintiffs refuse to appear for their depositions in this District and will only make themselves available in their respective hometowns.  *Id*.  It is clear that discovery, as Plaintiffs envision, would require time-consuming, costly trips across the country.

Plaintiffs have also identified several other federal official witnesses they seek to depose over the next month or so and Plaintiffs have already alerted the Court that they may seek to conduct depositions in excess of the ten allotted by Rule 30(a).  *See* Dkt. Entry No. 51 (Plaintiffs "reserve the right to notice further depositions.").  In fact, Plaintiffs have signaled to the Court that they seek to conduct approximately fifteen depositions in total.  This is not a difficult or complex case requiring Plaintiff to exceed the number of depositions allotted as set forth in Rule 30(a).

(iii)    <u>Plaintiffs demand overbroad and unduly burdensome e-discovery</u>

The e-discovery in this case has also been overbroad and unduly burdensome.  Plaintiffs have requested all communications and emails regarding the identification check conducted on Delta flight 1583.  This production alone has required CBP to run demanding e-discovery searches and review 31,555 documents, which were comprised of 143,858 pages.  Plaintiffs seek e-discovery from additional custodians and those searches have yielded another 43,612

documents.  Once the referenced e-discovery is reviewed for relevance, they require redactions where appropriate, and further need to be uploaded to a server so that they can be produced with metadata.  Plaintiffs have noted that they will not accept email productions without the metadata. Defendants have spent countless hours reviewing thousands of emails, for an underlying incident of checking identification which, for passengers disembarking from the back of the plane, delayed them no more than approximately 20 minutes.

Notably, Plaintiffs are demanding this e-discovery where the evidence already adduced demonstrates that the incident was not the result of agency policy.  Mr. Russo testified that CBP does not have any policies or procedures when it comes to domestic passengers and there is no policy at the headquarters level, the New York Field Office, JFK, or elsewhere in CBP relating to identification checks of domestic passengers.  *See* Exhibit D, at pp. 64, 133-135.  Mr. Russo further testified that, to his knowledge, other than the February 22, 2017 incident at issue in this action, CBP has never checked the identification of passengers deplaning from a domestic flight. *Id.* at p. 238 ("it was the first time in my history that we have ever checked the IDs of passengers on a domestic flight").  Mr. Russo's testimony is clear that CBP does not have a policy of checking passengers' identification following a domestic flight, and this incident was a one-off event.

In light of the discovery exchanged to date, the numerous depositions that Plaintiffs have noticed, the depositions that would require cross-country travel, and the on-going review of thousands and thousands of pages of e-discovery, the disproportionate scope of discovery and resulting burden weighs in favor of a stay.  *See Bethpage Water Dist. v. Northrop Grumman Corp.*, No. 13-CV-6362 (SJF) (WDW), 2014 WL 6883529, at *3 (E.D.N.Y. Dec. 3, 2014) (granting a partial stay of discovery where the parties anticipated "numerous depositions" and

defendants identified more than 350,000 documents to review) (citing *In re Term Commodities Cotton Futures Litig.*, No. 12-cv-5126 (ALC) (KNF), 2013 WL 1907738, at *6 (S.D.N.Y. May 8, 2013) (finding "90,000 pages is not an insignificant number of pages to review" and granting stay of discovery until resolution of the motion to dismiss)).  Moreover, it is obvious that the Court will have to resolve many of the outstanding discovery disputes if the matter proceeds, including the proper scope of Plaintiffs' 30(b)(6) Notice, the appropriate location for the depositions of the majority of the Plaintiffs, and the number of depositions Plaintiffs will be permitted to conduct.  These anticipated issues also weigh in favor of a stay.  *See Picture Patents, LLC v. Terra Holdings LLC*, 07 Civ. 5465, 07 Civ. 5567 (JGK) (HBP), 2008 WL 5099947, at *3 (S.D.N.Y. Dec. 3, 2008) (the existence of numerous outstanding discovery disputes considered in assessing the breadth of discovery factor).

C.      **A Stay Would Not Result in Any Risk of Unfair Prejudice to Plaintiffs**

Plaintiffs will not be prejudiced by a stay of discovery.  Plaintiffs were asked to show identification on one occasion following a domestic flight on February 22, 2017.  This was a one-time event where, due to delay caused by traffic, ICE officers sought assistance from CBP, CBP did not have time to retrieve a photograph of the individual due to the plane's imminent arrival, the ICE officers made it to the airport but were directed to the wrong gate, and the CBP officers request that airline personnel ask for cooperation of the passengers to provide identification.  The challenged conduct of federal officers on February 22, 2017 will not recur. In fact, following this incident, the New York Enforcement Removal Office ("NY ERO"), the division of ICE tasked with effecting removals from the New York area, clarified its procedures concerning deportation of persons for whom a removal order has been issued, and the challenged conduct will not recur under the agency's current practice.  The current practice is that an ICE

15

officer will board the plane and fly with the individual, thereby avoiding any time-sensitive meetings when the passengers disembark the plane.  Thus, there is no prejudice to Plaintiffs by waiting until the motion is decided.  Rather, Defendants would be prejudiced by engaging in potentially expensive and expansive discovery when a decision on Defendants' motion could obviate the need for any discovery at all.

In their January 18, 2018 letter opposing Defendants' original request for a stay of discovery, Plaintiffs raised concerns regarding any delay, noting the potential for memories to fade, and evidence to become stale or third-party evidence to be deleted.  *See* Dkt. Entry No. 21.  None of these arguments have merit.  Plaintiffs have already indicated that they are in possession of documents from the airline and there is no suggestion that any third-party documentation has been deleted.  Further, the assertion that memories fade and documents become stale would not result in any risk of unfair prejudice to Plaintiffs.  "The risks of which plaintiff[s] complain[] do not unfairly prejudice plaintiff[s], but rather are 'usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery.'"  *Bethpage Water Dist.*, 2014 WL 6883529, at *3 (citing *In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *6 (granting stay of discovery upon finding that "plaintiffs' assertions that ... witnesses' memories fade with the passage of time; and ... relevant documents [could] [potentially] be destroyed by non-parties, are usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery" and thus plaintiffs "failed to demonstrate that a short delay in discovery [would] impose any unfair prejudice on them")).

Similarly, Plaintiffs' contention that delay would unfairly prejudice them is without support.  This incident occurred last year and there is no reason to expedite the litigation because the identification check that occurred was a one-time event and has never happened since the

date of the incident.  "[T]he passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery … Otherwise, stays of discovery would never be granted given that some delay is inherent in any stay."  *O'Sullivan v. Deutsche Bank AG*, 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (citation omitted).  A stay would not result in any prejudice to the Plaintiffs.

Given the lack of prejudice to Plaintiffs, the serious doubts raised with respect to standing and the government's meritorious arguments supporting dismissal, this Court should grant the motion to stay discovery.  *See, e.g., Port Dock & Stone Corp.*, 2006 WL 897996, *2 (granting stay of discovery because defendants' dispositive motion presented meritorious arguments and "plaintiffs ... failed to demonstrate that a stay of discovery would unfairly prejudice them[.]").  Moreover, a stay of discovery in light of the numerous discovery disputes, the anticipated travel expenses, the number of proposed depositions, and the extremely broad 30(b)(6) Notice would promote economy and efficiency.  *See United States v. Cnty. of Nassau*, 188 F.R.D. 187, 189 (E.D.N.Y. 1999) (granting stay of discovery during the pendency of a motion to dismiss for lack of subject-matter jurisdiction where, among other factors, the "interests of fairness, economy and efficiency ... favor[ed] the issuance of a stay of discovery").

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that this Court stay discovery pending a decision on their motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, together and with such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
September 25, 2018

<div style="margin-left:40%">

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
*Attorney for Defendants*
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

</div>

By:        /s/         
Dara A. Olds
Matthew J. Modafferi
Assistant U.S. Attorneys
(718) 254-6148 / (718) 254-6229
dara.olds@usdoj.gov
matthew.modafferi@usdoj.gov

TO:   Honorable Nicholas G. Garaufis (Via ECF)
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

cc:   Honorable Vera M. Scanlon (Via ECF)
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

All counsel of record (Via ECF)

18