

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 12, 2018

Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Amadei, et al. v. Nielsen, et al.*, Case No.: 17-CV-5967 (NGG) (VMS)

Dear Judge Scanlon:

    This Office represents Defendants in this action. Defendants write respectfully to request a protective order concerning Plaintiffs' 30(b)(6) Notice, dated August 15, 2018.

**A.  Procedural and Factual Background**

    By way of background, Plaintiffs sue each defendant in their official capacity and request judicial review of an alleged CBP policy. Plaintiffs claim that this policy was the cause of an unconstitutional identification check of all, or virtually all, passengers on February 22, 2017, following their arrival at John F. Kennedy International Airport ("JFK") on Delta Flight 1583, a domestic flight. Plaintiffs claim that application of this purported policy violated their Fourth Amendment rights. Plaintiffs seek declaratory and injunctive relief, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(C).

    Because the identification check of passengers following Delta Flight 1583 was an isolated incident and not conducted pursuant to any policy, let alone final agency action that would be reviewable under the APA, and because CBP does not have a policy of checking the identification of all, or virtually all, passengers following domestic flights, Defendants have moved to dismiss the Complaint on the grounds that there is no final agency action for the Court to review under the APA and Plaintiffs do not have standing to bring their claims. *See* Dkt Nos. 32-35 (Defendants' Motion to Dismiss, Plaintiffs' Opposition, and Defendants' Reply).

    In the course of discovery, Plaintiffs served a deposition Notice, pursuant to Fed. R. Civ. P. 30(b)(6). *See* Plaintiffs' 30(b)(6) Notice (Exhibit A). The 30(b)(6) Notice requested testimony on 14 different topics, one of which includes six subtopics. The testimony requested does not concern whether CBP has a policy of checking identification of passengers following domestic flights. Defendants objected to the 30(b)(6) Notice in its entirety. *See* Defendants' September 6, 2018 Objections to the Notice (Exhibit B). In an effort to determine whether the parties could reach an agreement concerning an acceptable 30(b)(6) deposition, Defendants agreed to detail their objections to the 14 discrete 30(b)(6) topics, and Plaintiffs agreed to respond to those objections.

Defendants detailed their objections to the 30(b)(6) Notice in a letter dated September 19, 2018 (*see* Exhibit C). On September 27, Plaintiffs responded and proposed that the parties focus on 30(b)(6) Topics 2, 6, and 7, and confer regarding the remainder of the Topics in November. *See* Plaintiffs' Response, dated September 27, 2018 (Exhibit D). The parties had a preliminary discussion on October 1, 2018, during which they agreed to focus on Topics 2, 6, and 7, and address Defendants' objections to the remaining 30(b)(6) topics in November. The parties further agreed that Defendants would move on or before October 12, 2018 for a protective order regarding unresolved objections to Topics 2, 6, and 7.

On October 4, 2018, the Court issued an Order requiring the parties to meet and confer in person within ten days of the Order to resolve any outstanding discovery issues and to file a joint letter by October 19 outlining any unresolved discovery issues.[1] *See* Court's Order, dated October 4, 2018. Pursuant to that Order, the parties met and conferred in person on October 10. At the end of that meeting, the parties had not reached an agreement on Topics 2, 6, or 7 of Plaintiffs' 30(b)(6) Notice. Because the parties had previously agreed that Defendants would move for a protective order concerning 30(b)(6) Topics 2, 6, and 7 on or before October 12, Defendants submit the instant motion. Defendants reserve their right to move for a protective order on the remainder of the 30(b)(6) topics if the parties are unable to reach an agreement in November.

**B. Defendants Are Entitled To A Protective Order**

Discovery in an APA Action

Plaintiffs' lawsuit requests review of an alleged policy pursuant to the APA. In APA cases, discovery is necessarily limited and narrowed to that discovery necessary for the Court to review the reasons behind any such policy or decisions. *See Ali v. Pompeo*, 2018 WL 2058152, 16-CV-3691 (KAM)(SJB), (E.D.N.Y. May 2, 2018). Moreover, as the court observed in *Ali v. Pompeo*, 2018 WL 2058152, at *4:

> When permitted, the discovery should not transform the litigation into one involving all the liberal discovery available under the Federal Rules. Rather the Court must permit only that discovery necessary to effectuate the Court's judicial review, *i.e.*, review the decision of the agency under Section 706. (internal citations omitted)

Consequently, Plaintiffs are not entitled to the broad and far-reaching discovery they might otherwise be entitled to in a non-APA matter. While a party seeking a protective order for discovery has the burden of showing good cause for the issuance of that order (*see DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997)), in light of Plaintiffs' request for review pursuant to the APA, and the fact that the discovery already produced by Defendants has confirmed the nonexistence of the purported policy challenged by Plaintiffs in this case, Defendants easily meet this burden. Defendants object to Plaintiffs' 30(b)(6) Notice for all the reasons stated in their letters to Plaintiffs' counsel and incorporate all of those objections here by reference. *See* Exhibits B and C. Defendants further outline their objections for the Court below.

---

[1] The Court issued this Order in response to Defendants' renewed motion to stay discovery in its entirety while Defendants' motion to dismiss the Complaint is pending.

Topics 2, 6, and 7 are vague, overbroad, and not relevant to the claims at issue

*Examination Topic No. 2. Recordkeeping practices with respect to instances in which: (a) CBP interacts with passengers traveling on domestic flights[;] (b) CBP interacts with passengers at locations in U.S. airports outside of a Customs security area [;] (c) CBP assists ICE by meeting domestic flights carrying a noncitizen subject to a removal order [;] (d) CBP receives and responds to requests for assistance from other law enforcement or government agencies[;] (e) CBP provides periodic or incident-based reports or summaries to law enforcement agencies, other government entities, or members of Congress (including after-action reports following incidents)[;] (f) CBP receives and responds to inquiries from the media, airlines, airports, and other third parties.*

As an initial matter, none of the subtopics within Topic 2 relate to the alleged policy at issue. Specifically, subtopics (a) and (b) do not describe with reasonable particularity what is meant by "interacts with passengers." This is especially important here where the narrow question is whether CBP has a policy of checking the identification of all, or virtually all, passengers following a domestic flight. Thus, to the extent CBP has any "interaction" with a passenger outside of a Customs security area, or "interacts" with passengers who have travelled on a domestic flight, record keeping practices of such events are not relevant to the discrete issue challenged here. Record keeping practices concerning instances where "CBP assists ICE by meeting domestic flights" is similarly broad and irrelevant. Aside from the fact that CBP has already confirmed in discovery produced to date that it generally does not meet domestic flights, Plaintiffs do not allege that a practice of "meeting" a domestic flight is unconstitutional. Plaintiffs challenge only the identification check of all, or virtually all, passengers disembarking a domestic flight.

The remainder of the subtopics within Topic 2 are even more removed from the claims and defenses in this APA action. In subtopic (d), the term "assistance" is not defined and encompasses far more than checking identification following a domestic flight. It could be construed as requests for records, documents, or personnel, or larger joint operations with government agencies, none of which have any bearing on the Court's review of an alleged CBP policy of checking identification following a domestic flight. Further, there is simply no connection between such record keeping practices and the claims of this case, namely the allegation that CBP has its own practice or policy of checking the identification of passengers following domestic flights. Similarly, subtopics (e) and (f) seek record keeping practices concerning reports to law enforcement, other government entities and members of Congress, as well as responses to "the media" and "other third parties"; these topics are both vague and irrelevant to the claims and defenses of this action, including whether Plaintiffs' identification check amounts to a constitutional violation and whether the identification check occurred pursuant to a policy. In addition, Defendants object to the extent this request seeks information that is protected by the law enforcement privilege and the deliberative process privilege.

*Examination Topic No. 6. Regulations, policies, standard operating procedures, and practices applicable to CBP regarding requests to CBP for assistance from law enforcement or other government agencies.*

Defendants object to this topic for many of the same reasons outlined above; importantly, this information would not assist the Court in assessing the constitutionality of an alleged CBP

3

policy to check the identification of all, or virtually all, disembarking domestic flyers, or any reasons behind such policy (if one existed). In fact, Topic 6 does not even mention domestic flights. Moreover, this request is unduly burdensome, not proportional to the limited needs of the case, and not stated with reasonable particularity, as CBP receives requests from a range of agencies, both federal and local. The request includes no context for what is meant by assistance from law enforcement or other government agencies. Against the backdrop of CBP's vast responsibilities and demanding mission as one of the world's largest law enforcement organizations, a request for testimony regarding all policies, regulations, standard operating procedures and practices applicable to any and all requests from virtually any "government agencies" is wholly inappropriate. The information sought has no meaningful boundary and has no meaningful nexus to the claims and defenses in this action.

*Examination Topic No. 7. Regulations, policies, standard operating procedures, and practices applicable to CBP regarding reports CBP provides to law enforcement, other government entities, or members of Congress (including after-action reports following incidents).*

Topic 7 is not relevant to the claims or defenses in this case, and not proportional to Plaintiffs' requested APA review. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs do not challenge CBP's authority to provide reports to law enforcement, other government entities, or members of Congress concerning any CBP operations. CBP's practices in providing any such reports has nothing to do with an alleged policy of checking identification following a domestic flight. Importantly, Topic 7 does not even mention domestic flights. Further, Topic 7 is overly broad and not stated with reasonable particularity because it includes no limitation as to the types of reports, subject matter, or underlying CBP or law enforcement operations involved in any such reports. Finally, even assuming CBP has policies, procedures, or practices in place concerning providing information to law enforcement, or other government entities, it is likely that testimony concerning any such responsive information would be protected by the law enforcement and other privileges.

### C. Conclusion

Because Plaintiffs' requested 30(b)(6) testimony would not assist the Court in reviewing the alleged CBP policy concerning the discrete allegedly unconstitutional event at issue here, CBP should not be required to undertake the burden of trying to identify witnesses who would be able to offer testimony on the above-mentioned topics. As Plaintiffs have requested review pursuant to the APA, this is not an opportunity to depose witnesses regarding all of CBP's records in the hopes that Plaintiffs will find something that may be useful to support their claim. Thus, Plaintiffs' request for testimony pursuant to Rule 30(b)(6) should be denied and a protective order issued.

             Respectfully submitted,

             RICHARD P. DONOGHUE
             United States Attorney

       By:   /s/
             Dara A. Olds
             Matthew Modafferi