EXHIBIT D

# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   SAN FRANCISCO
SEOUL   SHANGHAI   SILICON VALLEY   WASHINGTON

Joshua B. Picker

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1124
jpicker@cov.com

**By Electronic Mail**                                    September 27, 2018

Dara A. Olds
Matthew J. Modafferi
Assistant United States Attorneys
U.S. Attorney's Office - Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

<div align="center">

Re: *Amadei et al. v. Nielsen et al.*, No. 17 Civ. 5967 (NGG)(VMS)

</div>

Dear Ms. Olds and Mr. Modafferi:

We write in response to the Objections and Responses of Defendant U.S. Customs and Border Protection ("CBP") to Plaintiffs' Notice to take a Deposition of CBP pursuant to Federal Rule of Civil Procedure 30(b)(6) dated August 15, 2018 (the "CBP 30(b)(6) Notice") and your letter dated September 19, 2018 (received on September 20) regarding that Notice (the "September 19th Letter"). We note at the outset that Defendants today filed a motion to stay discovery in which they argue that the CBP 30(b)(6) Notice is "overbroad, irrelevant, and otherwise improper." *See* ECF No. 56-1 at 11. In filing that motion, Defendants disregarded the ongoing negotiations over the scope of the Notice pursuant to a schedule to which the parties agreed. We are providing this response notwithstanding Defendants' conduct in filing the motion, and without waiving any arguments in response to the motion.

Plaintiffs' CBP 30(b)(6) Notice is proper in scope and not unduly burdensome. Defendants waived any objection to the CBP 30(b)(6) notice by failing to designate any witnesses or to timely appear for the noticed examination on September 17, 2018. In light of Defendants' stated intent not to appear on September 17 and in an effort to avoid the need for court intervention, however, the parties agreed to meet and confer regarding Defendants' objections as set forth in the schedule memorialized in Plaintiffs' letter to the Court of September 12, 2018 (ECF No. 51).

As described below, in an effort to resolve Defendants' objections, Plaintiffs will agree to certain modifications to the noticed topics and schedule.  Plaintiffs are available to confer telephonically regarding any outstanding objections on Friday, September 28.  To the extent Defendants still object to the Notice as modified below, they have agreed to move for a protective order not later than October 12, 2018.  In addition, Defendants should immediately designate one or more CBP witnesses to testify as regards any topics or portions of topics as to which the Parties have no ongoing dispute.

**COVINGTON**

 Plaintiffs provide three global responses and then individual responses to each noticed topic below.

**<u>Global Responses</u>**

*First*, Defendants are incorrect to assert that it is unduly burdensome to provide testimony from a 30(b)(6) witness on a topic previously addressed by a fact witness.  Courts routinely enforce 30(b)(6) notices even where they notice deposition topics that overlap with fact witness testimony, and even when the same witness will be deposed as a corporate representative after having served as a fact witness.  *See, e.g.*, *Rubie's Costume Co, Inc. & Princess Paradise Creations, LLC, d/b/a Princess Paradise v. Kangaroo Manufacturing Inc., et al.*, 2018 WL 4558405, at *3 (E.D.N.Y. Sept. 21, 2018) (noting that "Defendants' counsel does not address the fact, however, that [in arguing witness should not be deposed twice] Mr. Ligeri provided testimony [previously] as a *fact* witness" and holding that "Plaintiffs are entitled to examine him (or any other proper designee) as a Rule 30(b)(6) witness whose testimony is binding on the corporations.") (emphasis in original).

At this point, Plaintiffs will agree to designate the testimony of Frank Russo as 30(b)(6) testimony solely with respect to Topic 1, as described further below.  Mr. Russo made clear at his deposition that he spoke only with a few individuals as regards Flight 1583 and CBP's policies and practices, and then only those within JFK airport. That investigation is far too limited to serve as 30(b)(6) testimony as to other topics such as recordkeeping practices, even at JFK.

*Second*, Defendants appear to dispute that CBP recordkeeping is an appropriate topic for examination of a corporate representative, repeatedly asserting a relevance objection.  Yet, where the records regarding other incidents are within the sole custody of the agency, it is appropriate to depose the agency regarding those recordkeeping practices.  In fact, the Court made clear when it denied Plaintiffs' motion to compel document discovery of CBP policies and practices beyond those applicable to JFK that it did so not because it agreed with that limitation on scope, but rather because it viewed the request as unduly burdensome.  The Court noted that the denial of the request was without prejudice to renewal if Plaintiffs were able to narrow the scope of requested information.  The Court explicitly told Plaintiffs that they "need to develop the factual basis for the request . . . [a]nd particularly have some understanding of logistically what's involved."  May 1 Hear'g Tr. At 23:13-15.  The Court suggested it would make sense for Plaintiffs to propound "requests with regard to recordkeeping" and "[i]t may be you have a 30(b)(6) witness with regard to recordkeeping."  *Id.*, at 23:15-18.  That is precisely what the pending 30(b)(6) notice seeks to achieve.

*Third*, Plaintiffs appreciate Defendants' suggestion that some 30(b)(6) testimony be left until after fact testimony is exhausted in order to minimize the need for duplicative testimony.  As noted above, Plaintiffs emphasize that fact testimony is not a substitute for 30(b)(6) testimony.  Plaintiffs are entitled to the testimony of CBP itself from a witness knowledgeable about the noticed topics.  To the extent that Defendants wish to minimize duplication, they may designate previously-noticed fact deposition witnesses as 30(b)(6) witnesses regarding particular topics sufficiently *in advance* of their examinations to provide Plaintiffs notice of that intention.

2

**COVINGTON**

In order to address Defendants' concerns, however, Plaintiffs are willing to bifurcate the CBP 30(b)(6) testimony into two phases.  Phase I, to be scheduled to take place in October, would cover the topics pertaining only to recordkeeping and report-making practices—Topics 2, 6, and 7.  The remainder of the topics could be deferred to a continued deposition in November. Please indicate whether Defendants will agree to this proposal.

**Responses to Individual Topics**

***Examination Topic No. 1. CBP's organizational structure and chain of command including, without limitation, at the CBP JFK Port of Entry.***

Defendants' September 19 Objections to Topic No. 1

Defendants object to Topic No. 1 on the grounds that it seeks information that is unreasonably cumulative and duplicative of information previously produced by Defendants. *See Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011) (finding a 30(b)(6) topic "unreasonably duplicative" when plaintiff did not explain why "a Rule 30(b)(6) witness would be better able to testify about [a subject relevant to plaintiff's claims] than witnesses familiar with the facts of her case").  John F. Kennedy International Airport ("JFK") Port Director Francis J.  Russo testified on August 30, 2018 at his deposition about the structure of U.S.  Customs and Border Protection ("CBP") and the chain of command from JFK to the New York Field Office to headquarters in Washington, D.C. See Francis J. Russo Deposition Transcript ("Russo Dep."), pP. 19-20, 22, 38-40, 42, 46-50.[1]  Thus, it would be duplicative to designate a witness to testify concerning CBP's organizational structure.  It would be more convenient, more efficient, less burdensome and less expensive to designate the testimony rather than conducting a 30(b)(6) deposition.  *See* Fed. R. Civ. P. 26(b)(2); *see also A.1.A.  Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 1041356, at *3 (S.D.N.Y.  May 23, 2002) (where an entity establishes that a witness's testimony as a 30(b)(6) witness would be identical to his or her testimony as an individual witness, an entity may "comply [] with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity").

Plaintiffs' Responses to Objections to Topic No. 1

Without waiving any arguments as to Defendants' objections, Plaintiffs will agree to the designation of Mr. Russo's deposition testimony regarding CBP's organizational structure and chain of command, provided that Defendants agree to waive any form objections to that testimony, agree to designate page 113 in addition to the pages identified above (19-20, 22, 38-40, 42, 46-50), and comply with their obligation to produce documents sufficient to show CBP's organizational structure as set forth in Request 15 of Plaintiffs' First Requests for Production of Documents dated February 5, 2018.  Plaintiffs reserve the right to renew the request for a deposition on this topic should Defendants fail to produce such documents.  Any such agreement is further conditioned on the parties' execution of a stipulation designating the testimony as 30(b)(6) testimony not later than October 26, 2018.

---

[1] CBP asserts that the citations herein (and following) to portions of the Russo Dep. Transcript are at this date under consideration and remain subject to final Agency approval.

COVINGTON

*Examination Topic No. 2.  Recordkeeping practices with respect to instances in which:*
a)  *CBP interacts with passengers traveling on domestic flights.*
b)  *CBP interacts with passengers at locations in U.S. airports outside of a Customs security area.*
c)  *CBP assists ICE by meeting domestic flights carrying a noncitizen subject to a removal order.*
d)  *CBP receives and responds to requests for assistance from other law enforcement or government agencies.*
e)  *CBP provides periodic or incident-based reports or summaries to law enforcement agencies, other government entities, or members of Congress (including after-action reports following incidents).*
f)  *CBP receives and responds to inquiries from the media, airlines, airports, and other third parties.*

Defendants' September 19 Objections to Topic No. 2

Defendants object to Topic No. 2 on the ground that it is vague and does not describe with reasonable particularity the matters on which the examination is requested.  As an initial matter, subparts a) and b) do not describe with particularity what is meant by "interacts with passengers." Defendants further object to Topic No. 2 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses or any party to, nor proportional to the needs of, the Action.  See Fed. R. Civ. P. 26(b)(1).  Plaintiffs claim that their identification was checked following a domestic flight and that the identification check occurred pursuant to a practice or policy.  Yet, Plaintiffs seek discovery concerning any "interaction" with passengers traveling on domestic flights or taking place at U.S. airports outside of a customs security area.  These additional "interactions" are not relevant to the claims or defenses in this case.  Recordkeeping practices concerning CBP assisting ICE by meeting domestic flights is similarly broad.  Plaintiffs do not allege that meeting the flight amounts to a constitutional violation.  Plaintiffs challenge only the identification check of passengers disembarking a domestic flight.  CBP has already stated in interrogatory responses and at deposition, that CBP has not checked identification of all passengers aboard a domestic flight at JFK on any other occasion, and there is no record keeping practice regarding such an event.

Similarly, the request regarding recordkeeping practices CBP maintains with respect to receiving and responding to requests for assistance from other law enforcement or government agencies is vague, confusing, overbroad, lacks reasonable particularity, and is not proportional to the needs of this case.  JFK Port Director Francis J.  Russo testified that CBP assists a variety of federal agencies, including but not limited to, the Federal Bureau of Investigation, Homeland Security Investigations, Alcohol Tobacco and Firearms, the Secret Service, and the New York Police Department.  Russo Dep., P. 42.  Here, only two agencies, both defendants, are involved.  Thus, recordkeeping practices with respect to how CBP receives and responds to any or all requests is not relevant to the claims or defenses of this action.  In light of the sample of agencies to which CBP provides assistance, the information requested is overbroad and not proportionate to the needs of the case.  Defendants further object to the extent that this request seeks information that is protected by the law enforcement privilege.

4

Defendants also object to providing testimony concerning CBP's record keeping practices for "periodic or incident based reports or summaries or law enforcement agencies, other government entities, or members of Congress," as well as record keeping practices relating to how CBP receives and responds to requests from the media, airlines, airports, and other third parties. Such record keeping practices have nothing to do with the claims or defenses of this action, including whether the check of Plaintiffs' identification amounts to a constitutional violation whether the identification occurred pursuant to a policy. In addition, "the media" and "other third parties" lacks particularity, is vague, overbroad, and limitless. Defendants also object to the extent this request seeks information that is protected by the law enforcement privilege, intra- governmental privilege, deliberative process privilege, and the self-critical analysis privilege.

Plaintiffs' Responses to Objections to Topic No. 2

Plaintiffs will not modify Topic No. 2, except to clarify that the meaning of "interacts with passengers" as stated in subparts a and b means to communicate with passengers traveling on domestic flights.

Otherwise, Topic No. 2 describes the matters on which the examination is requested with sufficient particularity. This topic indicates that Plaintiffs will seek information as to the recordkeeping practices of CBP in order to determine whether and where records most likely to support their claims of a policy or routine practice of suspicionless identification checks exist.

As such, it is appropriate for Plaintiffs to inquire as to CBP's recordkeeping practices with respect to passengers traveling on domestic flights. Those records are the most likely to contain evidence regarding suspicionless searches of domestic air passengers—evidence that is relevant to Plaintiffs' assertion of the likelihood of future harm and to Defendants' apparent defense that they do not have a routine policy or practice permitting such searches. As noted above, the Court has made clear that Plaintiffs may legitimately inquire as to recordkeeping practices in order to craft a less burdensome request for documents residing outside of the JFK Port of Entry. Plaintiffs will not rely solely on Mr. Russo's deposition testimony where he admitted that his testimony was limited to JFK and, even with respect to JFK, that he testified solely on the basis of his own recollection and an informal survey of a few other JFK managers.

It is also appropriate for Plaintiffs to inquire into CBP's records of requests for assistance from other law enforcement agencies and of its provision of assistance to those agencies. The claims here at issue are in no way dependent on the unique attributes of the relationship between Defendants ICE and CBP. Rather, the extent to which CBP accedes to requests from *any* other law enforcement agency is relevant to the likelihood of future harm were such requests to pertain to identifying passengers traveling on domestic flights. Again, Plaintiffs seek the 30(b)(6) testimony to identify how records are kept in order to determine how to reduce the burden on Defendants with respect to any document request. Furthermore, the location and method of recordkeeping—as distinct from the substance of those records—is not an investigative technique subject to any law enforcement privilege.

Plaintiffs may also inquire as to records of "periodic or incident based reports or summaries to law enforcement agencies, other government entities, or members of Congress,"

**COVINGTON**

and other enumerated parties because those records, to the extent they exist, are also likely to hold evidence of a CBP policy or routine practice.

> ***Examination Topic No. 3.  CBP training and training materials relating to procedures for searches and seizures of passengers on commercial aircraft, including, without limitation, constitutional and other legal limitations on those searches and seizures.***

Defendants' September 19 Objections to Topic No. 3

Defendants object to Topic No. 3 on the grounds that is overly broad and seeks information that is not relevant to the claims and defenses in this case, and not proportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1).  Defendants also object to the extent this request seeks information that is protected by the law enforcement privilege, intra-governmental privilege, deliberative process privilege, and self-critical analysis privilege.

Specifically, Plaintiffs seek "training and training material relating to procedures for searches and seizures of passengers on commercial aircraft, including, without limitation, constitutional and other legal limitations on those searches and seizures."  The information sought is exceedingly broad as it seeks all training relating to *any* commercial aircraft.  As Plaintiffs' are aware, to the extent that CBP officers conduct operations involving commercial aircraft, the vast majority of those operations pertain to international flights.  Any such training concerning procedures for international flights has nothing to do with the claims and defenses in this action.  Further, as training of CBP officers involves sensitive information, a response to Plaintiffs' broad request would necessarily include information that is subject to the law enforcement privilege, as well as the attorney-client privilege and the work product privilege.

Plaintiffs' Responses to Objections to Topic No. 3

Plaintiffs will not modify the scope of Topic No. 3.  As Mr. Russo testified at his deposition, portions of CBP procedures pertaining to international flights were applied to the passengers on Flight 1583, and, to his knowledge, CBP does not provide training specific to domestic flights.  It is appropriate for plaintiffs to obtain discovery from the agency as to whether the general training it applies to searches and seizures on commercial aircraft is relevant to the likelihood that searches and seizures of domestic passengers will occur in the future.  To the extent Defendants believe that the law enforcement privilege protects certain aspects of this training from disclosure, they must formally assert that privilege.

To minimize any potential duplication of testimony, Plaintiffs will agree to include this topic as part of the Phase II 30(b)(6) deposition(s).

> ***Examination Topic No. 4.  Regulations, policies, standard operating procedures, and practices applicable to CBP regarding identification of passengers on commercial aircraft including, without limitation, the "By-Pass approach."***

Defendants' September 19 Objections to Topic No. 4

Defendants object to Topic No. 4 on the grounds that it is overly broad.  The topic requests "regulations, policies, standard operating procedures, and practices applicable to CBP

COVINGTON

regarding identification of passengers on commercial aircraft, including, without limitation, the 'By-Pass approach.'" The request is exceedingly broad as it seeks information concerning practices relating to identification of passengers on *any* commercial aircraft. To the extent that CBP officers conduct operations involving commercial aircraft, those operations overwhelmingly involve international flights. Plaintiffs' claims do not challenge CBP's authority to identify passengers arriving on commercial international flights. Thus, any such policies, standard operating procedures, and practices pertaining to identification of passengers on international flights would be irrelevant to the claims and defenses in this action, and not proportional to the needs of the case. Further, Defendants have asserted a law enforcement privilege with respect to information concerning the "by-pass" approach. Defendants have produced information indicating that the by-pass approach is used in the international context. Aside from having no relation to the claims and defenses in this action, the information sought is subject to the law enforcement privilege.

Plaintiffs' Responses to Objections to Topic No. 4

Plaintiffs will not modify the scope of Topic No. 4. Evidence in the record indicates that the "By-Pass approach," or portions of that approach, were employed by CBP in conducting the identification checks alleged in the complaint and that CBP may not explicitly distinguish domestic from international flights in its policies and procedures surrounding the identification of passengers. Plaintiffs are entitled to discovery of those policies and procedures. Defendants have waived the law enforcement privilege with respect to the portions of the By-Pass procedure employed with respect to the Flight 1583 passengers. To the extent they assert privilege with respect to discovery regarding other procedures not used in connection with Flight 1583 they must formally assert that privilege.

To minimize any potential duplication of testimony, Plaintiffs will agree to include this topic as part of the Phase II 30(b)(6) deposition(s).

***Examination Topic No. 5. Regulations, policies, standard operating procedures, and practices applicable to CBP pertaining to communications with flight crews on domestic flights.***

Defendants' September 19 Objections to Topic No. 5

Defendants object to Topic No. 5 on the grounds that it seeks information that is unreasonably cumulative and duplicative of discovery previously produced by Defendants. *See Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011) (finding a 30(b)(6) topic "unreasonably duplicative" when plaintiff did not explain why "a Rule 30(b)(6) witness would be better able to testify about [a subject relevant to plaintiff's claims] than witnesses familiar with the facts of her case"). JFK Port Director Russo testified that there is no procedure at JFK with respect to domestic flights. *See* Russo Dep. pp. 64, 87-88. Mr. Russo's testimony is under consideration for designation in response to this request. Thus, it would be duplicative to designate a witness to testify with respect to specific policies and procedures concerning communications with flight crews on domestic flights. It would be more convenient, more efficient, less burdensome and less expensive to designate the testimony rather than conducting a 30(b)(6) deposition. *See* Fed. R. Civ. P. 26(b)(2); *see also A.1.A. Holdings, S.A. v. Lehman*

7

**COVINGTON**

*Bros., Inc.*, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002) (where an entity establishes that a witness's testimony as a 30(b)(6) witness would be identical to his or her testimony as an individual witness, an entity may "comply [] with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity"). The topic does not describe with reasonable particularity the context in which it refers to "domestic flights." Therefore, Defendants further object on the grounds that "domestic flights" overbroad.

<u>Plaintiffs' Responses to Objections to Topic No. 5</u>

Plaintiffs will not modify the scope of Topic No. 5. The topic is not duplicative; the Notice requests information regarding CBP policies nationally and not merely those at JFK airport. Therefore, even were Director Russo's testimony sufficient to explain procedures regarding domestic flights at JFK it provides no information regarding CBP policies and practices outside JFK. Furthermore, the term "domestic flights" is unambiguous and reasonable in scope.

To minimize any potential duplication of testimony, Plaintiffs will agree to include this topic as part of the Phase II 30(b)(6) deposition(s).

***Examination Topic No. 6. Regulations, policies, standard operating procedures, and practices applicable to CBP regarding requests to CBP for assistance from law enforcement or other government agencies.***

<u>Defendants' September 19 Objections to Topic No. 6</u>

Defendants object to Topic No. 6 on the grounds that it seeks information that is not relevant to the claims or defenses, nor proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). CBP regulations, policies, standard operating procedures and practices applicable to CBP regarding requests from law enforcement or other government agencies are not relevant to the claims and defenses in this case, which consist of whether Plaintiffs' identification check amounted to a constitutional violation and whether such check was conducted pursuant to a policy. Plaintiffs assert that their Fourth Amendment rights were violated and that CBP has a policy of checking identification of all passengers disembarking from a domestic flight. These are two discrete claims that have no bearing on the broad examination topic of whether CBP provide assistance to law enforcement or other government agencies. The request is also overbroad, unduly burdensome, and not stated with reasonable particularity as CBP receives requests from a range of agencies, both federal and local, and Plaintiffs have asked for all policies, regulations, standard operating procedures and practices applicable to all of those requests. The information sought is exceedingly broad as it does not in any way limit the information sought, and seeks information concerning practices relating not only to requests concerning international flights and passengers traveling on international flights, but as well as to any law enforcement operation conceivable. Thus, any such policies, standard operating procedures, and practices pertaining to requests from law enforcement groups or other government agencies are not in any way related to the claims and defenses in this action. Defendants also object to the extent this request seeks information that is protected by the law enforcement privilege, intra-governmental privilege, deliberative process privilege and self-critical analysis privilege.

8

**COVINGTON**

<u>Plaintiffs' Responses to Objections to Topic No. 6</u>

Plaintiffs will not modify the scope of Topic No. 6.  Whether and in what instances CBP will follow requests from fellow law enforcement agencies is relevant to the likelihood of future harm.  A competent headquarters witness should be able to testify to these practices.  The final policies and procedures pursuant to which CBP agrees to assist a fellow law-enforcement agency does not violate any privilege.

> ***Examination Topic No. 7.  Regulations, policies, standard operating procedures, and practices applicable to CBP regarding reports CBP provides to law enforcement, other government entities, or members of Congress (including after-action reports following incidents).***

<u>Defendants' September 19 Objections to Topic No. 7</u>

Defendants object to Topic No. 7 on the grounds that it seeks information that is not relevant to the claims or defenses in this case, nor proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  This topic has no bearing on whether Plaintiffs' identification check amounted to a constitutional violation and whether such check was conducted pursuant to a policy.  Plaintiffs do not challenge CBP's authority to conduct operations on international flights, or to provide reports to law enforcement, other government entities, or members of Congress concerning any CBP operations.  How CBP "reports" to law enforcement, government entities, or members of Congress is irrelevant to the claims.

Further, Topic No. 7 is overly broad and not stated with reasonable particularity because the request contains no limitation with respect to types of reports, the subject matter of the reports, the timeframes, the CBP operations involved, and the law enforcement operations involved.  Finally, assuming CBP has policies, procedures, or practices in place concerning providing information to law enforcement, or other government entities, it is likely that portions of the responsive information – if not all of the responsive information – would be protected by the law enforcement privilege.  Accordingly, Defendants also object to the extent this request seeks information that is protected by the law enforcement privilege, intra-governmental privilege, deliberative process privilege and self-critical analysis privilege.

<u>Plaintiffs' Responses to Objections to Topic No. 7</u>

Plaintiffs will not modify the scope of Topic No. 7, except that they will agree to limit the inquiry to regulations, policies, standard operating procedures, and practices applicable to CBP on or after January 1, 2015.  Otherwise, as noted with respect to Topic No. 6, whether and in what instances CBP makes reports of incidents to the enumerated entities is probative of where records relevant to Plaintiffs' claims may exist.  As with Topic No. 6, the bureaucratic report-making practices and procedures do not invade any privilege.

**COVINGTON**

> ***Examination Topic No. 8.  Regulations, policies, standard operating procedures, and practices applicable to CBP regarding responses to inquiries from the media, airlines, airports and other third parties.***

<u>Defendants' September 19 Objections to Topic No. 8</u>

Defendants object to Topic No. 8 on the grounds that it seeks information that is not relevant to the claims or defenses, nor proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  This topic has no bearing on whether checking identification of passengers deplaning from a domestic flight violates the Fourth Amendment and whether CBP has a policy of doing so.  This topic is also not proportional to the needs of the case because it does not seek information that bears on issues in the case.  To be discoverable, information must be *both* "relevant to any party's claim or defense *and* proportional to the needs of the case."  *Id.* (emphasis added).  Topic No. 8 is neither and is not an appropriate subject for 30(b)(6) testimony in this case.

Moreover, Topic No. 8 is overly broad and does not describe with reasonable particularity the matters on which examination is requested.  "Responses to inquiries from the media, airlines, airports and other third parties" is vague, overbroad, limitless, and lacks any specificity, let alone reasonable particularity.  It would be impossible to properly prepare someone to testify about this topic.  *See Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) ("If the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task.").  Topic No. 8 also lacks foundation and assumes the existence of facts that do not exist.  Finally, assuming CBP has a policy, procedure or practice in responding to the media, it is likely that information encompassed by this vague, ambiguous, and overly broad topic would be protected by the attorney- client and work product privileges.

<u>Plaintiffs' Responses to Objections to Topic No. 8</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree to limit the scope of Topic No. 8 to "Regulations, policies, standard operating procedures, and practices applicable to CBP regarding responses to inquiries from the media." As revised, Topic No. 8 is plainly relevant to CBP's formulation and issuance of statements to the media regarding the events of February 22, 2017—statements that included representations regarding the regularity with which CBP provides assistance to law enforcement agencies. Topic 8 thus bears directly on facts alleged in the complaint and questions of law before the court, and responsive testimony regarding procedures for responding to media inquiries would not invade any privilege.

To minimize any potential duplication of testimony, Plaintiffs will agree to include this topic as part of the Phase II 30(b)(6) deposition(s).

> ***Examination Topic No. 9.  CBP's authority, if any, to search or detain passengers traveling on domestic flights or present at locations within a U.S. airport that are outside of a Customs security area.***

**COVINGTON**

<u>Defendants' September 19 Objections to Topic No. 9</u>

Defendants object to Topic No. 9 on the grounds that it seeks information regarding legal issues and asks for Defendants' contentions and defenses. "Contention" topics are not appropriate Rule 30(b)(6) deposition topics. *See Trs. of Boston Univ.*, 2014 WL 5786492, at *4 ("A Rule 30(b)(6) deposition is an overbroad, inefficient, and unreasonable means of discovering an opponent's factual and legal basis for its claims."); *see also United States v. Niagara Cnty.*, 2015 WL 6554713, at *4 (W.D.N.Y. Oct. 29, 2015) (attempt to discover facts through a 30(b)(6) deposition on topics which raise purely legal issues "is not only inappropriate but overbroad, inefficient and unreasonable"); *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."). Defendants further object to Topic No. 9 on the ground that it lacks foundation, assumes the existence of facts that do not exist and the occurrence of events that did not take place, and incorporates allegations and assertions that are disputed or erroneous. Defendants further object to Topic No. 9 on the ground that it does not describe with reasonable particularity the matters on which examination is requested, and the terms and phrases "search or detain" and "Customs security area" are vague and ambiguous.

<u>Plaintiffs' Responses to Objections to Topic No. 9</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree to revise Topic No. 9 as follows: "Regulations, policies, standard operating procedures, and practices applicable to CBP's authority, if any, to search or detain passengers traveling on domestic flights or present at locations within a U.S. airport that are outside of a Customs security area." As revised, Topic No. 9 makes clear that it seeks information that is relevant to legal questions before the court, yet does not seek testimony on Defendants' contentions or legal theories. The terms "search or detain," moreover, are well-defined in the Fourth Amendment context, and "Customs security area" is itself a defined term in applicable federal regulations. *See* 19 C.F.R. § 122.181.

To minimize any potential duplication of testimony, Plaintiffs will agree to include this topic as part of the Phase II 30(b)(6) deposition(s).

***Examination Topic No. 10. The Incident, including CBP's actions taken before, during, and following the Incident and CBP's authority, if any, to take such actions.***

<u>Defendants' September 19 Objections to Topic No. 10</u>

Defendants object to Topic No. 10 on the grounds that it seeks all of Defendants' factual and legal bases and contentions. This topic is improper because it asks for counsel to marshal all of the factual proof and pack it into a 30(b)(6) witness or witnesses. *See Trs. of Boston Univ.*, 2014 WL 5786492, at *4 ("Even under the present-day liberal discovery rules, the recipient of a Rule 30(b)(6) request is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or claim."). In addition, this topic seeks information that is unreasonably cumulative and duplicative of discovery provided by and forthcoming from Defendants. *See Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y.

11

**COVINGTON**

Sept. 28, 2011) (finding a 30(b)(6) topic "unreasonably duplicative" when plaintiff did not explain why "a Rule 30(b)(6) witness would be better able to testify about [a subject relevant to plaintiff's claims] than witnesses familiar with the facts of her case"). Defendants' factual position will be borne out through fact witness depositions and document productions which are more efficient, less burdensome, and less expensive than also providing this testimony in the form of a 30(b)(6) witness.

Moreover, Topic No. 10 is overly broad and does not describe with reasonable particularity the matters on which examination is requested. "The Incident" and "actions taken" is extremely broad and lacks any specificity, let alone reasonable particularity. This topic also asks for the legal authority for actions taken, which is not an appropriate Rule 30(b)(6) deposition topic. *See Trs. of Boston Univ.*, 2014 WL 5786492, at *4 ("A Rule 30(b)(6) deposition is an overbroad, inefficient, and unreasonable means of discovering an opponent's factual and legal basis for its claims."); *see also United States v. Niagara Cnty.*, 2015 WL 6554713, at *4 (attempt to discover facts through a 30(b)(6) deposition on topics which raise purely legal issues "is not only inappropriate but overbroad, inefficient and unreasonable"); *JPMorgan Chase Bank*, 209 F.R.D. at 362 ("In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means.").

<u>Plaintiffs' Responses to Objections to Topic No. 10</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree not to proceed with Topic No. 10 if Defendants agree to designate a witness to testify regarding Topic No. 9, as revised. Plaintiffs reserve the right to renew Topic No. 10 during the Phase II 30(b)(6) deposition(s) if material gaps exist in the testimony of fact witnesses deposed to that point.

***Examination Topic No. 11. The basis for CBP's responses to Interrogatories served by Plaintiffs in this action.***

<u>Defendants' September 19 Objections to Topic No. 11</u>

Defendants object to Topic No. 11 on the grounds that it seeks information that is unreasonably cumulative and duplicative of discovery provided by Defendants. *See Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011) (finding a 30(b)(6) topic "unreasonably duplicative" when plaintiff did not explain why "a Rule 30(b)(6) witness would be better able to testify about [a subject relevant to plaintiff's claims] than witnesses familiar with the facts of her case"). JFK Port Director Russo signed and certified CBP's interrogatory responses and he was already deposed and questioned about the responses. See Russo Dep. pp. 246-51. Mr. Russo's testimony is under consideration for designation in response to this request. Thus, it would be duplicative to designate a witness to testify with respect to CBP's responses to Interrogatories. Moreover, Topic No. 11 is vague, ambiguous, and does not describe with reasonable particularity the matters on which examination is requested. "The basis" is extremely broad and lacks any specificity, let alone reasonable particularity. Thus, this topic is not appropriate for a 30(b)(6) witness.

**COVINGTON**

<u>Plaintiffs' Responses to Objections to Topic No. 11</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree to suspend Topic No. 11 until Defendants have responded to all Interrogatories served by Plaintiffs, at which point the parties could confer regarding any request to designate Mr. Russo's testimony in response to Topic No. 9.

> ***Examination Topic Nos. 12 and 13.  The steps taken by CBP to preserve documents relevant to this action and the persons involved in taking those steps.***
> ***The steps taken by CBP to search for and produce documents responsive to Plaintiffs' requests for production and the persons involved in taking those steps.***

<u>Defendants' September 19 Objections to Topics Nos. 12 and 13</u>

Defendants object to Topic Nos. 12 and 13 on the grounds that they seek information that is not relevant to the claims or defenses, nor proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  The preservation, search and production of documents and the persons involved in preserving, searching and producing documents have no bearing on whether checking identification of passengers deplaning from a domestic flight violates the Fourth Amendment and whether CBP has a policy of doing so.  *See Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A*., No. 15 Civ. 0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y.  July 14, 2016) ("A party must provide 'an adequate factual basis' for its belief that discovery on discovery is warranted."); *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 10714011, at *15 (D.  Minn.  Dec.  5, 2014) (rejecting request for "discovery on discovery" because it was "not designed to elicit information relevant to any claim and/or defense at issue").  This topic seeks information concerning CBP's discovery efforts and "treads dangerously close to encroaching on attorney work product privilege." *Bombardier Recreational Prods., Inc.*, 2014 WL 10714011, at *15 (citing *Fed. Deposit Ins. Corp. v. Johnson*, No. 12-cv- 209 (KJD/PAL), 2013 WL 1195698, at *3 (D. Nev. Mar. 22, 2013) (noting that all "searches, filters, document review, coding and tagging of documents is the work product of the attorney and firm performing the work in the database and is not available to any other party").

There is no evidence or suggestion that CBP failed to preserve any documents after receiving service of the Complaint.  In fact, to the contrary, CBP has and is spending countless hours reviewing tens of thousands of pages of documents for their relevancy and will be producing the documents in due course by the deadline.  Defendants are preserving, searching, and producing documents as required by the Federal Rules of Civil Procedure.  These topics are also not proportional to the needs of the case because they do not seek information that bears on issues in the case.  To be discoverable, information must be *both* "relevant to any party's claim or defense *and* proportional to the needs of the case."  *Id.* (emphasis added).  Topic Nos. 12 and 13 are neither and are not an appropriate subject for 30(b)(6) testimony in this case.

Moreover, Topic Nos. 12 and 13 are overly broad and "the steps taken to preserve, search for and produce documents" does not describe with reasonable particularity the matters on which examination is requested.  Further, even if this were an appropriate topic for discovery, which it is not, the information about preserving documents would be available in a more convenient,

**COVINGTON**

more efficient, less burdensome or less expensive means than a 30(b)(6) deposition.  Finally, the information sought by this vague request appears to be protected by the attorney-client and work product privileges.

<u>Plaintiffs' Responses to Objections to Topic Nos. 12 and 13</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree to defer Topic Nos. 12 and 13 until completion of CBP's document production. Plaintiffs reserve the right to renew Topic Nos. 12 and 13 during the Phase II 30(b)(6) deposition(s) in order to elicit testimony regarding any material gaps in CBP's document production.

***Examination Topic No. 14.  Whether any document potentially responsive to Plaintiffs' requests for production in this action was discarded or destroyed in whole or in part and, if so, the circumstances under which the document was discarded or destroyed.***

<u>Defendants' September 19 Objections to Topic No. 14</u>

Defendants object to Topic No. 14 on the grounds that it seeks information that is neither relevant to the claims or defenses, nor proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  There is no evidence or suggestion that CBP discarded or destroyed any document(s) after receiving service of the Complaint.  In fact, to the contrary, CBP has and is spending countless hours reviewing tens of thousands of pages of documents for their relevancy and will be producing the documents in due course by the deadline.  For that reason, Defendants also object to Topic No. 14 on the grounds that it lacks foundation, assumes the existence of facts that do not exist and implies the occurrence of events that did not take place, and incorporates allegations and assertions that are disputed or erroneous.  Defendants further object to Topic No. 14 on the ground that it is overly broad, unduly burdensome, and does not describe with reasonable particularity the matters on which examination is requested.  The phrase "potentially responsive" is vague and ambiguous.

To the extent that this topic seeks information concerning video footage, Defendants object on the ground that it seeks information that is unreasonably cumulative and duplicative of discovery previously produced by Defendants.  JFK Port Director Russo was deposed and questioned regarding the video footage that CBP controls and the retention practices for any such video.  *See* Russo Dep. pp. 74-76.  It would be more convenient, more efficient, less burdensome and less expensive to provide this information in some other form rather than conducting a 30(b)(6) deposition.  *See* Fed. R. Civ. P. 26(b)(2); *see also A.1.A.  Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002) (where an entity establishes that a witness's testimony as a 30(b)(6) witness would be identical to his or her testimony as an individual witness, an entity may "comply [] with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity").

<u>Plaintiffs' Responses to Objections to Topic No. 14</u>

Without waiving any arguments as to Defendants' objections, Plaintiffs can agree to defer Topic No. 14 until completion of CBP's document production. Plaintiffs reserve the right to renew Topic No. 14 during the Phase II 30(b)(6) deposition(s) in order to elicit testimony regarding any failure to preserve responsive materials.

**COVINGTON**

*         *         *

Sincerely,
s/ *Joshua B. Picker*
Joshua B. Picker

s/ *Hugh Handeyside*
Hugh Handeyside