

October 17, 2018

Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Amadei, et al. v. Nielsen, et al.*, No. 17 Civ. 5967

Dear Judge Scanlon:

We represent Plaintiffs in the above-referenced matter, which concerns the unlawful post-flight detention and search at JFK Airport of passengers seeking to deplane a domestic flight. We write in response to Defendants' motion for a protective order ("Motion"), which argues that CBP cannot be subjected to a routine recordkeeping practices deposition. In yet another refusal to cooperate in the discovery process, Defendants refuse to negotiate the scope of Plaintiffs' 30(b)(6) notice in good faith and fundamentally mischaracterize Plaintiffs' claims. Defendants' Motion should be denied.

## BACKGROUND

On August 15, 2018, Plaintiffs noticed a Rule 30(b)(6) deposition of U.S. Customs and Border Protection ("CBP") for September 17, 2018. *See* ECF No. 59-1. On September 10, just one week before the noticed deposition, Defendants responded with boilerplate objections. ECF No. 59-2. During a meet-and-confer on September 11, Defendants disclosed for the first time that they would neither produce a witness on the noticed date nor designate a deponent before resolution of their objections.

CBP's failure to comply with the 30(b)(6) deposition notice was just another in a long line of discovery abuses. *See, e.g.*, *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 242 F.R.D. 164, 165-66 (D. Mass. 2007) ("[T]here is no provision in the rules which provides for a party whose deposition is noticed to serve objections so as to be able to avoid providing the requested discovery until an order compelling discovery is issued."). Although Plaintiffs made plain that they did not consent to Defendants' failure to comply, Plaintiffs proposed a structured negotiation process to attempt to resolve Defendants' objections without Court intervention. Consistent with that process, Defendants provided more detailed objections to the notice on September 19, ECF No. 59-3, and Plaintiffs responded on September 27, ECF No. 59-4. Without waiving any arguments, Plaintiffs in their response proposed modifications to the topics and schedule in an effort to resolve those objections. *Id.* These included a bifurcation of the testimony into two phases, with the first phase ("Phase I") covering only Topics 2, 6, and 7—those pertaining to recordkeeping and

report-making practices—to prioritize the topics most relevant to further document requests. Plaintiffs also clarified the scope of the deposition topics in response to Defendants' concerns, proposed a narrowing of topics, and even offered to forego others. See ECF No. 59-4.

On October 1, the parties engaged in a meet-and-confer to resolve outstanding disagreements. Defendants' counsel agreed to the bifurcated approach and indicated that they would discuss with their clients and propose alternate language to clarify or resolve Defendants' concerns regarding Phase I. On October 10, the parties engaged in another meet-and-confer, in which Defendants disclosed that they are unwilling to propose alternate language for the Phase I topics as agreed on October 1, and that they instead intended to move for a protective order.

## ARGUMENT

Defendants raise no valid objection to the 30(b)(6) notice and fail to justify a protective order. As an initial matter, Defendants waived any objection to the notice by failing to designate witnesses or timely appear for the noticed examination. *See* Fed. R. Civ. P. 37(d)(1)(A)(i). They compounded that failure by abandoning the conferral process and rejecting, without explanation, Plaintiffs' good-faith effort to reach an agreement on the Phase I topics. Defendants now recycle the objections from their September 19 letter—objections Plaintiffs have already responded to and tried to resolve. *See* ECF Nos. 59-3, 59-4. This conduct is of a piece with Defendants' approach to discovery. They neither explain their refusal to negotiate further nor offer good cause for a protective order barring *any* Rule 30(b)(6) testimony regarding the Phase I topics.

*Scope of Discovery*

Defendants first argue that because this lawsuit includes claims under the Administrative Procedure Act ("APA"), discovery is "necessarily limited and narrowed" to what is necessary for the Court to review any policy that serves as the basis for the APA claims. *See* Motion at 2 (citing *Ali v. Pompeo*, No. 16-CV-3691, 2018 WL 2058152, at *4 (E.D.N.Y. May 2, 2018)).

Setting aside that this argument lacks merit, Defendants have waived it. This Court denied Defendants' first motion to stay discovery almost nine months ago and has repeatedly ruled on the scope of discovery since. Defendants' new argument regarding record review in APA cases is simply their latest attempt to forestall compliance with those rulings. More fundamentally, Defendants ignore the obvious: This lawsuit includes claims under both the Fourth Amendment *and* the APA. *See* Complaint ¶ 10. Because Plaintiffs press independent constitutional claims, they are entitled to discovery under the Rule 26 standard.

But even if Plaintiffs were limited to "only that discovery necessary to effectuate the Court's judicial review," *see Ali*, 2018 WL 2058152, at *4, the discovery requested here falls squarely within that scope. Topics 2, 6, and 7 address CBP's recordkeeping and report-making practices. This information is not only relevant to Plaintiffs' claims, but will help Plaintiffs tailor discovery requests and reduce the burden of responding to them. It was for this reason that Plaintiffs proposed bifurcating the 30(b)(6) testimony, with testimony on recordkeeping and report-making practices occurring first. Indeed, the Court itself has suggested that Plaintiffs seek this information through a 30(b)(6) deposition to streamline discovery. *See* May 1 Hr'g Tr. 23:12,

ECF No. 42 ("You need to develop the factual basis for the rest. . . . It may be that you have a 30(b)(6) witness with regard to recordkeeping.").

Finally, Defendants' assertion that discovery to date "has confirmed the nonexistence of the purported policy challenged by Plaintiffs in this case" is both inaccurate and misplaced. *See* Motion at 2. Defendants both mischaracterize the discovery that has been taken and ignore that Plaintiffs allege a policy *and/or routine practice* authorizing the conduct that forms the basis for their claims. Where, as here, challenged conduct occurs pursuant to an unwritten policy or practice, the record cannot be meaningfully identified or limited as in other APA cases. *See Ali*, 2018 WL 2058152, at *4 ("[T]he absence of formal administrative findings makes [extra-record] investigation necessary in order to determine the reasons for the agency[] decision.").

*Examination Topic 2*

Topic 2 is plainly relevant to Plaintiffs' claims and proportional to the needs of the case. *See* ECF No. 59-1 (Schedule A); Fed. R. Civ. P. 26(b)(1). Defendants incorrectly claim that none of the subtopics set forth in Topic 2 "relate to the alleged policy at issue," Motion at 3, and are therefore inappropriate 30(b)(6) topics. But Plaintiffs seek this information—*at the Court's suggestion*—to determine where records most likely to support their claims reside. *See* May 1 Hr'g Tr. 23:12. Information concerning recordkeeping practices with respect to each of the subparts is relevant and appropriate because those records are likely to hold evidence of a CBP policy or routine practice regarding the kind of document checks that gave rise to this lawsuit. For example, Plaintiffs may appropriately inquire as to CBP's recordkeeping practices with respect to passengers traveling on domestic flights and at locations in U.S. airports outside a Customs security area (subparts (a) and (b)) because those records are the most likely to contain evidence regarding suspicionless searches of domestic air passengers—evidence relevant to Plaintiffs' claims and standing arguments and to Defendants' apparent defense that they do not have a policy or routine practice permitting such searches. This testimony will allow Plaintiffs to reduce the burden on Defendants with respect to any subsequent document request.

Defendants also argue that "subtopics (a) and (b) do not describe with reasonable particularity what is meant by 'interacts with passengers.'" Motion at 3. However, Plaintiffs in their September 27 letter clarified that this phrase "means to communicate with passengers traveling on domestic flights." ECF No. 59-4 at 5. At the October 1 meet-and-confer, Plaintiffs stated they would consider Defendants' proposals for clarification. Defendants declined to engage, yet still complain that this phrasing lacks "reasonable particularity." Motion at 3.

Similarly, Defendants assert that the term "assistance" in subtopic (d) "is not defined" and is overbroad, *id.*, an objection they first raised during the October 1 meet-and-confer. Plaintiffs suggested that Defendants propose alternate phrasing, but Defendants refused to do so.

Finally, Defendants' half-hearted objection to Topic 2 "to the extent" that it implicates privileged information is not properly before the Court. Defendants have neither invoked a privilege nor satisfied the threshold requirements for supporting any such invocation. In any event, the location and method of recordkeeping—as distinct from the substance of those records—is not an investigative technique subject to any such privilege.

*Examination Topic 6*

Topic 6 seeks information related to policies and procedures applicable to "requests to CBP for assistance from law enforcement or other government agencies." Defendants' list of unsupported objections to Topic 6 does not constitute good cause for a protective order.

Although Defendants argue that the information requested in this topic "would not assist the Court in assessing the constitutionality of an alleged CBP policy," Motion at 3-4, this topic is plainly relevant given the circumstances of the conduct giving rise to this lawsuit. A competent witness should be able to testify to these practices, particularly given that, as Defendants concede, CBP frequently receives such requests. *See* Motion at 4.

Defendants also fail to support their assertions regarding burden. Plaintiffs do not seek testimony regarding specific requests for assistance; they seek testimony on any policies or procedures that govern CBP's responses to them. Finally, Defendants object to the term "assistance." As above, although Defendants' counsel agreed to propose alternate language, they now refuse to do so.

*Examination Topic 7*

Topic 7 seeks information related to policies and procedures "regarding reports CBP provides to law enforcement, other government entities, or members of Congress (including after-action reports following incidents)." Defendants' objections again miss the mark.

Defendants first argue that "Plaintiffs do not challenge CBP's authority to provide" such reports—a point that is at once obvious and irrelevant. Plaintiffs seek testimony regarding records and reports likely to contain information relevant to their claims and standing to seek prospective relief. To that end, Topic 7 seeks testimony regarding how and when CBP submits incident reports to the enumerated entities—testimony probative of where records relevant to Plaintiffs' claims may exist. Furthermore, Plaintiffs agreed in their September 27 letter to limit the inquiry to regulations, policies, standard operating procedures, and practices applicable to CBP on or after January 1, 2015, to reduce any burden on Defendants. *See* ECF No. 59-4 at 9.

As with Topic 2, Defendants' reference to privileges does not raise an issue ripe for adjudication. The mere possibility that testimony could implicate privileged matters does not constitute good cause for a protective order. Defendants may propose limitations on the scope of inquiry or formally invoke a privilege under Rule 26(b)(5). They have done neither. Regardless, Plaintiffs' request here—information about report-making practices and procedures—invades no privilege.

Plaintiffs respectfully request that the Court deny Defendants' Motion for a Protective Order.

Respectfully submitted,

Hugh Handeyside
*Counsel for Plaintiffs*

Cc: All Counsel (by ECF)

4