

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 19, 2018

**VIA ECF**
Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: <u>Kelley Amadei, et al. v. Kirstjen M. Nielsen, et al.</u>
      <u>Case No.: 17-CV-5967 (Garaufis, J.) (Scanlon, M.J.)</u>

Dear Judge Scanlon:

  Pursuant to the Court's October 4, 2018 Order, the parties provide this update in advance of the status conference scheduled for October 25.

  The parties have conferred, including an in-person meeting on Wednesday, October 10, and can report progress in aspects of discovery, resolution of some disputed issues, and continued disagreement as to others.

  Since the last status conference on August 15, 2018, the parties have taken five depositions: CBP Port Director Francis J. Russo on August 30, Immigration and Customs Enforcement ("ICE") Officer Dennis Starr on September 20, ICE Officer Everlyn Pradoguevara on September 27, CBP Officer Rey Rivera Perez on October 2, and Plaintiff Kelley Amadei on October 4.

  In addition, Plaintiffs have produced documents, including flight records and documents provided by Delta Air Lines pursuant to a non-party subpoena, Defendants have produced documents from the Department of Homeland Security, as well as emails from 23 CBP custodians. Defendants are reviewing ICE documents for production. Defendants are also reviewing emails from an additional nine CBP custodians that Plaintiffs requested at the last discovery conference. Defendants expect to produce those emails by October 31.

  Going forward, the depositions of all but one of the remaining Plaintiffs have been scheduled, along with the deposition of CBP Officer Christian Schultz and the depositions of four Delta employees. Of those depositions, four plaintiffs and the four Delta employees will be deposed in California and Officer Shultz will be deposed near his Georgia residence. Defendants have stipulated to the deposition of an additional fact witness, Supervisory CBP Officer Frank Gulin, that has not yet been scheduled.

The parties address their discovery disputes below.  In that regard, the parties first refer the Court to Defendants' pending motion for a protective order relating to the noticed 30(b)(6) deposition of CBP, ECF No. 59, and Plaintiffs' opposition to that motion, ECF No. 60.  Defendants also renewed their request to stay discovery in its entirety.  *See* ECF No. 61.  Pursuant to the Court's Individual Rules, Plaintiffs have until October 24 to respond.

## I.     Plaintiffs' Positions

Although the parties met and conferred in person on October 10 and subsequently by email, discovery issues remain unresolved.  To the extent that these issues remain unresolved by the October 25 discovery conference, Plaintiffs respectfully request that the Court address those issues at that time. Among the issues in dispute are:[1]

- *First*, despite having been directed to do so at the August 15, 2018 conference and its resulting order, Defendants now refuse to search and produce the responsive documents of Defendant CBP Commissioner Kevin McAleenan.

    On August 2 Plaintiffs moved to compel production of documents responsive to Request 16 of their First Request for Production from custodians outside of New York.  ECF No. 45.

    In its August 15 Order, the Court directed that "[b]y 10/31/2018, Defendant is to produce the responsive documents held by the fourteen custodians identified and discussed during the conference," one of whom was Commissioner McAleenan.  ECF No. 48.  The Court continued that "[i]f Defendants can show any of these individuals are [not] proper targets, Defendant's counsel must meet and confer with Plaintiffs' counsel and try to resolve the issues. If they cannot agree, they can raise the dispute with the Court."  *Id.*  During the conference, the Court explained that it meant that the documents should be produced unless Defendants "convey[ed] to plaintiffs' counsel . . . a good explanation for why these individuals [including Commissioner McAleenan] should not be on this list, *not because they don't want to do the search, because it's their opinion that they were not decision makers, really that they have nothing to do with this and either it's a mistake or they were only administratively involved*."  Aug. 15 Hr'g Tr. at 30 (emphasis added).

    At the October 10 meet and confer—nearly two months after the Court's August 15 Order and only weeks before the October 31 production deadline—Defendants first indicated that they do not wish to search or produce Commissioner McAleenan's documents because, they assert, he was not involved in the identification checks at issue and had limited involvement after the fact, including receiving a "privileged" briefing on the Incident.

---

[1] In an effort to limit the need for court intervention, Plaintiffs do not list here further objections that they have raised with Defendants and issues that have not yet become ripe for judicial review. To the extent that the parties cannot resolve those issues, Plaintiffs reserve the right to raise these issues at impasse.

Yet Defendants must acknowledge that documents in the record indicate that Commissioner McAleenan was personally aware of the Incident shortly after it occurred, requested that CBP respond to the media about the Incident, and sent an email reacting to CBP's media response to the Incident and an article that described CBP's practices and procedures.

In particular, while at the August 15 Conference Defense counsel indicated that "it didn't seem like it was worth it to check his emails for this incident," Aug. 15 Hr'g Tr. at 10, Plaintiffs' counsel pointed to a document produced by ICE in which a CBP Public Affairs employee wrote that Commissioner McAleenan had directed her to respond to the media regarding the Incident. *See id.* at 20; Ex. 1, ICE June 16, 2017 FOIA production at 11 of 14 ("the Commissioner has asked us to respond to the Rolling Stone Article" about the Incident).

The most recent CBP document production includes an email from the Commissioner himself—produced from the files of a different custodian—in which he praises CBP's input to a Wall Street Journal article regarding the incident, which noted that "Border protection officers are sometimes asked by U.S. Immigration and Customs Enforcement to help in investigations." *See* Ex. 2, CBP00001546 (Feb. 23, 2017 Email from Michael Friel).[2]

Beyond these documents, Defendants acknowledge that the Commissioner received at least one briefing specifically regarding the Incident. To the extent that Defendants believe that briefing or related communications are privileged, they should formally assert that privilege and produce a log so that Plaintiffs may evaluate those claims of privilege.

In a case where existence of a CBP policy or routine practice is a central issue, documents reflecting the Commissioner's views as to CBP's policies and practices are discoverable and relevant to the claims and defenses here. The Court should compel Defendants to search and produce Commissioner McAleenan's documents.

- *Second*, Plaintiffs seek leave to depose two fact witnesses: Delta Air Lines customer service agent Lisa Lanaola and Supervisory CBP Officer Dawn Groves. Discovery to date has suggested that each participated in key portions of the events of February 22, 2017. Defendants have declined to agree to these depositions.

---

[2] Defendants have designated this document—as they have with virtually *every* document they have produced in this matter—as Confidential Information subject to the protective order. This morning Plaintiffs requested consent to remove the designation for purposes of this motion but Defendants' counsel has indicated that CBP may not be able to respond prior to the close of business. Plaintiffs see no legitimate reason to designate this document as confidential. Plaintiffs take no position should Defendants move to file this letter and the document under seal and file a redacted version of the letter on the public docket.

3

Plaintiffs require leave of the Court to notice these depositions to the extent that the parties have not stipulated to the depositions and they would result in Plaintiffs having taken more than ten depositions. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). "The court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." *Id.* While Plaintiffs have taken only four depositions thus far, another five are scheduled and one more—the CBP 30(b)(6) deposition that is the subject of Defendants' pending motion—has been noticed. As noted above, Defendants have also stipulated to the deposition of CBP Supervisor Frank Gulin, which has not yet been scheduled.

As context, the ten depositions Plaintiffs have noticed or taken have been limited to individuals directly involved in the Incident, such as the four non-supervisory ICE and CBP officers and four Delta flight attendants; JFK Port Director Frank Russo, who made press statements following the incident about CBP's policies; and the 30(b)(6) deposition.

The two witnesses Plaintiffs seek leave to depose are similarly situated as witnesses whom the record suggests were involved in the Incident.

*First*, Plaintiffs seek to depose Ms. Lanaola, identified in third-party discovery as the Delta Air Lines gate agent assigned to meet Flight 1583 when it arrived at JFK. CBP Officer Rey Rivera Perez testified at his deposition that he observed Officer Schultz request that the gate agent instruct the flight crew on Delta 1583 to make an announcement or announcements regarding the need for passengers to produce identification as they deplaned. *See* Rivera Perez Dep. 93:17-24 ("Q.  What was the conversation that you and Officer Schultz had with that gate representative? A.  Schultz spoke to her and asked her if we can -- if we can ask the crew to make an announcement to -- so if all the passengers can have some sort of ID on the way out so they can show us."); *id.* 94:24-95:8 ("Q.  So what happened next after Officer Schultz asked for the gate agent to make the announcement? A.  So she start moving the gate, so the jet bridge up to the airplane door.  They opened the door and the gate agent goes up to the crew member and told them our request.  And they did the announcement inside the plane."). Ms. Lanaola may be the sole witness who can provide testimony as to what the CBP officers instructed or requested Delta personnel to do. She is also likely to have first-hand knowledge as to how those requests or instructions were conveyed to the flight crew and then implemented, which is key to understanding whether the identification checks were compulsory. Defendants have refused to agree to the deposition of Ms. Lanaola despite that she is not their employee and the additional burden on Defendants to attend her deposition in New York would be minimal.

*Second*, Plaintiffs seek leave to depose CBP Supervisory Officer Dawn Groves. CBP has produced emails summarizing CBP's post-Incident investigations indicating that Ms. Groves declined a request for assistance from ICE regarding Delta Flight 1583 because, in her view, CBP could not provide assistance relating to a domestic flight. *See, e.g.*, Ex. 3, CBP 00355 (CBP Assistant Port Director stating that "HSI agents showed up at T4 and asked SCBPO Dawn Groves for help identifying a pax arriving on the domestic flight . . . Dawn told them we couldn't help because it was a domestic flight."). In the October 10 meet-and-confer, Defendants' counsel indicated that these emails may have been mistaken and that Ms. Groves's declination of assistance to ICE actually pertained to a

4

*different* ICE request to identify a passenger on a domestic flight. Defendants have not yet been able to clarify whether Ms. Groves had any communication on February 22, 2017 with the ICE or CBP officers who were involved in the Incident. Either way, Ms. Groves is a relevant witness: if she received a request from ICE to assist with Delta Flight 1583 and declined to do so, that is relevant to the authority of the CBP officers who conducted the search and fills in gaps in the memories of the ICE officers who have testified. If Ms. Groves declined an ICE request relating to a *different* domestic flight, that evidence may support Plaintiffs' assertions that a similar incident is likely to occur in the future.

## II. Defendants' Positions

<u>Commissioner McAleenan's emails</u>

Defendants properly object to the production of the emails of CBP Commissioner Kevin McAleenan. Defendants raised their objection in accordance with the Court's August 15, 2018 Order, which expressly allowed Defendants to object to the production of the emails of additional CBP employees, provided those employees had nothing to do with the subject incident. Because Commissioner McAleenan had nothing to do with this incident, the Court should deny Plaintiffs' request for the production of the Commissioner's emails.

Plaintiffs mischaracterize Defendants' reasons for objecting to their request for the Commissioner's emails. Rather than a refusal to search his emails, Defendants appropriately object because the broad discovery produced by Defendants to date has established that the Commissioner's emails are irrelevant to the issues in this case.

Since the August 15 discovery conference, Defendants have reviewed and produced emails of 28 CBP employees, including high-level officials. The Defendants have produced emails from Judson Murdock, acting Executive Director of Operations, Field Operations at CBP headquarters; Raymond Polley, Director, Field Operations Readiness Team at CBP headquarters; Katherine Stark, Office of Congressional Affairs, CBP headquarters, and Jennifer Evanitsky, Office of Public Affairs, CBP headquarters. Defendants have also produced emails from high-level CBP employees in New York, including Leon Hayward, Acting Director of New York Field Operations, and Francis Russo, CBP Port Director at John F. Kennedy International Airport ("JFK").

In spite of an exhaustive search of over 143,000 pages of documents from the emails of CBP personnel, Defendants have recovered one email authored by the Commissioner concerning this event. That email congratulated the Office of Public Affairs on its response to a media inquiry concerning Delta Flight 1583. The Commissioner was not aware of this incident before it happened and had nothing to do with the incident itself.

While Plaintiffs argue that the Commissioner's emails might inform their assertion that CBP has a policy or practice of checking the identification of passengers following domestic flights, that argument is belied by both the documents produced in discovery and the testimony of CBP witnesses. No witness produced for deposition to date is aware of any such CBP policy or practice. CBP Port Director Francis Russo, who implements CBP policy at JFK, testified that

5

there is no such policy at headquarters, the New York Field Office, or at JFK. There are no documents recovered or produced to date that indicate such a policy or practice.

Defendants are in the difficult position of proving a negative and have produced more than sufficient discovery to meet that burden in this case. In the face of discovery produced, Plaintiffs offer no support for their request for the Commissioner's emails. Accordingly, this Court should deny their request.

Further Depositions

Plaintiffs' request for two additional depositions should be denied.

Defendants object to Plaintiffs request to depose Delta gate agent Lisa Lanaola. Plaintiffs do not explain how Ms. Lanaola's testimony would not be duplicative of the other *four* Delta flight crew members already scheduled for deposition in California. Moreover, Plaintiffs do not explain how Ms. Lanaola's testimony concerns the central question of whether Plaintiffs identification check occurred pursuant to a policy or practice at CBP. In the absence of such a justification, Plaintiffs' request to take her deposition should be denied.

Plaintiffs' request to depose Supervisory CBP Officer Dawn Groves should also be denied because she did not witness or participate in the identification check in question. Plaintiffs state that Defendants have not been able to clarify whether Ms. Groves communicated with any of the CBP or ICE officers involved in this incident. However, that is incorrect.

In response to a request from Plaintiffs for additional information concerning Ms. Groves, Defendants explained that she was not involved in the identification check of the Plaintiffs or any of the passengers on Delta Flight 1583. Instead, she was working at JFK on the date of the incident, assigned to handle a warrant concerning a passenger on an *international* flight. The ICE agents involved in this incident approached her looking for the gate where Delta Flight 1583 was scheduled to arrive. Ms. Groves initially thought the ICE agents were assigned to work on the same warrant to which she was assigned. But upon learning that they were looking for a *domestic* flight, Ms. Groves directed the ICE agents to the gate they were trying to find. Her testimony has no bearing on the facts of this case. Accordingly, Plaintiffs' request to take her deposition should be denied.

| | |
|---|---|
| DARA A. OLDS<br>MATTHEW MODAFFERI<br>Assistant United States Attorney<br>Eastern District of New York<br>*Attorney for Defendants*<br>271 Cadman Plaza, East, 7th Fl.<br>Brooklyn, New York 11201 | NEIL K. ROMAN<br>JOSHUA PICKER<br>Covington & Burling LLP<br>*Attorney for Plaintiffs*<br>620 8th Ave.<br>New York, NY 10018 |
| /s/ Dara A. Olds | /s/ Neil K. Roman |