October 24, 2018

Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Amadei, et al. v. Nielsen, et al.*, No. 17 Civ. 5967

Dear Judge Scanlon:

We represent Plaintiffs in the above-referenced matter, which concerns the unlawful post-flight detention and search at JFK Airport of passengers seeking to deplane a domestic flight ("Incident"). We write in response to Defendants' Motion to Stay Discovery ("Motion"), filed on October 19, 2018. *See* ECF No. 61. For the reasons set forth below, Defendants' Motion should be denied.



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

National Office
125 Broad Street, 18th floor
New York NY 10004
(212) 549-2500
aclu.org

## BACKGROUND

This is Defendants' *fourth* successive motion to stay discovery. Defendants first moved to stay discovery on January 16, 2018. *See* ECF No. 20. This Court denied that request without prejudice on January 25. ECF No. 24 at 2. Defendants renewed their motion during a conference on February 9; Judge Garaufis denied the motion. Min. Entry, Feb. 12, 2018.

On September 27, Defendants again moved for a stay, filing an 18-page brief addressed to Judge Garaufis that omitted that the parties were engaged in negotiations on the issues for which Defendants claimed undue burden, including, for one key issue, a structured negotiation schedule to which the parties had agreed. *See* ECF No. 56. This Court denied the motion "for failing to comply" with the Local and Individual Rules, *see* Min. Order, Oct. 4, 2018, and instead ordered the parties to confer in person within ten days and submit a joint letter by October 19, 2018. The Court also advanced the date of the status conference to October 25. *Id.*

Since Defendants' "renewed motion" was filed and denied, the parties have in fact come to agreement on several key issues and only failed to reach agreement as to another—the CBP Rule 30(b)(6) deposition—when Defendants decided they would not make *any* proposal as to scope and would instead refuse to produce a witness even for a recordkeeping deposition.

## ARGUMENT

The Court's denial of Defendants' motion to stay was not an invitation for Defendants to file yet another successive motion making the same arguments. This latest motion, too, is procedurally improper and makes no showing as to the good cause necessary for a stay. Far from assisting in the efficient resolution

of this case—now in its second year—a stay of discovery would upend hours of scheduling negotiations, cut short Defendants' production of documents in response to requests that have been pending for nearly nine months, and worsen the already-evident problem of fading memories resulting from Defendants' delays.

## Defendants' Motion Is Improper

Defendants' latest motion for a stay of discovery is an improper attempt at a *fourth* bite of the apple. Defendants renew this motion nine months after the Court twice denied their first request, with their only basis for renewal being that Plaintiffs are undertaking the very discovery permitted by this Court in January 2018 and reaffirmed repeatedly since then. Unlike when this Court denied Defendants' first motion to stay discovery in January, *see* ECF No. 24, the Court did not state that Defendants could renew their most recent Motion. Instead, the Court laid out an alternative path to resolve the parties' discovery disputes: it ordered the parties to confer in person regarding outstanding discovery issues within the following ten days; submit a joint letter outlining any remaining disputes by October 19; appear at a status conference on October 25 to address these issues; and conduct the agreed-upon depositions in the meantime. *See* Min. Order, Oct. 4, 2018. The Court's instructions did not contemplate the filing of yet another motion to stay discovery that would needlessly consume the Court's and parties' time and resources. For this reason alone, the Court should deny the Motion.

## Defendants Have Failed to Show Good Cause

Setting aside the procedural defects in Defendants' Motion, it fails to set forth the good cause required for granting a stay of discovery.

*First*, Defendants repeat the unsupported assertions that they are entitled to dismissal on standing grounds and that discovery should therefore be stayed. For the reasons set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 33, Plaintiffs sufficiently allege standing to bring their constitutional and APA claims. The Court, moreover, has already ruled *three times* that discovery should proceed while the motion to dismiss is pending—rulings that Defendants appear simply unwilling to accept. Plaintiffs have propounded discovery that squarely addresses the evidentiary issues in this case, and, contrary to Defendants' claim, the discovery taken thus far does *not* "confirm the nonexistence" of a policy authorizing the conduct at issue here. *See* Mot. at 1. Given Defendants' refusal to produce a CBP witness as to recordkeeping practices, and the lack of Rule 30(b)(6) testimony on policies and procedures, any conclusion as to this central issue would be premature.

*Second*, far from being overbroad and burdensome, Plaintiffs' discovery requests are tailored and proportional to the two key issues in this case: (1) whether the search and seizure on February 22, 2017, violated Plaintiffs' constitutional rights, and (2) whether Defendants have policies or routine practices that pose a substantial risk of future violations. Defendants' objections to the scope of these requests are meritless, and instead highlight their unwillingness to meaningfully participate in the discovery process and meet their obligations under the Federal Rules.[1]

---

[1] Defendants' suggestion that all constitutional claims against government actors in their official capacities are APA cases and thus subject to limited discovery under the APA is meritless. *See*

For example, Defendants object to Plaintiffs' Rule 30(b)(6) notice to CBP. But as explained in Plaintiffs' Response in Opposition to Defendants' October 12 Motion for a Protective Order, ECF No. 60, Defendants' own conduct belies this objection. CBP failed to comply with the Rule 30(b)(6) notice by refusing to produce a witness on the noticed date. Plaintiffs nonetheless agreed to negotiate in good faith with Defendants in an attempt to resolve their issues. Plaintiffs clarified the scope of the deposition topics, proposed a narrowing of topics, and even offered to forego some topics and sequence others to minimize duplicative testimony. Although counsel for Defendants initially represented that they would propose alternate language, they later refused to engage in the process altogether and instead moved for a protective order. Defendants' refusal to negotiate in good faith leaves them without any valid basis to object to the deposition notice.[2]

Defendants also object to the number and location of the remaining depositions. But these depositions are not only limited, they are plainly relevant to the key issues in the case.[3] Defendants' assertions of burden ring hollow. For example, Defendants complain that deposing the California-based flight attendants "will require the government to incur travel, lodging, and transcription costs," *see* Mot. at 3, without mentioning that Plaintiffs have offered to provide videoconference facilities for them in New York. The parties have since painstakingly negotiated a schedule that will permit Defendants to participate in seven depositions—three of the non-party flight attendants and all four California plaintiffs—over four days, in a single California trip.

Defendants' objection to the scope of document requests fares no better. Plaintiffs' document requests are carefully targeted, pertaining to the Incident itself, the policies and routine practices relevant to the Incident, and one targeted request regarding a specific incident at a different airport. Even taking Defendants' numbers at face value, the volume of documents in this matter pales in comparison to cases the government is accustomed to handling. The authority Defendants cite, moreover, merely underscores the appropriateness of the discovery Plaintiffs seek. The main case Defendants cite, *Bethpage Water District v. Northrop Grumman Corp.*,

---

Mot. at 3. Defendants waived this argument because, even though discovery had been ongoing for months, they did not raise the argument until their October 12 Motion for a Protective Order. *See* Pls.' Opp. at 2, ECF No. 60. Regardless, because Plaintiffs press independent constitutional claims that are not APA claims, they are entitled to discovery under the Rule 26 standard. *See id.*

[2] Defendants are simply wrong that Plaintiffs' Rule 30(b)(6) notice "seeks testimony in contravention of this Court's ruling that discovery be limited to CBP policies implemented in New York." Mot. at 3. As an initial matter, the Court's ruling was addressed to the scope of *document requests* to CBP and not to discovery more broadly. *See, e.g.*, May 1 Hr'g Tr. 20:5-14, ECF No. 42 (discussing the likely locations of relevant documents). In fact, the Court explicitly suggested that Plaintiffs may renew document requests related to identification checks outside of New York if a Rule 30(b)(6) deposition about recordkeeping provided additional information supporting those requests. *See id.* at 20:20-25, 23:2-24:15. Plaintiffs are entitled to elicit this testimony on any policies, practices, and standard operating procedures that apply within CBP. In addition, Plaintiffs are entitled to know *whether* the policies or procedures differ across points of entry, a limited inquiry that will illuminate how and where relevant policies apply.

[3] Plaintiffs have deposed or seek to depose the four non-supervisory CBP and ICE officers and two supervisory CBP officers involved; the four flight attendants; the gate agent who relayed CBP's instructions; and CBP's JFK Port Director.

3

involved a request for documents dated "from 1930 to the present," totaling more than *three million* pages for review—over *twenty times* the volume Defendants complain of here. *Compare Bethpage*, No. 13-CV-6362, 2014 WL 6883529, at *3 (E.D.N.Y. Dec. 3, 2014) *with* Mot. at 3-4. Even so, the Court in *Bethpage* still allowed discovery relevant to the issues raised in the motion to dismiss. Nor have Defendants offered any proposals for further narrowing the document requests they assert are burdensome. In sum, Defendants have simply failed to support their assertions of burden or show that any burden is substantial enough to warrant a stay of discovery.

*Third*, a stay of discovery would prejudice Plaintiffs. Plaintiffs have noticed depositions of key fact witnesses whose testimony has been difficult to schedule and will only become more so. For instance, one of the CBP officers who conducted the searches is now in training in Georgia. The parties have a firm date for his deposition, and rescheduling may not be feasible given the officer's inflexible training schedule and the potential that he will be posted elsewhere in the United States or abroad. Likewise, Defendants and the non-party flight attendants have agreed to deposition dates that align with the witnesses' flight schedules, which are set far in advance.

Also significant is the prejudice to Plaintiffs that comes with fading memories. *See* Jan. 25 Hr'g Tr. 11:15-18, ECF No. 61-1 ("I agree with the plaintiff's counsel that memories fade and that seems like a good reason to move ahead . . . ."). This concern has proven well-founded: key witnesses have already forgotten crucial details in the year and a half since the Incident. *See, e.g.*, Rivera Perez Dep. 88:17-24 ("Q. So did you discuss the plan for how you were going to identify the person on the plane? A. On the way—by the gate—I don't remember. I don't recall talking about the—what we were going to do at the gate. I don't remember that well."); Starr Dep. 83:18-21 ("Q. Do you remember whether the [CBP] officer told you that they couldn't help because it was a domestic flight? A. I don't recall."). Any further delay in conducting these depositions will unfairly prejudice Plaintiffs, especially with respect to the upcoming depositions of a CBP officer who conducted the search, the supervisory officer who authorized the search, and the Delta witnesses who conveyed CBP's instructions to the passengers on Delta 1583. And unlike in the cases Defendants cite, Plaintiffs here have provided specific, relevant examples of how discovery delays have *already* prejudiced them. *Cf., e.g.*, *Bethpage*, 2014 WL 6883529, at *3 (plaintiff's argument that a stay would cause prejudice fell short because "it has not provided any specific examples of . . . witnesses whose memories may fade during the stay").

The prejudice outweighs any burden on Defendants here, especially given that the discovery delays are largely of Defendants' own making. *See* Jan. 25 Order at 2, ECF No. 24 (observing that Defendants "failed to participate in the discovery preparation process without justification" and placing them "on notice that [they are] expected to participate in the litigation and comply with the Court's orders"); Aug. 15 Order at 3, ECF No. 48 (directing, in response to Defendants' failure to complete production by the Court-ordered deadline, that Defendants "must dedicate sufficient resources to comply with discovery deadlines. The Defendants have been advised that they are expected to fully and actively participate in the litigation"); Aug. 15 Hr'g Tr. 24:8-9 (expressing skepticism about Defendants' failure to identify more than *one* CBP headquarters document custodian despite emails identifying over a dozen CBP employees with relevant knowledge—"But these are your documents so how do you not know about these people?").

These efforts to obstruct the Court-ordered discovery process will continue to prejudice Plaintiffs and should not be countenanced. The Court should deny Defendants' Motion to Stay Discovery.

Respectfully submitted,

_/s/ Hugh Handeyside_
Hugh Handeyside

Cc: All Counsel (by ECF)                      _Counsel for Plaintiffs_