D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KELLY AMADEI, et al.,

                        Plaintiffs,

          -against-

KIRSTJEN M. NIELSEN, et al.,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-5967 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

On February 12, 2019, Magistrate Judge Vera M. Scanlon ordered Defendants to produce certain U.S. Customs and Border Protection ("CBP") Fourth Amendment training materials (the "Training Materials") to Plaintiffs (the "February 12 Order"). (February 12 Order (Dkt. 94) at 2.) Before the court are Defendants' objections to Judge Scanlon's order. (Mem. in Support of Objections to the February 12 Order ("Obj.") (Dkt. 104-1).) For the reasons below, the court AFFIRMS the February 12 Order.

**I.    BACKGROUND**

On February 22, 2017, Plaintiffs were passengers on Delta Airlines Flight 1583, a domestic flight from San Francisco International Airport to New York's John F. Kennedy International Airport ("JFK"). (Compl. (Dkt. 1) ¶ 1.) After landing at JFK, CBP officers permitted each passenger to exit the plane only upon a thorough review of the passenger's identification document. (Id. ¶¶ 45, 47.) On October 12, 2017, Plaintiffs brought an action on the grounds that their Fourth Amendment rights were violated when they were required to produce identification before exiting the aircraft, and that, to the extent that CBP officers acted pursuant to a policy in checking the passengers' respective identification, this policy violates § 706(2)(A)-(C) of the Administrative Procedure Act ("APA"). (See id. ¶¶ 77-95.)

1

On January 16, 2018, Defendants moved to stay discovery pending their anticipated motion to dismiss.[1] (Defs. First Mot. to Stay Discovery (Dkt. 20).) On January 25, 2018, Judge Scanlon denied the motion to stay, although she permitted Defendants to "raise the issue with the District Judge during the [pre-motion conference]." (Jan. 25, 2018 Order (Dkt. 24) at 2.) Defendants renewed their request to stay discovery at the February 12, 2018 pre-motion conference; this court denied the motion. (Feb. 12, 2018 Min. Entry.) On October 19, 2018, Defendants renewed their motion to stay discovery, pending the outcome of the motion to dismiss. (Defs. Second Mot. to Stay Discovery (Dkt. 61).) On October 25, 2018, Judge Scanlon denied Defendants' renewed request. (Oct. 25, 2018 Order (Dkt. 67).) On November 5, 2018, Defendants appealed Judge Scanlon's decision to this court. (Not. of Mot. (Dkt. 70).) On December 13, 2018, the court denied Defendants' motion to dismiss and deemed Defendants' appeal moot. (See Memorandum & Order (Dkt. 83); id. at 7 n.3.)

On September 21, 2018, as part of their Fourth Request for Production of Documents, Plaintiffs sought the following from Defendants:

> Request No. 1: All documents, including ESI, created, used, or in effect since January 1, 2015, pertaining to training of new and existing CBP officers as regards compliance with the Fourth Amendment to the U.S. Constitution in locations within the United States other than within a Customs security area.

(Pls. Fourth Request for Production of Documents to Defs. ("Pls. Fourth RFPs") (Dkt. 108-1) at 9.)

Defendants "object[ed] to this request as overbroad, not relevant to the claims and defenses in this matter, and not proportionate to the needs of this case." (Resps. and Objs. of

---

[1] Defendants moved to dismiss on the grounds that (1) Plaintiffs lacked standing for declaratory and injunctive relief and (2) Plaintiffs had not alleged final agency action reviewable under the APA. (See Defs. Mem.) Defendants did not move to dismiss Plaintiffs' Fourth Amendment claim. (See id.)

Defs. to Pls. Fourth RFPs ("R&Os") (Dkt. 108-7) at 8.) They also "object[ed] on the grounds that the information requested is protected by the attorney-client privilege and the law enforcement privilege" and stated that they were withholding documents "on the basis of these objections." (Id.) Defendants did not mention or produce a privilege log at the time. (Opp'n to Obj. ("Opp'n") (Dkt. 108) at 5.) On November 16, 2018, Plaintiffs requested that Defendants confirm that they would provide a privilege log by November 21, 2018. (Nov. 16, 2018 Letter from Pls. to Defs. (Dkt. 108-8) at 3.) On November 27, 2018, Defendants replied to Plaintiffs' letter, "without acknowledging their failure to produce a privilege log" (Opp'n at 5), and stating with respect to Request No. 1:

> Without waiving any objections, Defendants state that CBP Officers are trained generally on the Fourth Amendment. Training for these officers is created and administered by CBP counsel. Further, this request is overbroad and should be limited to documents pertaining to training concerning domestic flights.

(Nov. 27, 2018 Letter from Defs. to Pls. (Dkt. 108-9) at 1-2).

The parties met and conferred on December 3, 2018, and Plaintiffs reiterated their demand for a privilege log. (Opp'n at 5.) Plaintiffs also restated their objection to Defendants' assertion of privilege with respect to the documents sought in Request No. 1. (Id. at 6.) Defendants "indicated they stood on their categorical privilege assertion but represented that they would produce a privilege log for Request No. 1 shortly." (Id.)

On February 6, 2019, having still not received a privilege log, Plaintiffs filed a motion to compel Defendants to, among other things, produce documents responsive to Request No. 1. (See Mot. to Compel (Dkt. 86).) On February 11, 2019, Defendants opposed this motion, arguing that they had "properly objected" to this request on the grounds that it is (1) overbroad, (2) not relevant, (3) voluminous and "there is no plausible way to parse out materials training 'in locations . . . other than within a Customs Security area.'" (Defs. Opp'n to Mot. to Compel

3

(Redacted) ("Opp'n to Mot. to Compel") (Dkt. 92) at 1-2.) Defendants also asserted that the requested documents constitute attorney work product and are protected by attorney-client privilege. (Id. at 2.) Finally, Defendants informed the court that they had "offered to produce a privilege log concerning Fourth Amendment training materials." (Id.)

On February 12, 2019, the parties appeared before Judge Scanlon for a status conference. (See Feb. 12, 2019 Min. Entry.) During the conference, Judge Scanlon discussed Defendants' objections to Request No. 1. (Feb. 12, 2019 Status Conf. Tr. ("Conf. Tr.") (Dkt. 95) at 25:24-40:13.) With respect to Defendants' privilege arguments, Judge Scanlon explained:

> [O]nce you're using materials for your officers to instruct them on, what is and isn't lawful is in the Fourth Amendment, you know, you're talking about the equivalent of business documents and training materials, not privileged communications . . . This is not legal advice. . . . [T]he fact that your employees apply legal standards and need to act within the law is not attorney-client information."

(Id. at 26:20-27:3; 29:15-18.) She rejected Defendants' privilege argument as "suggest[ing] that everything an attorney touched with regard to instructing employees about the law is still privileged." (Id. at 27:4-7.) At the same time, however, Judge Scanlon determined that Plaintiff's request should be narrowed to responsive documents concerning stops, seizures, and searches of persons and should exclude irrelevant materials relating only to seizures of property. (Id. at 38:16-18.) With respect to whether training materials would need to be produced if they did not relate to CBP activity at airports, Judge Scanlon advised Defendants to "look and see what the materials are." (Id. at 19-22.) She explained:

> [I]f there are general CBP materials that cover airports and other ports of entry, then yes, you would have to produce that. If there are joint tasks force that operate in and out of the airports, yes, you would have to produce that. If there are tasks force that don't do anything at a port of entry but are . . . separate, then you probably don't need to produce that[ but,] [i]f you have, you know, whatever

4

>> the CBP Academy training manual is and it covers -- you know, there's a section on the Fourth Amendment . . . produce it."

(Id. at 38:22-39:1.) Judge Scanlon stated that it was "hard to have this conversation in a vacuum" and directed Defendants to "look and see what you have and see if there's an issue[.] If there's something you don't think you need to produce, then you could identify the type of material, talk about it with plaintiffs' counsel and then if you can't agree, you can let me know." (Id. at 40:8-13.) This appeal followed. (See Obj.; Opp'n; Defs. Reply in Further Support of Obj. ("Reply") (Dkt. 113).)[2]

## II. LEGAL STANDARD

"A discovery ruling by a magistrate judge is a non-dispositive matter, and as such the Court will only set aside an order 'that is clearly erroneous or is contrary to law.'" Shipkevich v. Staten Island Univ. Hosp., No. 08-CV-1008 (FB), 2012 WL 4442621, at *1 (E.D.N.Y. Sept. 25, 2012) (quoting 28 U.S.C. § 636(b)(1)(A), and Fed. R. Civ. P. 72(a)); see also Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (finding that discovery rulings are generally non-dispositive). "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." Thai Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (alterations adopted) (internal citations and quotation marks omitted). "This standard is 'highly deferential,' 'imposes a heavy burden on the objecting party,' and 'only permits reversal where the magistrate judge abused his discretion.'" Milan v. Sprint Corp., No.

---

[2] On February 26, 2019, Defendants sought an extension of their time to file objections to Judge Scanlon's order. (Letter re: Extension of Time to File (Dkt. 99).) The court granted Defendants' request nunc pro tunc on March 7, 2019 and also granted Plaintiffs' request to file a response. (See Mar. 7, 2019 Order.)

16-CV-4451 (DRH), 2018 WL 1665690, at *2 (E.D.N.Y. Apr. 6, 2018) (quoting Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)).

### III. DISCUSSION

Defendants object to Judge Scanlon's order on the grounds that the Training Materials are protected by attorney-client and work product privileges. (See Obj. 4-9.) In support of their objections, Defendants submit a declaration by M. Bennett Courey, the Associate Chief Counsel (Enforcement and Operations) of CBP (the "Courey Declaration"). (Courey Decl. (Dkt. 104-2).) Defendants did not submit this declaration to Judge Scanlon; indeed, they contend that Judge Scanlon erred in part because she issued her decision "before the issue was presented to the court with authority and a declaration in support of the attorney-client and work product privileges." (Obj. at 4.)

#### A. The Courey Declaration

When reviewing a report and recommendation concerning a dispositive motion, the court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge; however, when, as here, the court is reviewing a magistrate judge's decision on a non-dispositive issue, "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge." Thai Lao, 924 F. Supp. 2d at 512. Compare Fed. R. Civ. P. 72(a) (providing for disposition of non-dispositive matters by magistrate judges), with Fed. R. Civ. P. 72(b) (providing for disposition of dispositive matters by magistrate judges, and stating that the "district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made") (emphasis added). See Haines v. Liggett Grp., Inc., 975 F.2d 81, 91 (3d Cir. 1992) (in reviewing non-

6

dispositive rulings, "[t]he district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact"); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) (refusing to consider new evidence in the form of an affidavit on non-dispositive issue based on reading of Rule 72 and lack of case law to the contrary); Verint Sys. Inc. v. Red Box Recorders Ltd., 183 F. Supp. 3d 467, 470 (S.D.N.Y. 2016) (observing that "in reviewing the decision of a magistrate judge, a district judge should not consider factual evidence that was not presented to the magistrate judge" (citation and quotation marks omitted)); Creighton v. City of New York, No. 12-CV-7454 (PGG), 2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) (declining to consider a declaration not submitted to the magistrate judge before she issued the ruling on a non-dispositive issue being appealed to the district court); N. Jersey Media Grp. Inc. v. Fox News Network, LLC, No. 14-CV-7630 (ER), 2015 WL 7444822, at *2 (S.D.N.Y. Nov. 23, 2015) (noting that, consistent with Rule 72(a), the court would "confine[] its analysis to the factual record before [the magistrate judge]"); cf. Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co., No. 12-CV-1641, 2015 WL 164069, at *7 (D. Conn. Jan. 13, 2015) (noting that district courts have "inherent authority" to consider additional evidence on non-dispositive matters, but "given that the district court functionally operates as an appellate tribunal under Rule 72(a), such discretion should rarely be exercised"). Accordingly, the court declines to consider the contents of the Courey Declaration.[3]

### B. Defendants' Procedural Argument

The court also finds that Judge Scanlon did not err by ordering Defendants to produce the Training Materials without seeking further briefing or a declaration in support of Defendants'

---

[3] In any case, as discussed below, the Courey Declaration does not satisfy Defendants' burden to establish the essential elements of the privileged relationship with respect to the documents sought by Plaintiffs.

privilege claims. (See Obj. at 4.) Defendants had ample opportunity to support their claims of privilege, but never did so. They never provided Plaintiffs with a privilege log (see Opp'n at 7), nor did they submit a declaration or raise the issue of further submissions either in their response to Plaintiffs' motion to compel (see Opp'n to Mot. to Compel), or at the February 12, 2019 conference, during which they had a lengthy discussion with Judge Scanlon about the privilege issues.[4] Indeed, at no point before or during that conference did Defendants claim to be unprepared to discuss those issues or ask Judge Scanlon to reserve judgment until they could submit additional support.[5] The court thus finds that Judge Scanlon did not err by ruling on the motion to compel after hearing from the parties at the status conference.

### C.   Defendants' Substantive Argument

Finally, the court finds that Judge Scanlon's order was not substantively erroneous or contrary to law.

#### 1.   Waiver

As an initial matter, the court finds that Plaintiffs have a strong argument that Defendants waived their privilege over the Training Materials by failing to substantiate their privilege claims with a privilege log for over four months. (Opp'n at 7-8.)

Local Civil Rule 26.2 requires that "[w]here a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion," a privilege log "shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court." Local Civ. R. 26.2(b); see also

---

[4] Defendants also chose not to seek reconsideration of Judge Scanlon's order.

[5] Notably, at the February 12 conference, with respect to certain other materials requested, Defendants offered to "have someone from CBP prepare a declaration or affidavit to be provided to your Honor under seal and then your honor can make a ruling." (Conf. Tr. at 41:19-22.) With respect to those materials, Judge Scanlon ruled that Defendants should produce them "unless Defendants can establish the law enforcement sensitive material." (Feb. 12 Order at 2.)

Fed. R. Civ. P. 26(b)(5) (requiring parties withholding discoverable material to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection"). Courts in this circuit have found that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." FG Hemisphere Assocs., L.L.C. v. Republique Du Congo, No. 01-CV-8700 (SAS) (HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases). A finding of waiver is an important reminder that

> the Federal Rules of Civil Procedure and the Local Civil Rules are not starting points for a discussion concerning the handling of privileged documents nor are they merely suggested practice guidelines that attorneys are free to disregard. They are rules, and in the absence of a court Order or stipulation providing otherwise, they must be obeyed.

In re Chevron Corp., 749 F. Supp. 2d 170, 182 (S.D.N.Y. 2010) (quoting FG Hemisphere Assocs., 2005 WL 545218, at *5), aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393 (2d Cir. 2010). Nonetheless, "[t]aking into account 'all relevant factors,' when the party fails to produce an adequate privilege log, it is 'within the Court's discretion to grant leniency as to documents which would be covered by [a privilege or protection] except for the waiver.'" McNamee v. Clemens, No. 09-CV-1647 (SJ) (CLP), 2013 WL 6572899, at *2 (E.D.N.Y. Sept. 18, 2013), clarified on denial of reconsideration, No. 09 CV 1647 (SJ), 2014 WL 12775660 (E.D.N.Y. Jan. 30, 2014) (quoting In re Chevron Corp., 749 F. Supp. 2d at 181-82).

As explained above, Plaintiffs first requested the Training Materials from Defendants as part of their Fourth Request for Production of Documents on September 21, 2018. (Pls. Fourth RFPs at 9.) Defendants served their responses and objections on October 24, 2018. (See

9

R&Os.) In objecting, Defendants asserted a claim of privilege and indicated that they were withholding documents on the basis of their objections, but failed to produce a privilege log. (See id.; Pl. Opp'n.) Since then, Defendants have stated, during a meet-and-confer on December 3, 2018, that they would provide a privilege log "shortly" (Opp'n at 5-6), and insisted, in their opposition to Plaintiff's motion to compel in February 2019, that they "have offered to provide a privilege log" (Opp'n to Mot. to Compel at 2). Nonetheless, as of the date of Plaintiff's opposition—March 25, 2019—Defendants had yet to produce a privilege log. (Pl. Opp'n at 6-7.)

Defendants contend that the court should decline to find a waiver here because (1) Plaintiffs have suffered no prejudice by any delay, (2) the parties had agreed upon a date to produce the privilege log, and (3) Plaintiffs' initial request was "overbroad and burdensome." (Reply at 4.)

First, the court is not reassured by Defendants' assertion that their failure to timely produce a privilege log has not caused any prejudice to Plaintiffs. (See id.) Although, as Defendants point out, the discovery deadline in this case—June 28, 2019—is still several months away (id.), Defendants have not given the court any reason to believe that, but for Judge Scanlon's order, they would have provided the required privilege log in time for the parties to resolve possible disputes and produce and review documents in advance of that deadline.

Relatedly, Defendants assert that there was no waiver because the parties had agreed on a date to produce a privilege log. Specifically, they aver that "[o]n February 6, 2019, Plaintiffs requested that Defendants produce a privilege log by February 22, 2019, and subsequently Defendants agreed." (Reply at 3 (citing Mot. to Compel; Opp'n to Mot. to Compel; and Defs. Opp'n to Mot to Compel (Sealed) (Dkt. 93).) Defendants cite no communications between the parties in support of this claim; Defendants' only citations are to Plaintiffs' motion to compel—

10

in which Plaintiffs asked Judge Scanlon to order the Defendants to produce a privilege log by February 22, 2019 (Mot. to Compel at 4)—and Defendants' response thereto—in which Defendants informed Judge Scanlon that they had already "offered to produce a privilege log" (Opp'n to Mot. to Compel at 2). These documents do not convince the court that Defendants had <u>in fact</u> agreed to produce the overdue privilege log by February 22, 2019, nor that they would have done so were they not somehow frustrated by Judge Scanlon's ruling on the motion to compel. (<u>See</u> Reply at 4.)

Finally, Defendants contend that "it took considerable time to sift through the materials to identify any specific documents that could be responsive" and to craft an appropriate privilege log. (Reply at 4.) The court is sympathetic to the burden placed on Defendants to comb through potentially voluminous materials. However, the amount of material requested does not justify Defendants' failure to even indicate that they were aware of their obligation under Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 to provide a privilege log. Indeed, despite repeated requests by Plaintiffs, Defendants offered to provide a privilege log just once—on December 3, 2018, over two months after they received Plaintiffs' request.[6] (Opp'n at 5-6.) Nor did Defendants seek leave from the court for an extension of time to serve Plaintiffs with a privilege log. And when Plaintiffs finally brought the issue to the court, Defendants did not provide Judge Scanlon with privilege log, declaration, or any particularized information about the Training Materials to enable her to rule on specific documents.[7]

---

[6] The court does not consider Defendants' representation to Judge Scanlon on February 11, 2019 that they had already agreed to provide a privilege log (<u>see</u> Opp'n to Mot. to Compel at 2) to, itself, constitute an offer to provide a privilege log.

[7] Even now, instead of submitting a privilege log to the court in support of their objections, Defendants rely on a vague declaration asserting privilege with respect to the "CBP Officer Basic Training" and "additional training courses." (<u>See</u> Courey Decl. ¶¶ 5-6.) As noted above, the court declines to consider the contents of that declaration.

11

In view of these considerations, Plaintiffs have a strong argument that any claims of privilege with respect to the Training Materials were waived by Defendants. The court is thus not "left with the definite and firm conviction that a mistake has been committed" by Judge Scanlon's order. See Thai Lao Lignite (Thai.) Co., 924 F. Supp. 2d at 512.

        2.      <u>Attorney-Client and Work-Product Privileges</u>

Leaving aside the issue of waiver, the court also finds that Judge Scanlon did not act contrary to law or commit clear error in determining that the Training Materials were not protected by attorney-client or work product privilege.

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or <u>ipse dixit</u> assertions." <u>In re Grand Jury Subpoena Dated Jan. 4, 1984</u>, 750 F.2d 223, 224-25 (2d Cir. 1984) (citations and quotation marks omitted). Defendants did not satisfy this burden with respect to either privilege asserted.

The Second Circuit has cautioned that because the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" <u>United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO</u>, 119 F.3d 210, 214 (2d Cir. 1997) (quoting <u>In re Horowitz</u>, 482 F.2d 72, 81 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S. 867 (1973)). "A document is not privileged merely because it was sent or received between an attorney and client. The document must contain confidential communication relating to legal advice." <u>Dep't of Econ. Dev. v. Arthur Andersen & Co.</u>, 139 F.R.D. 295, 300 (S.D.N.Y. 1991). A party invoking the attorney-client privilege thus has the burden of establishing: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept

confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir.1996).

"The work-product doctrine, codified for the federal courts in [Federal Rule of Civil Procedure] 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)) (internal quotation marks omitted). Rule 26(b)(3) states that, subject to limited exceptions, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). Adlman established a test of causation for this determination: "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." Id. at 1195. Documents prepared in anticipation of litigation "tend[] to reveal mental impressions, conclusions, opinions or theories concerning the litigation." Id.

Defendants explained to Judge Scanlon that the Training Materials are privileged because they involved "determining the constitutionality of certain things and educating officers on that." (Conf. Tr. at 28:7-8.) In response to hypotheticals posed by Judge Scanlon, Defendants contended that it is difficult to distinguish between, on the one hand, a conversation between a CBP legal advisor and the head of CBP about whether a recent case provides CBP with the authority to, for example, look at devices at the border, and, on the other, a communication to 10,000 CBP officers to the effect that "by the way, you're allowed to look at devices at the border." (Conf. Tr. at 28:22-29:8.) These situations were hard to distinguish, Defendants told

Judge Scanlon, because "that decision of how they're trained is made at the high level and then they received the training." (Id. at 29:8-10.)

Judge Scanlon rejected these arguments, finding that "once you're using materials for your officers to instruct them on, what is and isn't lawful is in the Fourth Amendment, you know, you're talking about the equivalent of business documents and training materials, not privileged communications." (Id. at 26:20-27:3.) She analogized the Training Materials to the New York Police Department's patrol guide, and explained, "[t]his is not legal advice. . . . [T]he fact that your employees apply legal standards and need to act within the law is not attorney-client information." (Id. at 29:15-18.) She also rejected Defendants' work-product privilege argument, which "would suggest that everything an attorney touched with regard to instructing employees about the law is still privileged." (Id. at 27:4-7.)

The absence of a privilege log makes it difficult to evaluate Defendants' claims. Nonetheless, the court is able to conclude that Judge Scanlon's ruling with respect to the Training Materials was not clearly erroneous. In American Civil Liberties Union of San Diego & Imperial Counties v. United States Department of Homeland Security ("ACLU"), No. 8:15-CV-00229, 2017 WL 9500949, at *11 (C.D. Cal. Nov. 6, 2017),[8] CBP identified and produced in camera a training document entitled "Enforcement Law Course." The court held that the document was not protected by attorney-client or work-product privilege because it contains "no 'fact-specific legal advice and communication' and functions as a general-purpose legal manual,

---

[8] As Plaintiffs explain (Opp'n at 10 n.1), ACLU was a Freedom of Information Act ("FOIA") case in which CBP claimed that CBP's Enforcement Law Course was exempted from disclosure under Exemption 5, which protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ." ACLU, 2017 WL 9500949, at *8 (quoting 5 U.S.C. § 552(b)(5)). The scope of Exemption 5 is co-extensive with civil litigation privileges. U.S. Dep't of Justice v. Julian, 486 U.S. 1, 11 (1988) ("Exemption 5 'exempt[s] those documents, and only those documents, normally privileged in the civil discovery context.'" (citation omitted)).

teaching CBP officials about the laws they enforce and the constitutional and statutory constraints they must follow." Id. at *11 (quoting Am. Civil Liberties Union of N. California v. Fed. Bureau of Investigation, 146 F. Supp. 3d 1161, 1168 (N.D. Cal. 2015), rev'd on other grounds, 881 F.3d 776 (9th Cir. 2018)); see also Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys, 844 F.3d 246, 255 (D.C. Cir. 2016) (holding that "materials serving no cognizable adversarial function, such as policy manuals, generally would not constitute work product"); American Immigration Council v. U.S. Department of Homeland Security, 905 F. Supp. 2d 206, 221-22 (D.D.C. 2012) (observing that the D.C. Circuit distinguishes between documents "like an agency manual, fleshing out the meaning of the law, and thus . . . not prepared in anticipation of litigation" and documents containing "more pointed advice" that recommend "how to proceed further with specific investigations or advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome").

Moreover, contrary to Defendants' assertions, the Second Circuit's decision in In re County of Erie, 473 F.3d 413, 422 (2d Cir. 2007), does not compel an opposite result. There, the court determined that privilege applied to ten specific emails between an assistant county attorney and certain officials in the sheriff's office that contained legal advice. Id. at 421. The emails (1) analyzed potential liability stemming from the county's existing strip search policy; (2) proposed changes to the policy to make it constitutional; and (3) provided guidance to those officials on how to implement and fund the alternative policies. (Id. at 422.) These emails are, as the Plaintiffs note, fundamentally different in character from the Training Materials that Defendants seek to withhold here, which, based on Defendants' representations, appear to be

15

more akin to the unprivileged "general-purpose legal manual" at issue in ACLU.[9] See ACLU, 2017 WL 9500949, at *11. As such, the court finds that Judge Scanlon did not act contrary to law or clearly err in finding that the Training Materials are unprotected by the attorney-client or attorney work product privileges.

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS Magistrate Judge Vera M. Scanlon's February 12 Order (Dkt. 94) directing Defendants to provide "training materials as discussed as to the Fourth Amendment."

SO ORDERED.

Dated: Brooklyn, New York
April 17, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[9] Although the court reviews Judge Scanlon's decision based on the record that was before her and thus declines to consider the Courey Declaration, the court notes that the Courey Declaration would not change the outcome here. The Courey Declaration does not identify any specific training documents by title or provide the number of documents or pages over which privilege is being claimed. Instead, it explains that CBP officers participate in "CBP Officer Basic Training," which includes approximately 80 hours of legal instruction, 14 of which are "Fourth Amendment legal training" (Courey Decl. ¶¶ 5) and that "some CBP Officers participate in additional training courses" (id. ¶ 6). "[O]ne such 10-day training program . . . includes 16 hours of legal training, 8 of which address Fourth Amendment issues." (Id.) The Courey Declaration goes on to assert that "these trainings" are "premised upon confidential information shared by the institutional client, including but not limited to, active CBP enforcement operations law-enforcement-sensitive investigative techniques, and other procedures that are confidential and not otherwise available to the public." (Id. ¶ 12.) The Courey declaration also avers that "[t]hese trainings memorialize and consolidate legal advice pertaining to these situationally specific and often recurring issues and fact patterns." (Id.) These statements do not identify which documents in particular are being withheld or what characteristics or circumstances purportedly render them privileged. In short, the Courey Declaration is insufficient to satisfy Defendants' burden. See In re Grand Jury Subpoena, 750 F.2d at 224–25 (observing that a party's burden to "establish those facts that are the essential elements of the privileged relationship," is "not discharged by mere conclusory or ipse dixit assertions." (citations and quotation marks omitted)).